# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | |
|---|---|
| **GINA R. LIPARI-WILLIAMS and MARISSA T. HAMMOND, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PENN NATIONAL GAMING, INC.,**<br><br>**The MISSOURI GAMING COMPANY, LLC d/b/a ARGOSY RIVERSIDE CASINO, and**<br><br>**ST. LOUIS GAMING VENTURES, LLC d/b/a HOLLYWOOD CASINO ST. LOUIS**<br><br>**Defendants.** | **Case No. 5:20-CV-6067-SRB**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15 and the Scheduling Order (Doc. 18) at ¶¶ 1-2, Gina R. Lipari-Williams and Marissa T. Hammond (collectively, "Plaintiffs") file this First Amended Class and Collective Action Complaint against Penn National Gaming, Inc., The Missouri Gaming Company, LLC d/b/a Argosy Riverside Casino, and St. Louis Gaming Ventures, LLC d/b/a Hollywood Casino St. Louis (collectively, "Defendants").

1.     Plaintiff Lipari-Williams commenced this action in the Circuit Court of Platte County, Missouri on March 31, 2020 in a matter captioned *Lipari-Williams v. The Missouri Gaming Company, LLC, et al.*, Case No. 20AE-CC00099.  Defendants were served with process on April 2, 2020 by personally serving their registered agent, CT Corporation System, with a copy of the state court petition and summonses.  Defendants removed this matter on May 1, 2020 on the basis of alleged traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  *See* Notice

1

of Removal, Doc. 1 at ¶ 8.  Defendants asserted complete diversity existed between the named parties and that Plaintiff Lipari-Williams, individually, would necessarily incur, at least, $75,000 in reasonable attorneys' fees.  *See id*. at ¶¶ 22-28.

## NATURE OF ACTION

2.　　　This is a class and collective action concerning two unlawful wage and hour practices occurring at the Argosy Riverside Casino and Hollywood Casino St. Louis, located in Platte County, Missouri and St. Louis County, Missouri, respectively.  Both casinos are owned and operated by Penn National Gaming, Inc., which is a national casino conglomerate that, along with the property-specific corporate entities, jointly employs the workers at those casino properties, including Plaintiff.

3.　　　First, Defendants deducted from the wages of Plaintiffs and all other similarly situated employees the costs to obtain and thereafter maintain and renew state-issued gaming licenses.  This practice violates both federal and Missouri law.  As multiple federal district courts (including this Court) have held, these gaming licenses are primarily for the benefit and convenience of the employers (here, Defendants).  As such, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, these gaming license costs may not be deducted from an employee's wages to the extent the deductions bring the employee's wages below the federally-mandated $7.25 per hour minimum wage.  Likewise, the gaming license deductions are not for the "private benefit of the employees."  As such, pursuant to the Missouri Minimum Wage Law ("MMWL"), RSMo. § 290.500, *et seq.*, these gaming license costs may not be deducted from an employee's wages to the extent the deductions bring the employee's wages below the Missouri minimum wage.  Because Plaintiffs and all other similarly situated employees have been paid at or below the federal and Missouri minimum wage rates, the gaming license deductions necessarily

reduced their wages below the minimum wage in violation of both statutes. Plaintiffs assert the gaming license deduction claims as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and class actions pursuant Federal Rule of Civil Procedure 23.

4. Second, Defendants have created a mandatory tip pooling policy by which Defendants require their table games dealers to pool their tips and then, in violation of the FLSA and MMWL, distribute those tips to the table games dealers who earned them as well as to pay the Paid Time Off ("PTO") of certain non-tipped, manager and supervisor employees. This practice violates the express language of the FLSA prohibiting tip pooling whereby employees "who customarily and regularly receive tips" share tips with non-tipped employees who do not. *See* 29 U.S.C. 203(m)(2)(A)(ii). Likewise, this practice violates the express language of the FLSA prohibiting the employer from keeping any portion of its employees' tips, "including allowing managers or supervisors to keep any portion of employees' tips." *See* 29 U.S.C. 203(m)(2)(B). In addition, this practice violates the MMWL because these table games dealers who earned the tips are not being allowed to "retain[] compensation in the form of gratuities" as provided for under the MMWL. *See* RSMo. § 290.512(1). As a result, Defendants are not entitled to a tip credit under federal or Missouri law meaning Plaintiffs and all similarly situated employees are entitled to the difference between their direct cash wage and the federal and/or applicable Missouri minimum wage, whichever is greater. In addition, under the FLSA, Plaintiffs and all similarly situated employees are entitled to recover the wrongfully diverted tips.

## PARTIES

5. Plaintiff Gina R. Lipari-Williams resides in Platte City, Missouri, and is a resident of the State of Missouri. Plaintiff is currently employed by Defendants at their Argosy Riverside

Casino property located in Platte County, Missouri. Plaintiff Lipari-Williams' Consent to Join is attached as **Exhibit A**.

6.      Plaintiff Marissa T. Hammond resides in St. Charles County, Missouri and is a resident of the State of Missouri. Plaintiff was previously employed by Defendants at their Hollywood Casino St. Louis property located in St. Louis County, Missouri. Plaintiff Hammond's Consent to Join is attached as **Exhibit B**.

7.      Defendant The Missouri Gaming Company, LLC ("Argosy Riverside") is a limited liability company organized under the laws of the State of Missouri with its principal place of business in Platte County, Missouri.

8.      Defendant St. Louis Gaming Ventures, LLC ("Hollywood Casino St. Louis") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in St. Louis County, Missouri.

9.      Defendant Penn National Gaming, Inc. ("PNG") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Wyomissing, Pennsylvania.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Defendants The Missouri Gaming Company, LLC and St. Louis Gaming Ventures, LLC because their principal places of business are located within the State of Missouri, they transact business within the State of Missouri, they enter into contracts within the State of Missouri, and they are authorized by the Missouri Secretary of State to do business within the State of Missouri.

11.     This Court has personal jurisdiction over Defendant Penn National Gaming, Inc. because it transacts business within the State of Missouri, it enters into contracts within the State

4

of Missouri, and it is authorized by the Missouri Secretary of State to do business within the State of Missouri.

12.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.  The Court possesses subject matter jurisdiction over Plaintiff's FLSA claims based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.   The Court likewise has subject matter jurisdiction over Plaintiff's state-law wage and hour claims because they are so related to the FLSA claims that they form part of the same case and controversy, satisfying supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

13.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.  Plaintiff Lipari-Williams worked for Defendants at their Argosy Riverside Casino property, which Defendants operate within the Western District of Missouri.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

**PNG Jointly Employed Plaintiffs and All Others Similarly Situated**

14.     PNG operates a hub and spoke employment structure whereby, PNG, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Argosy Riverside and Hollywood Casino St. Louis (collectively, the subsidiary casino entities).  By design, each individual subsidiary casino entity is the acknowledged employer of the employees, like Plaintiffs, who physically work at the casino property.  However, as a matter of economic reality, from its position at the operational center of this structure, PNG has the ability to and, in fact, does operate its subsidiary casinos and instructs the entities on how and when to execute employment policies.   The subsidiaries casino entities must and do follow PNG's

5

operational instructions. Due to the pervasive control PNG both possesses and exercises over the employees at each of its casinos (both directly and indirectly), PNG is a joint employer of Plaintiff and all others similarly situated, along with each respective subsidiary casino entity, like Argosy Riverside.

15. There is no material difference between the manner in which PNG treats each of its casino properties or the Plaintiffs (and those who are similarly situated to him) who work at each of the PNG casino properties. Each of the casino properties is akin to a regional office of PNG's nationwide gaming operation with PNG in control and directing the policies and procedures across the country that affect the day-to-day lives of Plaintiff and all other similarly situated employees.

16. At all relevant times, PNG, with and through the individual subsidiary casino entities, jointly employed each Plaintiff (and other similarly situated employees) because:

   a. PNG had the right to and did exercise control over the hiring and firing of Plaintiff and all other similarly situated employees;

   b. PNG had the right to and did supervise the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;

   c. PNG had the right to and did determine the rate and method of payment for Plaintiff and all other similarly situated employees; and

   d. PNG was primarily responsible for and did maintain the employment records for Plaintiff and all other similarly situated employees.

**The Gaming License Deductions Are Unlawful and Primarily Benefit the Employers**

17. As owners and operators of gaming establishments (*i.e.*, casinos) within the State of Missouri, Defendants are subject to the provisions of Missouri law governing riverboat

6

gambling and their interpreting regulations. *See* RSMo. § 313.800, *et seq.*; *see also* Mo. Code Regs. Ann. tit. 11, § 45-4.010, *et seq*.

18.    Defendants must ensure their employees possess Occupational Gaming Licenses in order to conduct Defendants' casino businesses. Without licensed employees, Defendants' Missouri casinos could not function. *See* Mo. Code Regs. Ann. tit. 11, § 45-4.010.

19.    Pursuant to the Missouri Gaming Commission's regulations, Level I Occupational Gaming Licenses cost $1,000 for an application fee and $100 for an annual license fee. Level II Occupational Gaming Licenses cost $75 for an application fee and $50 for an annual license fee. *See* Mo. Code Regs. Ann. tit. 11, § 45-4.380.

20.    Defendants have established a uniform gaming license deduction policy that governs all employees at its Missouri casinos.

21.    Under this policy, Defendants deduct from their employees' wages the amount it costs Defendants to initially obtain and thereafter renew the employees' state-issued gaming licenses.

22.    With respect to the FLSA, Defendants may only deduct these gaming license costs from their employees' wages if the costs are primarily for the benefit of employees. However, Defendants' employees' state-issued gaming licenses are primarily for the benefit or convenience of Defendants. Defendants' casinos exist in a heavily regulated environment. For example, Defendants can only have table games in their casinos if they are operated by employees (table games dealers) who have the required state-issued gaming license. These state-issued gaming licenses are specifically required for the employee's performance of the employer's particular business. Without these state licensed employees, Defendants could not compliantly operate their casinos and, in turn, generate the revenues needed to support their operations and realize profits.

7

Also, courts interpreting the requirements of 29 C.F.R. § 531.35 ("Free and clear" payment; "kickbacks") and 29 C.F.R. § 531.32 ("Other facilities") have drawn a line between costs arising from employment itself and those arising in the ordinary course of life. Costs that "primarily benefit the employee" are universally ordinary living expenses that one would incur in the course of life outside the workplace. Occupational licensing costs—like the state-issued gaming license at issue here—arise out of employment rather than the ordinary course of life. To that end, Plaintiffs and other similarly situated employees have no use for their gaming license in the ordinary course of life outside the workplace. Therefore, Defendants' employees' state-issued gaming license primarily benefits the employer, not the employee, and cannot be deducted from their wages where, as here, it plainly creates a minimum wage violation.

23. The analysis of the FLSA minimum wage claim is the same as that of the MMWL minimum wage claim because the MMWL "follow[s] the written regulations established by the United States Department of Labor pertaining to the Fair Labor Standards Act." *See* Mo. Code Regs. Ann. tit. 8, § 30-4.010. Like the FLSA, the MMWL only permits certain deductions to be credited as minimum wages if they are "for the private benefit of the employee." *See* Mo. Code Regs. Ann. tit. 8, § 30-4.050.

24. Given that Defendants' gaming license deductions primarily benefit Defendants (as opposed to Plaintiffs and similarly situated employees), Defendants may not deduct the gaming license costs from employees' wages to the extent they create a minimum wage violation under the terms of the FLSA or MMWL.

25. For Defendants' many employees, like Plaintiffs, who are paid a direct cash wage of $7.25 per hour (the federally required minimum wage) or less, which include, among others, Defendants' tipped employees (like Plaintiffs) for whom Defendants pay a sub-minimum direct

8

cash wage and claim an FLSA section 3(m) tip credit, this gaming license deduction is unlawful because it necessarily reduces the employee's earnings below the required minimum wage or overtime compensation in the workweeks in which Defendants make the deduction, resulting in violations of the FLSA.

26.     As the Department of Labor has explained, when an employer claims an FLSA section 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions because any such deduction reduces the tipped employee's wages below the minimum wage.

27.     This is not the first time a federal district court has considered the applicability of the FLSA to the common casino industry practice of deducting the costs of obtaining and renewing gaming licenses from employees' wages in the context of minimum wage violations.

28.     In *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019), Judge Fenner found "[t]he necessity of a gaming license arises out of employment, and therefore, it primarily benefits Defendants, as employers. Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license." *Id*. at 1049. In *Lockett*, the Court likewise found that, because the named plaintiffs were tipped employees earning a direct cash wage of $7.24 or less, any deduction necessarily created a minimum wage violation. *Id*. at 1048-49.

29.     In *Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019), this Court found "considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw, the gaming license fee is a cost arising from employment and not arising in the ordinary course of life. Plaintiffs have satisfied their burden at this early stage in the litigation to plead facts that would support the conclusion that the gaming license fee primarily benefits

9

Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and [Missouri Minimum Wage Law]." *Id*. at *3.

30.     Likewise, the Department of Labor announced in November 2018 that it had completed an investigation and concluded that a casino operator's deductions made from employees' wages to cover its costs for individual employee's casino gaming licenses created minimum wage violations when those deductions brought the employee's pay below the federal minimum wage of $7.25 per hour.  In that case, the casino operator was required to pay $175,128 in back wages and damages to 889 employees at its casinos.

31.     Defendants deducted gaming license fees from Plaintiff Lipari-Williams' wages during the pay period ending on March 14, 2019.  During this pay period, Defendants deducted a gaming license fee in the amount of $25.00 from Plaintiff Lipari-Williams' wages.  During this pay period, Plaintiff Lipari-Williams was paid a direct cash wage of $6.386 per hour.  This wage is below the federal minimum wage of $7.25 per hour and the then-applicable Missouri minimum wage of $8.60 per hour.  Under these circumstances and for purposes of the FLSA and MMWL, any deduction from Plaintiff Lipari-Williams' wages, including the unlawful gaming license deduction at issue, constitutes a minimum wage violation.

32.     Similarly, Defendants deducted gaming license fees from Plaintiff Hammond's wages during the pay period ending on May 30, 2019.  During this pay period, Defendants deducted a gaming license fee in the amount of $25.00 from Plaintiff Hammond's wages.  During this pay period, Plaintiff Hammond was paid a direct cash wage of $5.6456 per hour.  This wage is below the federal minimum wage of $7.25 per hour and the then-applicable Missouri minimum wage of $8.60 per hour.  Under these circumstances and for purposes of the FLSA and MMWL,

any deduction from Plaintiff Hammond's wages, including the unlawful gaming license deduction at issue, constitutes a minimum wage violation.

33.    Pursuant to 29 U.S.C. § 216(b), "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." As Defendants violated the FLSA's minimum wage and/or overtime compensation provisions through an illegal gaming license deduction, Plaintiffs and all others similarly situated are entitled to recover their unpaid minimum wages or overtime compensation, along with an additional equal amount as liquidated damages.

34.    Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA. For example, Defendants have been aware of Judge Fenner's decision in *Lockett* holding gaming licenses are primarily for the benefit of the employer and may not be deducted where it creates a minimum wage violation since the decision was issued and has continued to deduct the cost of gaming licenses from its employees' wages since that opinion was issued. Further, Defendants have also intentionally or recklessly ignored case law from the Southern District of New York issued in 2013 that expressly holds that occupational licensing costs are primarily for the benefit of the employer and, therefore, cannot be deducted from an employee's wages if the deduction reduces the employee's earnings below the required minimum wage or overtime compensation. *See Williams v. Secure Resource Communication Corp.*, 2013 WL 4828578 (S.D.N.Y. Sept. 10, 2013).

**Defendants' Tip Pooling Violations**

35.     Plaintiff Lipari-Williams is table games dealer who participates in mandatory tip pooling arrangement at Defendants' Argosy Riverside Casino property.  Plaintiff Hammond was a table games dealer who participated in a mandatory tip pooling arrangement at Defendants' Hollywood Casino St. Louis property.  Defendants have operated an unlawful tip pooling arrangement in violation of the FLSA and MMWL by including a category of employees commonly referred to as "Dual-Rate Supervisors" in the tip pool as explained below.

36.     PNG has established a uniform or substantially similar Paid Time Off ("PTO") policy that governs PTO for hourly employees at its casinos, including Argosy Riverside Casino and Hollywood Casino St. Louis.

37.     PNG's PTO policy provides that PTO hours accrue for every hour worked based on the employee's length of service with PNG according to a set schedule.

38.     Defendants jointly employ certain workers under the job title "Dual-Rate Supervisor" (or its equivalent by any other name), which includes employment in two occupations: (1) floor supervisor; and (2) table games dealer.  The Department of Labor refers to this type of employment as a "dual job" situation.

39.     With respect to their employment as a floor supervisor (a non-tipped occupation), these employees are paid a regularly hourly rate (say, $19 per hour).  Defendants classify full-time floor supervisors (who perform the same job duties as dual rate supervisors when Dual-Rate Supervisors are functioning in their floor supervisor role) as exempt pursuant to the executive and/or administrative exemption.  Hours worked in their employment as a floor supervisor are specifically tracked and separately paid as such in Defendants' timekeeping and payroll records.

40.     With respect to Dual-Rate Supervisors' employment as a table games dealer (a tipped occupation that participates in a mandatory tip pooling arrangement with Plaintiffs and other similarly situated employees), Defendants pay a sub-minimum direct cash wage.  Under the FLSA, the sub-minimum direct cash wage must be at least $2.13 per hour, and the employer is able to count a limited amount of the employee's tips (as re-distributed by the employer to the employee

under a valid tip pooling arrangement) as a partial credit to satisfy the difference between the direct cash wage and the required federal minimum wage (known as a "tip credit"), *see* 29 U.S.C. § 203(m)(2)(A). The credit allowed on account of tips may be less than that permitted by statute, but it cannot be more. To illustrate, if Defendants pay a table games dealer a sub-minimum direct cash wage of say $4.25 per hour, the amount of the "tip credit" would be $3 (the difference between the employee's direct cash wage of $4.25 and the federal minimum wage of $7.25) – on the assumption further that the amount of tips actually received by the tipped employee (as re-distributed by Defendants according to the mandatory tip pooling arrangement) is enough to make up the difference between the employee's direct cash wage and the federal minimum wage; if not, Defendants must make up the difference to ensure the employee is paid at least the required minimum wage for all hours worked in their employment as a table games dealer.

41. Under the FLSA, when an employer employs someone in both a tipped and non-tipped occupation, the tip credit is available only for the hours the employee works in the tipped occupation. Thus, for Defendants' Dual-Rate Supervisors, the hours worked in the tipped occupation (table games dealer) must be tracked and paid separately from the hours worked in the non-tipped occupation (floor supervisor).

42. Dual-Rate Supervisors accrue PTO in a single pot. This means there is not one pot for PTO accrued as a tipped, hourly table games dealer, on the one hand, and a separate pot for PTO accrued as a non-tipped and manager/supervisor Dual-Rate Supervisor, on the other hand. Instead, the PTO earned by Dual-Rate Supervisors simply accrues in a single pot.

43. For Dual-Rate Supervisors, Defendants do not track how their PTO was accrued. However, when Dual-Rate Supervisors take PTO, they are paid PTO out of the table games dealers' tip pool. The PTO hours accrued in their employment as a floor supervisor (a non-tipped occupation and managerial and supervisory position) should not properly included in any valid tip pooling arrangement among table games dealers (like Plaintiff). But that is precisely what Defendants are doing for their own economic benefit and to the detriment of these employees.

13

44.     Defendants also unlawfully redistribute a portion of the table games dealers' tips to Dual-Rate Supervisors when they are paid for such things as jury duty, bereavement leave, sick leave, FMLA leave, and the like, which accrue and/or are paid in the same or substantially similar unlawful manner as the PTO described above.  To the extent Dual-Rate Supervisors accrue such additional paid leave in their employment as a floor supervisor, those hours cannot be included as part of any valid tip pooling arrangement among table games dealers.

45.     Defendants' above-described scheme for the payment of PTO hours (and other forms of paid leave) for Dual-Rate Supervisors is unlawful and violates the FLSA's tip-pooling provisions because (1) Defendants are violating the FLSA's requirement that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement; (2) Defendants are violating the FLSA's prohibition against the pooling of tips among employees who do not customarily and regularly receive tips; and (3) Defendants are violating the FLSA's requirement that it "not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of the employees' tips, regardless of whether or not the employer takes a tip credit" – *see* 29 U.S.C. § 203(m), as amended by the Consolidated Appropriations Act, 2018 (signed March 23, 2018), along with such section as was in effect prior to then, and all applicable regulations (as the position title Dual-Rate Supervisor and Floor Supervisor confirm, when Dual-Rate Supervisors are performing their non-tipped supervisory duties they are "managers or supervisors" within the meaning of the FLSA).

46.     Defendants' above-described scheme also results in Defendants' violation of the FLSA's minimum wage payment requirements, 29 U.S.C. § 206, because Defendants are paying a direct cash wage to table games dealers (including Plaintiff) that is less than the required minimum wage, and, due to Defendants' non-compliance with the FLSA's tip-pooling provisions, Defendants are not entitled to any credit using employees' tips against its minimum wage obligation with respect to Plaintiffs, and other similarly situated employees.

47.     For the same reasons, Defendants' above-described tip pooling practice also violates the MMWL.  Pursuant to the MMWL, an employer may only pay a sub-minimum direct

14

cash wage to an employee "who receives and retains compensation in the form of gratuities in addition to wages…" *See* RSMo. § 290.512(1). Defendants' tip pooling practices violate the MMWL because employees are not retaining tips within the meaning of the MMWL when tips are redistributed from the mandatory tip pool to non-tipped employees and manager/supervisor employees in the form of PTO. Due to these violations, Defendants may not claim a tip credit and may not pay a direct cash wage below Missouri's minimum wage meaning Defendants owe Plaintiff and all similarly situated employees the difference between their direct cash wage and the then-applicable minimum wage.

48.     Because Defendants' FLSA violations as alleged herein were neither sporadic nor infrequent, Defendants' tip pooling arrangement for table games dealers should be invalidated for the entire statutory look-back period of three (3) years. Alternatively, and at a minimum, Defendants' tip pooling arrangement for table games dealers should be invalidated as to any pay period during the statutory look-back period of three (3) years in which Defendants unlawfully kept and then improperly redistributed table games dealers' tips to pay PTO hours (or other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

49.     As a result of Defendants' above-described FLSA violations, and pursuant to 29 U.S.C. § 216(b), Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor, and (3) an additional equal amount as liquidated damages.

50.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA. By way of example, Defendants recognize, by their own pay policies, that Dual-Rate Supervisors are not permitted to participate in the table games

15

dealers' tip pool for regular hours earned in their capacity as floor supervisors. Under the circumstances, it demonstrates willful violations of the FLSA, or at least reckless disregard for the FLSA, to include other compensation (e.g., PTO, bereavement leave, sick leave, etc.) accrued by Dual-Rate Supervisors in their role as floor supervisors for payment from the table games dealers' tip pool.

51. Plaintiffs and other similarly situated employees are also entitled under the FLSA, 29 U.S.C. § 216(b), to recover a reasonable attorney's fee to be paid by the Defendants, and costs of this action.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

52. Plaintiff brings Count I, the FLSA claim arising out of Defendants' unlawful gaming license deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself individually and the following collective action class:

### Fair Labor Standards Act Collective – Gaming License Deduction

All persons employed and paid a direct cash wage of $7.25 per hour or less at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis, and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from three years preceding the filing of this First Amended Class and Collective Action Complaint to the present.

53. Plaintiff brings Count II, the FLSA claim arising out of Defendants' illegal tip pooling policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself individually and the following collective action class:

### Fair Labor Standards Act Collective – Illegal Tip Pooling

All persons employed as table games dealers at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis who participated in the table games dealer tip pool, at any time from three years preceding the filing of this First Amended Class and Collective Action Complaint to the present.

54. Plaintiff's FLSA claims (Count I and II) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b). Plaintiff, individually and on behalf of all others similarly situated, seeks relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action by U.S. Mail, email, text message, and posting an approved notice.

55. Plaintiff brings Counts III, IV, V, and VI as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of four classes.

56. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff brings Count III on behalf of herself and the following class:

**Missouri Minimum Wage Law Class – Gaming License Deductions**

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license when the employee's direct cash wage was equal to or less than the then-applicable state minimum wage, at any time from three years prior to the filing of the Class Action Petition to the present.

57. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff brings Count IV on behalf of herself and the following class:

**Missouri Minimum Wage Law Class – Illegal Tip Pooling**

All persons employed as table games dealers at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis who participated in the table games dealer tip pool, at any time from three years preceding the filing of this First Amended Class and Collective Action Complaint to the present..

58. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff brings Count V on behalf of herself and the following class:

**Missouri Breach of Contract Class – Gaming License Deductions**

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from five years prior to the filing of the Class Action Petition to the present.

59. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff brings Count VI on behalf of herself and the following class:

**Missouri Unjust Enrichment/Quantum Meruit Class – Gaming License Deductions**

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from five years prior to the filing of the Class Action Petition to the present.

60. Plaintiff's MMWL claims (Count III and IV), breach of contract claim (Count V), and unjust enrichment/quantum meruit claim (Count VI), described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Federal Rule of Civil Procedure 23.

61. These classes each number in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through U.S. Mail, e-mail, text message, and posting of an approved notice. Further, members can readily be identified by records Defendants, as employers, are required to maintain.

62. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

a.    Whether Defendants failed to pay Plaintiffs and class members minimum wage within the meaning of the Missouri Minimum Wage Law when they deducted gaming license fees from their wages;

b.    Whether Defendants failed to pay Plaintiffs and class members overtime wages within the meaning of the Missouri Minimum Wage Law when they deducted gaming license fees from their wages;

c.    Whether the gaming license fees are for the private benefit of Plaintiffs and class members such that they may be credited as wages;

d.    Whether Defendants claimed a tip credit pursuant to the Missouri Minimum Wage Law against their Missouri minimum wage obligations;

e.    Whether Defendants included non-tipped and/or manager/supervisor employees in the table games dealer tip pool;

f.    Whether Defendants' tip pooling practices violated the Missouri Minimum Wage Law;

g.    Whether Defendants breached their contracts with Plaintiffs and class members by failing to pay them for all hours worked by virtue of deducting the gaming license fees from their wages;

h.    Whether Defendants were unjustly enriched by virtue of deducting the gaming license fees from Plaintiffs' and class members' wages.

63.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

19

64. Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs, were subject to the same unlawful gaming license fee deduction practices as Plaintiffs, and were subject to the same unlawful tip pooling procedures as Plaintiffs.

65. A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

66. Plaintiffs are adequate representatives because they are members of each of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation, including, specifically, gaming license fee deduction claims.

67. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I

## Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.

### Gaming License Deduction Policy

68.     At all relevant times, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

69.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

70.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce. At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

71.     At all relevant times, Defendants were "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

72.     At all relevant times, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e).

73.     Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

74.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *See* 29 U.S.C. § 207(a).

75.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

76.     Plaintiffs and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

77.     By deducting the cost of gaming licenses (whether initially obtaining, renewing, or maintaining) from the wages of Plaintiffs and all similarly situated employees, Defendants have caused minimum wage violations given that Plaintiffs and all similarly situated employees are paid a direct cash wage of $7.25 or less.  Further, the deductions are primarily for the benefit of Defendants (as opposed to Plaintiffs and all similarly situated employees) such that they may not be deducted.

78.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of this First Amended Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

79.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with

reasonable grounds in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

80.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

    a.   conditional and final collective action certification of Plaintiffs' FLSA claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

    b.   damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

    c.   reasonable attorneys' fees under the 29 U.S.C. § 216(b);

    d.   liquidated damages and/or pre-judgment interest;

    e.   costs of suit under 29 U.S.C. § 216(b); and

    f.   any further relief that the Court may deem just and equitable.

## COUNT II

## Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

### Illegal Tip Pooling Policy

81.     At all relevant times, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

82.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

83.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce.  At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

84.     At all relevant times, Defendants were "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  *See* 29 U.S.C. § 203(d).

85.     At all relevant times, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *See* 29 U.S.C. § 203(e).

86.     Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

87.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *See* 29 U.S.C. § 207(a).

88.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

89.     Plaintiffs and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

90.     As described above, Defendants operated an illegal tip pool by including non-tipped and/or manager/supervisor employees in the tip pool. As a result, Defendants may not claim a tip credit against their obligations to pay minimum wage. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (i.e., the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, and (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

91.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of this First Amended Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

92.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

25

93.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

    a.   conditional and final collective action certification of Plaintiffs' FLSA claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

    b.   damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

    c.   reasonable attorneys' fees under the 29 U.S.C. § 216(b);

    d.   liquidated damages and/or pre-judgment interest;

    e.   costs of suit under 29 U.S.C. § 216(b); and

    f.   any further relief that the Court may deem just and equitable.

## COUNT III

### Violation of the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

#### Gaming License Deduction Policy

94.     At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

95.     The Missouri Minimum Wage Law regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable

26

herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law. RSMo. §§ 290.500(3), (4); RSMo. § 290.505.1.

96.     The Missouri Minimum Wage Law should be construed in accordance with its provisions and those of the Fair Labor Standards Act ("FLSA"). Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of The Missouri Minimum Wage Law follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1).

97.     During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the class members within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3), (4).

98.     During all times relevant to this action, Plaintiffs and the class members were Defendants' "employees" within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3).

99.     Plaintiffs and the class members are covered, non-exempt employees within the meaning of the Missouri Minimum Wage Law. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. RSMo. § 290.502.1.

100.    Pursuant to the Missouri Minimum Wage Law, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. RSMo. § 290.505.1.

101.    Although the Missouri Minimum Wage Law contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none apply here.  RSMo. § 290.500(3).

102.    Plaintiffs and the class members are victims of uniform and employer-based compensation policies, specifically the deduction of the cost of obtaining and thereafter maintaining a gaming license from their wages.

103.    Plaintiffs and the Class are entitled to damages equal to all unpaid regular and overtime wages due within three years preceding the filing of the Class Action Petition, plus periods of equitable tolling, along with an additional amount as treble damages, less any amount actually paid to the employees by Defendants.  RSMo. § 290.527.

104.    Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

105.    Defendants are also liable to Plaintiffs and the Class for costs and reasonable attorney fees incurred in this action.  RSMo. § 290.527.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

   a.   class action certification of Plaintiffs' MMWL claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

   b.   damages for unpaid minimum wages and overtime under RSMo. § 290.527;

   c.   reasonable attorneys' fees under RSMo. § 290.527;

   d.   treble damages, liquidated damages, and/or pre-judgment interest pursuant to the MMWL under RSMo. § 290.527;

   e.   costs of suit under RSMo. § 290.527; and

28

f.  any further relief that the Court may deem just and equitable.

## COUNT IV

### Violation of the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

#### Illegal Tip Pooling

106.    At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

107.    The Missouri Minimum Wage Law regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law.  RSMo. §§ 290.500(3), (4); RSMo. § 290.505.1.

108.    The Missouri Minimum Wage Law should be construed in accordance with its provisions and those of the Fair Labor Standards Act ("FLSA").  Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of The Missouri Minimum Wage Law follows the FLSA and its companion regulations.  *See* 8 C.S.R. § 30-4.010(1).

109.    During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the class members within the meaning of the Missouri Minimum Wage Law.  RSMo. §§ 290.500(3), (4).

110.    During all times relevant to this action, Plaintiffs and the class members were Defendants' "employees" within the meaning of the Missouri Minimum Wage Law.  RSMo. § 290.500(3).

29

111.    Plaintiffs and the class members are covered, non-exempt employees within the meaning of the Missouri Minimum Wage Law.  Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek.  RSMo. § 290.502.1.

112.    Pursuant to the Missouri Minimum Wage Law, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  RSMo. § 290.505.1.

113.    Although the Missouri Minimum Wage Law contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none apply here.  RSMo. § 290.500(3).

114.    Plaintiffs and the class members are victims of uniform and employer-based compensation policies, specifically, Defendants' illegal tip pooling. As described above, Defendants operated an illegal tip pool by including non-tipped and/or manager/supervisor employees in the tip pool.  As a result, Defendants may not claim a tip credit against their obligations to pay minimum wage.  Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (i.e., the difference between the direct cash wage and the required Missouri minimum wage) / the amount of the unpaid minimum wages, and (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

115.    Plaintiffs and the Class are entitled to damages equal to all unpaid regular and overtime wages due within three years preceding the filing of the Class Action Petition, plus

periods of equitable tolling, along with an additional amount as treble damages, less any amount actually paid to the employees by Defendants. RSMo. § 290.527.

116. Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

117. Defendants are also liable to Plaintiffs and the Class for costs and reasonable attorney fees incurred in this action. RSMo. § 290.527.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a. class action certification of Plaintiffs' MMWL claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b. damages for unpaid minimum wages and overtime under RSMo. § 290.527;

c. reasonable attorneys' fees under RSMo. § 290.527;

d. treble damages, liquidated damages, and/or pre-judgment interest pursuant to the MMWL under RSMo. § 290.527;

e. costs of suit under RSMo. § 290.527; and

f. any further relief that the Court may deem just and equitable.

## COUNT V

### Breach of Contract

### Gaming License Deduction Policy

118. The preceding paragraphs are incorporated by reference as if fully alleged herein.

119. Defendants entered into a contract with Plaintiffs and all similarly situated employees through which it agreed that employees would get paid an agreed-upon hourly rate for every hour worked during their employment.

31

120. Defendants breached this contract by failing to pay Plaintiffs and all others similarly situated their agreed-upon hourly rate for every hour worked during their employment.

121. Specifically, Defendants reduced Plaintiffs' and other similarly situated employees' wages by deducting the cost of the gaming license from their wages, which is not permitted by the contract. This constitutes a breach of Defendants' employment contract with Plaintiffs and other similarly situated employees.

122. Because of Defendants' breach, Plaintiffs and other similarly situated employees have been damaged.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

    a. class action certification of Plaintiffs' breach of contract claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

    b. compensatory damages for breach of contract; and

    c. any further relief that the Court may deem just and equitable.

## COUNT VI

### Unjust Enrichment/Quantum Meruit

### Gaming License Deduction Policy

123. Defendants benefited from the work performed by Plaintiffs and other similarly situated employees during the work weeks when Defendants deducted the costs of gaming licenses from Plaintiffs' and other similarly situated employees' wages. In deducting the costs for gaming licenses from Plaintiffs' and other similarly situated employees' wages, Defendants were receiving a benefit (the work) for which it had not paid wages due and owing.

32

124.     Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

125.     Defendants' acceptance and retention of the benefit of Plaintiffs and the other similarly situated employees' unpaid labor was inequitable and resulted in Defendants being unjustly enriched.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

      a.   class action certification of Plaintiffs' unjust enrichment claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

      b.   compensatory damages for breach of contract; and

      c.   any further relief that the Court may deem just and equitable.

### <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated:  July 17, 2020                    Respectfully submitted,

                                         **STUEVE SIEGEL HANSON LLP**

                                         */s/ Alexander T. Ricke*
                                         George A. Hanson, MO. Bar No. 43450
                                         Alexander T. Ricke, MO. Bar No. 65132
                                         460 Nichols Road, Suite 200
                                         Kansas City, Missouri 64112
                                         Telephone:     (816) 714-7100
                                         Facsimile:     (816) 714-7101
                                         hanson@stuevesiegel.com
                                         ricke@stuevesiegel.com

                                         **McCLELLAND LAW FIRM, P.C.**
                                         Ryan L. McClelland, MO Bar No. 59343
                                         Michael J. Rahmberg, MO. Bar No. 66979
                                         The Flagship Building
                                         200 Westwoods Drive
                                         Liberty, Missouri 64068-1170
                                         Telephone:     (816) 781-0002
                                         Facsimile:     (816) 781-1984
                                         ryan@mcclellandlawfirm.com
                                         mrahmberg@mcclellandlawfirm.com

                                         **COUNSEL FOR PLAINTIFF**


                               <u>**CERTIFICATE OF SERVICE**</u>

        The undersigned certifies that on July 17, 2020 the foregoing document was filed with the
Court's CM/ECF system, which served a copy of the foregoing document on all counsel of record.

                                         /s/ *Alexander T. Ricke*
                                         Counsel for Plaintiff

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

GINA R. LIPARI-WILLIAMS, individually,
and on behalf of all others similarly situated,

        Plaintiff,

v.

THE MISSOURI GAMING COMPANY,
LLC d/b/a ARGOSY CASINO HOTEL &
SPA, et al.

        Defendants.

Case No. 5:20-cv-06067-SRB

**CONSENT TO JOIN**
**Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)**

**I CONSENT TO JOIN THIS LAWSUIT** as a Party Plaintiff seeking unpaid wages and/or overtime against Defendants The Missouri Gaming Company, LLC d/b/a Argosy Casino Hotel & Spa, and Penn National Gaming, Inc., and any other associated entities ("Defendants"). If this case does not proceed collectively, I also consent to join any subsequent action against any Defendant(s) for unpaid wages and/or overtime. By joining this lawsuit, I designate the Named Plaintiff(s) as my representatives, and allow them, to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, including settlement, the entering of an agreement with Plaintiffs' Counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to the this lawsuit to the fullest extent permitted by law. I understand that I will be bound by any ruling, settlement, or judgment whether favorable or unfavorable. For purposes of this lawsuit, I choose to be represented by Stueve Siegel Hanson LLP and McClelland Law Firm, P.C., and any other attorneys with whom they may associate.

05/14/2020
_____
Date

*Gina R. Lipari-Williams*
_____
Signature

Gina R. Lipari-Williams
_____
Full Legal Name (print)

1

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

**GINA R. LIPARI-WILLIAMS and MARISSA T. HAMMOND, on behalf of themselves and all others similarly situated,**

**Plaintiff,**

**v.**

**PENN NATIONAL GAMING, INC.,** *et al.*

**Defendants.**

**Case No. 5:20-CV-6067-SRB**

## CONSENT TO JOIN
### Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b)

    **I CONSENT TO JOIN THIS LAWSUIT** as a Party Plaintiff seeking unpaid wages and/or overtime against Defendants Penn National Gaming, Inc., The Missouri Gaming Company, LLC d/b/a Argosy Casino Hotel & Spa, St. Louis Gaming Ventures, LLC d/b/a Hollywood Casino St. Louis, and/or any other associated entities ("Defendants"). If this case does not proceed collectively, I also consent to join any subsequent action against any Defendant(s) for unpaid wages and/or overtime. By joining this lawsuit, I designate the Named Plaintiff(s) as my representatives, and allow them, to the fullest extent possible, to make decisions on my behalf concerning the case, the method and manner of conducting the case, including settlement, the entering of an agreement with Plaintiffs' Counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to the this lawsuit to the fullest extent permitted by law. I understand that I will be bound by any ruling, settlement, or judgment whether favorable or unfavorable. For purposes of this lawsuit, I choose to be represented by Stueve Siegel Hanson LLP and McClelland Law Firm, P.C., and any other attorneys with whom they may associate.

07/17/2020

_____
Date

*M T Hammond*

_____
Signature

Marissa T. Hammond

_____
Full Legal Name (print)