# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GINA R. LIPARI-WILLIAMS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 5:20-cv-06067-SRB |
| | ) |
| THE MISSOURI GAMING COMPANY, LLC, | ) |
| d/b/a ARGOSY RIVERSIDE CASINO, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT PENN NATIONAL GAMING, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS COUNT VII OF PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Penn National Gaming Inc. ("PNG") moves this Court to dismiss Count VII of Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), based on Plaintiff Marissa Hammond's lack of constitutional standing, and 12(b)(6), based on Hammond's lack of statutory standing and failure to state a claim upon which relief may be granted. As more fully set forth below, Hammond (1) never suffered any injury as a result of any provision in any group health insurance plan sponsored by PNG (the "Plan"); (2) is not a current participant in the Plan; (3) is not seeking to recover any payment of actual benefits under the Plan (*e.g.*, a claim for medical services); and (4) is not seeking relief for injuries to the actual Plan itself. Accordingly, any and all of Hammond's purported claims in Count VII must fail.

**I.    FACTUAL BACKGROUND.**

Plaintiff Hammond brought Count VII against Defendant PNG, alleging she previously worked at the Hollywood Casino in St. Louis County, Missouri ("Hollywood Casino St. Louis"), and was a participant in the Plan. ECF No. 39 at 5, 38 (¶¶ 7, 134). Hammond does not allege she is a current participant in the Plan. *See generally* ECF No. 39. Hammond correctly identifies that the Plan provided all participants and their beneficiaries (collectively, "participants") with a

1

75677702.6
Case 5:20-cv-06067-SRB    Document 48    Filed 12/21/20    Page 1 of 19

monetary incentive to make the healthy decision not to use tobacco products. Participants who chose to use tobacco products paid a premium surcharge of approximately $50.00 per month. *Id.* at 38 (¶ 133).

All Plan participants were incentivized to avoid the tobacco surcharge in two ways: (1) not using tobacco products, or (2) attending a smoking cessation program. *Id.* at 41 (¶ 142). Participants could also avoid the surcharge by providing medical documentation showing that "it is unreasonably difficult, due to a medical condition, or medically inadvisable for the employee or their covered family member to be tobacco free." Declaration of Natasha Romulus, Ex. A at 2 ("Romulus Decl."), attached as Exhibit 1.[1] Every year during open enrollment, participants submitted a Tobacco User Affidavit, stating whether the participant was a tobacco user, subject to the surcharge, or non-tobacco user, eligible to pay the lower premium or incentive amount. ECF No. 39 at 41 (¶ 141). Participants were told to submit a new Tobacco User Affidavit during the Plan year whenever their status as a tobacco user or non-user changed, or upon completion of a smoking cessation program, to ensure they paid the proper amount. *Id.* at 41 (¶¶ 141-42).

Hammond alleges that she paid the tobacco surcharge when she was employed based on her use of tobacco. ECF No. 39 at 38 (¶ 134). Hammond further alleges the Plan would have rescinded the surcharge only on a prospective basis with no retroactive adjustments in the event that she completed a tobacco cessation program and submitted an updated Tobacco Use Affidavit to PNG. *Id.* However, Hammond fails to allege that:

- She completed a smoking cessation program at any time while she was a Plan participant;

---

[1] If a participant avoided the tobacco surcharge for medical reasons, the Tobacco Use Policy provides that "all surcharges applied in the current year will be refunded." Romulus Decl., Ex. A at 2.

- She provided PNG with any information in any form regarding the completion of a smoking cessation program;

- She submitted any information to PNG from a health care provider related to her tobacco use or cessation attempts;

- She submitted a Tobacco User Affidavit with any changes regarding her tobacco use status during any Plan year;

- She submitted a Tobacco User Affidavit stating she was a non-tobacco user during any enrollment period;

- She provided PNG with any information in any form related to non-tobacco use; or

- She was ever entitled to relief from, or reimbursement of, any tobacco surcharge.

Likewise, Hammond does not allege that any other employee was denied relief from, or reimbursement of, the tobacco surcharge after completing a tobacco cessation program and submitting proper documentation to PNG reflecting the completion of such a program. Accordingly, Hammond does not allege she (or anyone else) suffered any actual injury from the Plan's alleged non-reimbursement of previously-paid surcharge payment. *See generally* ECF No. 39.

Moreover, Hammond *cannot* allege these facts because they are not so. Hammond has not been employed at Hollywood Casino St. Louis since June 18, 2020, and has not been a Plan participant since June 30, 2020. Romulus Decl. at ¶ 4-5; Plaintiff Marissa T. Hammond's Responses to Defendant St. Louis Gaming Ventures, LLC's First Set of Interrogatories at 2 (Answer No. 2), attached as Exhibit 2. Following the termination of Hammond's employment, she was no longer covered by the Plan. Romulus Decl. at ¶ 5. In fact, Hammond never – at any point – submitted documentation to PNG claiming to have completed a smoking cessation program or seeking medical relief from the tobacco surcharge. *Id.* at ¶¶ 6, 8. Indeed, since PNG instituted

3
75677702.6
Case 5:20-cv-06067-SRB   Document 48   Filed 12/21/20   Page 3 of 19

the tobacco surcharge, no Plan participant has ever submitted documentation to PNG reflecting completion of a smoking cessation program in order to avoid the tobacco surcharge. *Id.* at ¶ 9.

Hammond's allegations, and the facts presented by PNG, make it clear she suffered no injury; she is not a current Plan participant; she is not seeking to recover actual health care *benefits* due to her under the Plan (*e.g.,* payment of a medical bill); and she is not seeking relief for injuries *to the Plan* itself. Hammond accordingly lacks both constitutional and statutory standing to bring her claims and fails to state a claim upon which relief may be granted. Count VII of Plaintiffs' Second Amended Complaint must be dismissed.

## II. ARGUMENT.

### A. The Court Lacks Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) Because Hammond Lacks Constitutional Standing.

Count VII of the Second Amended Complaint must first be dismissed because Hammond does not allege, and in fact did not suffer, any injury caused by the Plan's alleged lack of reimbursement of any tobacco surcharge payments. Therefore, Hammond does not have standing and Count VII does not satisfy the "case or controversy" requirement that it is necessary for the Court's subject matter jurisdiction under Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

#### 1. Standard of Review for PNG's Challenges to Hammond's Article III Standing.

Hammond "bears the burden of establishing" her standing to bring a claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Spokeo, Inc.*, 136 S. Ct. at 1547 ("the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]"). Because standing is a "jurisdictional prerequisite," it "must be resolved before reaching the merits of a suit." *Turkish Coalition of America, Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012).

Standing is determined "as of the time the complaint is filed" and may be challenged "at the pleading stage" pursuant to Federal Rule of Civil Procedure 12(b)(1). *Brown v. Medtronic, Inc.,* 619 F. Supp. 2d 646, 649 (D. Minn. 2009). Rule 12(b)(1) permits both a "facial" and "factual" attack on a plaintiff's standing. *Carlsen v. GameStop, Inc.,* 833 F.3d 903, 908 (8th Cir. 2016). A "facial" attack challenges the sufficiency of the plaintiff's pleading, applying the same standard governing motions to dismiss under Rule 12(b)(6). *Id.* Complaints with "labels and conclusions," a "formulaic recitation of the elements of a cause of action," legal arguments, or "naked assertions devoid of further factual enhancement" do not meet the 12(b)(6) standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and modifications omitted). Such allegations do not receive the presumption of truth afforded to well-pleaded facts. *Id.* A complaint that pleads facts that are "merely consistent" with a defendant's liability is also insufficient, as a plaintiff must "show," rather than merely assert, that she is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

A "factual" attack challenges the truthfulness of the facts asserted in the complaint. *Wong v. Muddy Pig, Inc.*, 2015 WL 225231, at *2 (D. Minn. Jan. 16, 2015) (factual attack "looks behind the allegations to the underlying facts"). When a defendant presents a factual attack on jurisdiction, the Court may consider facts and evidence outside of the pleadings. *Carlsen*, 833 F.3d at 908. "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In addition, the plaintiff does not receive the benefit of any inferences in her favor. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 870 (8th Cir. 2013).

As set forth below, PNG asserts both a facial and factual challenge to Hammond's Article III standing.

### 2. Hammond Challenges Only One Narrow Aspect of the Plan's Compliance with ERISA's Wellness Program Requirements.

Hammond alleges that the Plan's tobacco surcharge violates ERISA's wellness program requirements. Notably, Hammond does not allege that any violation (which PNG would not concede) caused her injury. A brief summary of the relevant portions of ERISA's wellness program requirements is instructive.[2] Section 702(b) of ERISA, 29 U.S.C. § 1182(b), prohibits the Plan from requiring participants to pay greater premiums or contributions based on "any health status-related factor," but, through a "wellness program" exception, permits the Plan to implement "premium discounts or rebates" or modify payment amounts "in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(1)-(2).

Regulations published at 29 C.F.R. § 2590.702(f) spell out the requirements for such "wellness programs." Specifically, 29 C.F.R. § 2590.702(f)(1) defines four types of wellness programs: participatory, health-contingent, activity-only, and outcome-based. Hammond alleges the Plan's tobacco surcharge is an outcome-based wellness program. ECF No. 39 at ¶ 139. An outcome-based wellness program is one that "requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

One of the wellness program regulations sets forth five requirements for outcome-based wellness programs:

---

[2] *See Int'l Primate Protection League v. Admins. of Tulane Univ.*, 500 U.S. 72, 77 (1991) ("standing is gauged by the specific common-law, statutory or constitutional claims that a party presents").

(1) Individuals must be permitted the opportunity to qualify for the wellness program's reward at least once per year;

(2) The amount of the reward may not exceed a certain percentage of the cost of coverage;

(3) The program must be reasonably designed to promote health or prevent disease;

(4) A "reasonable alternative standard" for obtaining the reward must be offered to anyone who does not meet the initial health-based standard; and

(5) Certain notices of the reasonable alternative standard must be provided in the plan documents.

29 C.F.R. § 2590.702(f)(i)-(v).

Count VII challenges *only* the Plan's "reasonable alternative standard" with respect to the tobacco surcharge (*i.e.*, (4) above); it does not attack the Plan's compliance with any other requirement. Hammond does not contest that the Plan offers a reasonable alternative standard (*i.e.*, completing a smoking cessation program), or contend that the mechanism for achieving the reasonable alternative standard is inappropriate.[3] Instead, Hammond narrowly challenges only the sufficiency of the reasonable alternative standard's relief, claiming that a participant who met the standard would not receive a reimbursement of tobacco surcharges that were paid prior to the completion of the smoking cessation program.

The regulation provides PNG with flexibility in meeting the reasonable alternative standard requirement. The reasonable alternative standard can be determined on an *ad hoc* basis, and PNG is "not required to determine a particular reasonable alternative standard in advance of an individual's request for one." 29 C.F.R. § 2590.702(f)(4)(iv)(B). Indeed, upon receipt of an individual's request, PNG is not required to furnish a reasonable alternative standard at all, and

---

[3] Nor could she. Example 6 to the outcome-based wellness program regulations explicitly endorses as permissible a substantially identical reasonable alternative standard mechanism requiring completion of a smoking cessation program. 29 C.F.R. § 2590.702(f)(4)(v), Ex. 6.

could instead decide to waive the tobacco surcharge altogether for that individual. *Id.* The agency comments to the final rule implementing the current version of the wellness program regulations confirm PNG's "flexibility to determine whether to provide the same reasonable alternative standard for an entire class of individuals . . . or provide the reasonable alternative standard on an individual-by-individual basis, based on the facts and circumstances presented." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 FR 33158-01, 33163 (Jun. 3, 2013).

### 3. Hammond Lacks Article III Standing – Both On the Face of the Complaint and as a Factual Matter.

At minimum, constitutional standing requires: "(1) an injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that a favorable decision will redress the injury." *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020). These requirements cannot be overridden by statute, as "Article III standing requires a concrete injury even in the context of a statutory violation" and a "bare procedural violation, divorced from any concrete harm" does not support this Court's subject matter jurisdiction. *Spokeo, Inc.*, 136 S. Ct. at 1549. Based on the facts alleged in the Second Amended Complaint, the record evidence, and the ERISA wellness program requirements, Hammond cannot meet any of the Article III standing requirements with respect to the Plan's alleged lack of reimbursement of tobacco surcharge payments. Neither Hammond, nor anyone else, has ever satisfied the reasonable alternative standard so as to be entitled to reimbursement.

Hammond's allegations do not meet her burden to demonstrate standing, as required to survive PNG's facial challenge. Hammond does not contest that the Plan is permitted to impose a tobacco surcharge or assert that the requirements to meet the Plan's reasonable alternative standard are improper. The *only* "challenged conduct," *Carson*, 978 F.3d at 1057, in Count VII is an alleged

8
75677702.6
Case 5:20-cv-06067-SRB    Document 48    Filed 12/21/20    Page 8 of 19

failure to provide retroactive reimbursement – but there is *no connection* between that conduct and any injury. Hammond does not state or allege that she or anyone else ever satisfied the Plan's reasonable alternative standard, and, as a result, does not plausibly allege that she suffered a concrete injury in fact from any alleged deficiency in the relief offered. *See generally* ECF No. 39. Nor does she allege that any person ever actually requested or was denied a reimbursement. *Id.* It is Hammond's burden to "clearly" allege *facts*, not merely conclusory assertions, that plausibly *show* how PNG's alleged ERISA violation injured her, but Hammond failed to do so. *Spokeo, Inc.*, 136 S. Ct. at 1547.

Even if Hammond's standing could survive PNG's facial challenge, notwithstanding the lack of any factual allegations showing Hammond's injury, it cannot survive PNG's factual challenge based on actual evidence about the tobacco surcharge's operation. Against such evidence, "[t]he elements of standing 'cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.'" *Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. Dept. of Transportation*, 831 F.3d 961, 966 (8th Cir. 2016) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). PNG's record evidence[4] establishes as a matter of fact that no Plan participant (including Hammond) ever submitted a Tobacco Use Affidavit attesting to the completion of a smoking cessation program. *See* Romulus Decl. at ¶¶ 5-6. This evidence demonstrates that to the extent Hammond never received any reimbursement of tobacco surcharge payments, it is solely because of her own failure to stop using tobacco products, complete a smoking cessation program, or submit medical documentation showing she could not

---

[4] Notwithstanding PNG's submission of record evidence, the burden to establish standing remains with Hammond. *Osborn*, 918 F.2d at 730 (quoting *Mortensen*, 549 F.2d at 891). Moreover, the issue remains one for the Court's adjudication, even if it involves issues or disputes of fact. *Id.* at 729 ("Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide.").

9

stop using tobacco for a health reason – not because of any ERISA violation by PNG. Moreover, even if the terms of the Plan had provided for retroactive reimbursement all along, as Hammond contends is necessary, Hammond would be in the exact same position she is in today – ineligible for the reimbursement and uninjured.

Regardless of whether it is evaluated based on Hammond's pleading (facially) or the evidence in the record (factually), any alleged ERISA violation is also purely hypothetical and does not present a concrete injury. Because the ERISA wellness program regulations permit the reasonable alternative standard to be administered, or even waived, on an *ad hoc* basis, any injury is not concrete until a participant actually satisfies the reasonable alternative standard and is denied reimbursement. Hammond does not allege such a denial ever occurred. In the absence of an actual denial of reimbursement, Hammond's injury is merely speculative based on what she *believes* PNG would have done in the hypothetical scenario in which she presented PNG with her Tobacco Use Affidavit attesting to completion of a smoking cessation program. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("'mere speculation' that injury did or might occur 'cannot satisfy the requirement that any injury in fact must be fairly traceable to' the alleged source") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

The Eighth Circuit Court of Appeals (and other circuits) have denied standing in analogous situations where a plaintiff's alleged injury is caused by both challenged and unchallenged circumstances. In *Donaghy v. City of Omaha*, 933 F.3d 1448, 1455 (8th Cir. 1991), a police officer sought to challenge a city's race-conscious affirmative action program for promotions as discriminatory, despite the fact he would not have been eligible for consideration under the city's candidate ranking order even in the absence of the affirmative action program. The Eighth Circuit held the officer lacked standing to assert that his non-selection for these promotions was

discriminatory. *Id.* Similarly, in *Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006), the Eighth Circuit held an advertiser lacked standing to challenge an allegedly unconstitutional provision of a city's sign code because even if the plaintiff succeeded in its constitutional challenge, its desired signage was prohibited by other, unchallenged sign code requirements. *Id.* at 801. *See also Almond Bros. Lumber Co. v. United States*, 721 F.3d 1320, 1329 (Fed. Cir. 2013) (holding that company lacked standing to challenge formula for distributing money from a fund where the company was ineligible to receive any distributions); *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 593 (10th Cir. 1996) ("a person who fails to satisfy lawful, nondiscriminatory requirements or qualifications for the benefit lacks standing to raise claims of discrimination in the denial of the benefit"); *Howard v. N.J. Dept. of Civil Service*, 667 F.2d 1099, 1101-02 (3d Cir. 1981) (plaintiffs lacked standing to challenge non-selection for positions based on an allegedly discriminatory physical exam because they failed a required written exam that was not alleged to be discriminatory). The same holds true here. Even if the Court were to find that PNG must provide retroactive reimbursement to participants who satisfy the Plan's reasonable alternative standard, Hammond would not be entitled to any relief because she never satisfied the unchallenged reasonable alternative standard requirements. Thus, any ruling from the Court on the reimbursement issue would be an impermissible advisory opinion.

    **B.    Hammond Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) Because She Lacks Statutory Standing Under ERISA.**

In addition to lacking Article III constitutional standing, Hammond also lacks statutory standing to sue because she is not a current "participant" of the Plan who is entitled to pursue a cause of action under ERISA. Hammond's statutory standing to bring an ERISA cause of action is a question of statutory interpretation assessed under Federal Rule of Civil Procedure 12(b)(6). *Jones v. NovaStar Fin., Inc.*, 2009 WL 331553, at *2 (W.D. Mo. Feb. 11, 2009).

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), limits the classes of potential plaintiffs who may bring ERISA claims. These limits are an important part of ERISA's balance of the numerous competing interests associated with employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Section 502's "carefully integrated civil enforcement provisions" are "strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004) (emphasis in original); *see also Travelers Cas. & Sur. Co. of America v. IADA Servs., Inc.*, 497 F.3d 862, 866 (8th Cir. 2007) ("[ERISA's] failure to include certain remedies should not be construed as an oversight"). Accordingly, standing under Section 502 is construed "narrowly to allow only the stated categories of parties to sue for relief directly under ERISA." *Geiler v. Jones*, 2006 WL 407683, at *2 (D. Neb. Feb. 6, 2006).

Hammond purports to bring her ERISA claim under Section 502(a)(1), 29 U.S.C. § 1132(a)(1). ECF No. 39 at 6 (¶ 14). But Section 502(a)(1) provides a cause of action only for a "participant" or "beneficiary." 29 U.S.C. § 1132(a)(1) (emphasis added). ERISA defines "participant" as "any employee or former employee of an employer, . . . , who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7) (emphasis added). The Supreme Court construed this statutory definition to "mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."[5] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989).

---

[5] Hammond has not alleged (and cannot allege in good faith) that she is a "beneficiary," which is defined by ERISA as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

12

Hammond's allegations conclusively demonstrate she is not a participant of the Plan who can bring Count VII's ERISA claim. She does not allege she is a current employee at Hollywood Casino St. Louis who is or expects to be in Plan-covered employment; to the contrary, she affirmatively alleges she is no longer employed at the Hollywood Casino.[6] ECF No. 39 at 5 (¶ 7). Hammond further fails to allege any facts showing, much less plausibly showing, that as a former employee she has "a reasonable expectation of returning to covered employment." Accordingly, Hammond can *only* qualify as a participant if her allegations plausibly show she has a "colorable claim to vested benefits."

Hammond cannot attain participant status in the third way recognized by the Supreme Court in *Bruch* because nothing in the Second Amended Complaint even remotely suggests that she has a "colorable claim to vested benefits" under the Plan, which are identified in ERISA as "medical, surgical, or hospital care or benefits," such as the cost of an operation or prescription medications. 29 U.S.C. § 1002(1). Hammond does not allege she has a vested claim for any Plan benefits that have not yet been paid to her. Simply put, the relief Hammond seeks in Count VII are *not* Plan benefits that may be recovered under Section 502(a)(1) because they are not payments "due to [a participant] under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Hammond's requested relief of disgorgement of her tobacco surcharge payments is not a benefit due under the terms of the Plan; instead, it runs contrary to the Plan's terms which she alleges expressly require

---

[6] The fact that Hammond may have been a Plan participant in the past is irrelevant. The Eighth Circuit requires a plaintiff to be a *current* participant in the Plan as of the time she brings suit in order to have ERISA standing. *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995). Indeed, "[t]he statute by its terms does *not* permit a civil action by someone who *was* a participant at the time of the alleged ERISA violation. Rather, it is written in the present tense, indicating that current participant status is the relevant test." *Id.* (quoting *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993)) (emphasis in original). Because Hammond ceased to be a Plan participant as of June 30, 2020, she lacks standing to pursue a claim under Section 502(a)(a).

13
75677702.6
Case 5:20-cv-06067-SRB    Document 48    Filed 12/21/20    Page 13 of 19

the surcharge. Hammond's claim is a far cry from a quintessential ERISA benefit claim seeking payment of a participant's medical bills. *Compare, e.g.*, *Coonce v. Aetna Life Ins. Co.*, 777 F. Supp. 759 (W.D. Mo. 1991) (claim for benefits based on plan's refusal to reimburse costs of inpatient psychiatric treatment).

Courts distinguish between claims for "benefits" due under a plan and claims for "damages" for injuries caused by allegedly unlawful conduct. *Holtzscher v. Dynegy, Inc.*, 2006 WL 626402, at *3 (S.D. Tex. Mar. 13, 2000). As the *Holtzscher* court explained:

> Former employees suing for damages do not have standing to sue under ERISA because they have already received the full amount due to them under the terms of the plan. . . . Former employees suing for vested benefits do have standing to sue under ERISA because they have not received the full amount due to them under the terms of the plan.

*Id.* (internal citations omitted); *see also Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 979 (7th Cir. 1999) (standing is only available to "any former employee who has a colorable claim to benefits *which the employer promised to provide pursuant to the employment relationship*") (emphasis added); *Kilpatrick v. Great-W. Life & Annuity Ins. Co.*, 2016 WL 9735749, at *3 (D. Colo. Sept. 16, 2016) ("where a former employee has received all *benefits entitled to him under his plan* ... he has no colorable claim that additional benefits have 'vested' or 'will vest.' ... [He] therefore seek[s] a damage award, not vested benefits improperly withheld") (modifications in original). This Court too has found that "'damages' are not available under section 1132(a)(1)(B), but rather the amount ***due under the plan***." *Titus v. Burns & McDonnell Inc.*, 2009 WL10704842, at *2 n.4 (W.D. Mo. Oct. 2, 2009) (emphasis added). Hammond does not allege the Plan failed to
14

provide her any benefit she was due under its terms. Accordingly, Hammond's claim is for "damages"; and she lacks ERISA standing to bring it.[7]

### C. Hammond Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) Because She Does Not Seek Relief Recoverable Under Section 502(a)(1) of ERISA.

Hammond's Section 502(a)(1) claim also fails for the additional reason that the damages she seeks are not included within the limited forms of recovery authorized by that section. A Section 502(a)(1) action seeks to enforce the terms of the Plan to recover benefits that the plaintiff was promised under the Plan. As described above, Hammond does not request benefits, but instead seeks extra-contractual damages to disgorge from PNG payments the Plan expressly required her to make.

As relevant here, Section 502(a)(1)(B) permits a participant to "recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."[8] 29 U.S.C. § 1132(a)(1)(B). This relief "authoriz[es] a beneficiary to bring an action to *enforce* his rights under the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) (emphasis added). Count VII does not seek to enforce the Plan terms by seeking payments that Hammond claims she was entitled to receive under the Plan's terms, but instead is contradictory to the Plan and seeks to invalidate its requirements. Indeed, the thrust of Count VII is an attempt to override the Plan's terms by

---

[7] The fact that Hammond purports to represent a class does not change the Court's analysis of her individual ERISA standing. *Hastings v. Wilson*, 516 F.3d 1055, 1061 (8th Cir. 2008) ("Because [plaintiffs] were not participants . . . of the Pilot Plan, the district court correctly held that [plaintiffs] lacked standing to bring claims on behalf of the Pilot Plan participants").

[8] Section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), permits a participant or beneficiary to recover certain relief for violations of ERISA's notice and annual reporting requirements, which are not implicated in Count VII.

disgorging surcharges that Hammond admits the Plan expressly required her to pay. But, Section 502(a)(1)(B) does ***not*** provide a cause of action for the type of extra-contractual damages Hammond seeks. *Russell*, 473 U.S. at 144 ("Significantly, [Section 502(a)(1)(B) of ERISA] says nothing about the recovery of extracontractual damages"); *also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) ("That statutory language [of Section 502(a)(1)(B) of ERISA] speaks of *enforce[ing]* the 'terms of the plan,' not of *changing*' them. . . . For that reason, we have recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims.") (emphasis and modifications in original, internal citations omitted); *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 942 (8th Cir. 1999) (holding plaintiff could not pursue a Section 502(a)(1)(B) claim where he "does not dispute that he has received the funds in his account to which he is entitled under the plan").

Because Count VII seeks to recover damages rather than Plan benefits, it seeks relief unavailable under Section 502(a)(1), and Count VII must be dismissed due to both Hammond's lack of ERISA standing and its failure to state a claim on which relief may be granted.

### D. Hammond Fails to State a Claim Under Federal Rule of Civil Procedure 12(b)(6) Because She Does Not Allege a Viable Breach of Fiduciary Duty Claim Under ERISA.

Finally, to the extent Hammond includes stray references in Count VII to some alleged breach of fiduciary duty by PNG, that claim also fails. Section 502(a)(2) only permits claims seeking relief *on behalf of the Plan* for injuries *to the Plan*, such that Hammond's bid for purely individual relief to redress a purely individual injury fails to state a claim. 29 U.S.C. § 1132(a)(2).

A ERISA's breach of fiduciary duty claim under Section 502(a)(2) of ERISA permits a party with standing[9] to seek relief that will "*make good to such plan* any *losses to the plan* resulting from each such breach, and to *restore to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a) (emphasis added); 29 U.S.C. § 1132(a)(2) (incorporating relief permitted by Section 409 of ERISA, 29 U.S.C. § 1109(a)). The Supreme Court has held that "Congress did not intend [the ERISA breach of fiduciary duty claim] to authorize any relief except for the plan itself". *Russell*, 473 U.S. at 144; *see also Burke v. Heartland Health*, 2008 WL 11429293, at *2 (W.D. Mo. Oct. 27, 2008) ("The policy underlying Section 409 of ERISA is to *make the plan – not the individual participant or beneficiary – whole* by imposing personal liability on the breaching fiduciary for *any plan losses* resulting from the breach") (emphasis added).

Count VII does not allege any "losses to the plan." Instead, it claims that individual participants were required to pay a tobacco surcharge without the ability to obtain reimbursement, all pursuant to the Plan's terms – a wholly individual injury, with no alleged harm to the Plan. Further, Hammond does not seek relief on behalf of the Plan; instead, she asks the Court to require PNG to reimburse individual participants their surcharge payments. ECF No. 39 at 43 (¶ 148); *but see Burke*, 2008 WL 11429293, at *2 ("Sections 502(a)(2) and 409 of ERISA operate to limit the relief available under Section 502(a)(2) to relief that inures to the plan itself – not to individual participants"). An ERISA breach of fiduciary duty claim is not even the vehicle a Plan participant (which, again, Hammond is not) would use to obtain relief for him or herself. For this additional reason, Count VII fails to state a claim under Rule 12(b)(6).

---

[9] A Section 502(a)(2) claim may be brought only by a participant, beneficiary, fiduciary, or the Secretary of Labor. 29 U.S.C. § 1132(a)(2). Because Hammond is not within any of those classes of persons, she also lacks standing to bring a Section 502(a)(2) claim.

## III. CONCLUSION.

For any and all of the foregoing reasons, Count VII of Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

>Respectfully submitted,
>
>POLSINELLI PC
>
>By:   /s/ Denise K. Drake
>    DENISE K. DRAKE (MO #43351)
>    JASON N.W. PLOWMAN (MO #67495)
>    KAITLIN E. GALLEN (MO #65913)
>    900 W. 48th Place, Suite 900
>    Kansas City, MO 64112
>    Telephone: (816) 753-1000
>    Facsimile: (816) 753-1536
>    ddrake@polsinelli.com
>    jplowman@polsinelli.com
>    kgallen@polsineli.com
>
>    D. JACK BLUM (admitted *pro hac vice*)
>    1401 I Street, NW, Suite 800
>    Washington, D.C. 20005
>    Telephone: (202) 772-8483
>    Facsimile: (202) 783-3535
>    jack.blum@polsinelli.com
>
>    ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

 The undersigned hereby certifies that on the 21st day of December 2020, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the Court's eFiling System, which sends a notice of electronic filing constituting service to the following:

| | |
|---|---|
| George A. Hanson<br>Alexander T. Ricke<br>Stueve Siegel Hanson LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112<br>hanson@stuevesiegel.com<br>ricke@stuevesiegel.com<br>Tel.: (816) 714-7100<br>Fax: (816) 714-7101<br><br>ATTORNEYS FOR PLAINTIFFS | Ryan L. McClelland<br>Michael J. Rahmberg<br>McClelland Law Firm<br>The Flagship Building<br>200 Westwoods Drive<br>Liberty, MO 64068-1170<br>(816) 781-0002<br>Fax: (816) 781-1984<br>ryan@mcclellandlawfirm.com<br>mrahmberg@mcclellandlawfirm.com<br><br>ATTORNEYS FOR PLAINTIFFS |

                   /s/ Denise K. Drake
                   Attorney for Defendants