**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| GINA R. LIPARI-WILLIAMS and MARISSA T. HAMMOND, | ) ) ) | |
| Plaintiffs, | ) | Case No.: 5:20-cv-06067-SRB |
| v. | ) ) | |
| THE MISSOURI GAMING COMPANY, LLC, d/b/a ARGOSY RIVERSIDE CASINO, et al., | ) ) ) | |
| Defendants. | | |

**DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND AMENDED CLASS AND
COLLECTIVE ACTION COMPLAINT**

Defendants Penn National Gaming, Inc. ("PNG"), The Missouri Gaming Company d/b/a

Argosy Casino Hotel & Spa ("Argosy"), and St. Louis Gaming Ventures, LLC d/b/a Hollywood

Casino St. Louis ("Hollywood") (collectively "Defendants"), by and through their attorneys,

answer Plaintiffs' Second Amended Class and Collective Action Complaint as follows:

1. Plaintiff Lipari-Williams commenced this action in the Circuit Court of Platte

County, Missouri on March 31, 2020 in a matter captioned *Lipari-Williams v. The Missouri

Gaming Company, LLC, et al.*, Case No. 20AE-CC00099. Defendants were served with process

on April 2, 2020 by personally serving their registered agent, CT Corporation System, with a

copy of the state court petition and summonses. Defendants removed this matter on May 1, 2020

on the basis of alleged traditional diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

*See* Notice [sic] of Removal, Doc. 1 at ¶ 8. Defendants asserted complete diversity existed

between the named parties and that Plaintiff Lipari-Williams, individually, would necessarily

incur, at least, $75,000 in reasonable attorneys' fees. *See id.* at ¶ 22-28.

**ANSWER:** **Defendants state the documents referenced speak for themselves and specifically deny any characterization or mischaracterization thereof. Defendants deny any remaining allegations and implications in Paragraph 1.**

2.     This is a class and collective action concerning three unlawful employment practices occurring at Defendant PNG's casino properties.

**ANSWER:** **Defendants deny that any class or collective has been certified, that any class or collective should be certified, that they engaged in any "unlawful employment practices," and that PNG jointly employs or employed Hollywood's or Argosy's employees, or the employees at any indirect, subsidiary casino. Defendants deny all remaining allegations and implications in Paragraph 2.**

3.     *First*, Defendants deducted from the wages of Plaintiffs and all other similarly situated employees the costs to obtain and thereafter maintain and renew state-issued gaming licenses. This practice violates both federal and Missouri law. As multiple federal district courts (including this Court) have held, these gaming licenses are primarily for the benefit and convenience of the employers (here, Defendants). As such, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, these gaming license costs may not be deducted from an employee's wages to the extent the deductions bring the employee's wages below the federally-mandated $7.25 per hour minimum wage. Likewise, the gaming license deductions are not for the "private benefit of the employees." As such, pursuant to the Missouri Minimum Wage Law ("MMWL"), RSMo. § 290.500, *et seq.*, these gaming license costs may not be deducted from an employee's wages to the extent the deductions bring the employee's wages below the Missouri minimum wage. Because Plaintiffs and all other similarly situated employees have been paid at or below the federal and Missouri minimum wage rates, the gaming license deductions

necessarily reduced their wages below the minimum wage in violation of both statutes. Plaintiffs assert the gaming license deduction claims as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and class actions pursuant Federal Rule of Civil Procedure 23.

**ANSWER:** **Defendants admit that certain individuals who wish to work in the casino industry in Missouri must personally qualify for and obtain an appropriate gaming license from the Missouri Gaming Commission. Defendants further admit that certain individuals who wish to continue working in casinos in Missouri must later qualify for and renew their license. Defendants further admit the Missouri Gaming Commission charges a fee to the individuals who wish to work or continue working in casinos in Missouri when the individuals obtain, replace or renew their personal gaming license. Defendants further admit certain Argosy and Hollywood employees voluntarily elected to pay for their gaming license through a convenient payroll deduction. To the extent this Paragraph relies on the FLSA, MMWL, or Rule 23, Defendants state they speak for themselves and specifically deny any characterization or mischaracterization thereof. Defendants specifically deny that PNG jointly employs or employed Argosy's or Hollywood's employees, that anyone other than the employees initially obtain or renew the employees' state-issued gaming license, that there are any "similarly situated employees" and that the state-issued gaming license is primarily for Defendants' benefit and convenience. Defendants deny all remaining allegations and implications in Paragraph 3.**

4.     *Second*, Defendants have created a mandatory tip pooling policy by which Defendants require their table games dealers to pool their tips and then, in violation of the FLSA and MMWL, distribute those tips to the table games dealers who earned them as well as to pay the Paid Time Off ("PTO") of certain non-tipped, manager and supervisor employees. This

75574456.2

practice violates the express language of the FLSA prohibiting tip pooling whereby employees "who customarily and regularly receive tips" share tips with non-tipped employees who do not. *See* 29 U.S.C. 203(m)(2)(A)(ii). Likewise, this practice violates the express language of the FLSA prohibiting the employer from keeping any portion of its employees' tips, "including allowing managers or supervisors to keep any portion of employees' tips." *See* 29 U.S.C. 203(m)(2)(B). In addition, this practice violates the MMWL because these table games dealers who earned the tips are not being allowed to "retain[] compensation in the form of gratuities" as provided for under the MMWL. *See* RSMo. § 290.512(1). As a result, Defendants are not entitled to a tip credit under federal or Missouri law meaning Plaintiffs and all similarly situated employees are entitled to the difference between their direct cash wage and the federal and/or applicable Missouri minimum wage, whichever is greater. In addition, under the FLSA, Plaintiffs and all similarly situated employees are entitled to recover the wrongfully diverted tips.

**ANSWER:** **Defendants admit that table games dealers at Hollywood and Argosy participate in valid tip pool arrangements. To the extent this Paragraph relies on the FLSA or the MMWL, Defendants state these they speak for themselves and specifically deny any characterization or mischaracterization thereof. Defendants specifically deny that PNG jointly employs or employed Argosy's or Hollywood's employees, that there are any "similarly situated employees," and that any tip pool arrangement violated the law. Defendants deny all remaining allegations and implications in Paragraph 4.**

5.  *Third*, Defendant PNG breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. At all relevant times, Defendant PNG has been the sponsor of a health plan to provide eligible employees and retirees of Defendant PNG with health care benefits. Since, at least, 2014, the health plan has

75574456.2

included an outcome-based wellness program based on a health factor within the meaning of ERISA. The wellness plan included a tobacco surcharge for employees enrolled in company-sponsored medical coverage who have used tobacco products within the last three months or have participating dependents who have used tobacco products within the last three months. The Tobacco Surcharge has been in place since, at least, 2014. Since 2019, the Tobacco Surcharge has been $23.08 per bi-weekly pay period ($50 per month) for one tobacco user, and $46.15 per bi-weekly pay period ($100 per month) for two tobacco users. However, if employees or their dependents enroll in a smoking cessation program, they are eligible to have the tobacco surcharge removed upon completion of the smoking cessation program. *But* any adjustments by PNG are on a *prospective* basis only - there are no retroactive adjustments to the tobacco user surcharge. In order to satisfy the requirement to provide a reasonable alternative standard, the same, full reward from an outcome-based wellness program must be available to individuals who qualify by satisfying a reasonable alternative standard as is provided to individuals who qualify by satisfying the program's otherwise applicable standard. In other words, all similarly situated employees must be allowed to obtain the *full* reward (*i.e.*, completely avoiding the tobacco surcharge) through the reasonable alternative. Because PNG refuses to make retroactive adjustments to the tobacco surcharge, individuals have not and will not receive the full amount of the reward - the tobacco surcharge will only be removed after completion of the smoking cessation program through the remainder of the plan year. As a result, PNG has failed to satisfy the requirement to provide a reasonable alternative standard to its outcome-based wellness program based on a health-status factor (tobacco). Because Defendant PNG failed to offer a reasonable alternative standard for the Tobacco Surcharge, it has operated an illegal and discriminatory outcome-based wellness program because it discriminates on the basis of a health-status related factor (namely, tobacco use). This

75574456.2

constitutes a breach of ERISA's fiduciary duties, and Defendant PNG must, among other things, disgorge all Tobacco Surcharges it obtained through its breach of fiduciary duty.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

## PARTIES

6. Plaintiff Gina R. Lipari-Williams resides in Platte City, Missouri, and is a resident of the State of Missouri. Plaintiff is currently employed by Defendants at their Argosy Riverside property located in Platte County, Missouri. Plaintiff Lipari-Williams' Consent to Join was previously filed with the Court. See Doc. 24-1.

**ANSWER:** **Upon information and belief, Defendants admit Plaintiff Gina R. Lipari-Williams resides in Platte City, Missouri, and is a resident of the State of Missouri. Defendants admit that Plaintiff was employed by Argosy, which operates a casino in Riverside, Missouri. Defendants state Exhibit A speaks for itself and specifically deny any characterization or mischaracterization thereof. Defendants specifically deny PNG and/or Hollywood jointly or otherwise employs or employed Plaintiff. Defendants deny all remaining allegations and implications in Paragraph 6.**

7. Plaintiff Marissa T. Hammond resides in St. Charles County, Missouri and is a resident of the State of Missouri. Plaintiff was previously employed by Defendants at their Hollywood Casino St. Louis property located in St. Louis County, Missouri. Plaintiff Hammond's Consent to Join was previously filed with the Court. See Doc. 24-2.

**ANSWER:** **Upon information and belief, Defendants admit Plaintiff Marissa T. Hammond resides in St. Charles County, Missouri, and is a resident of the State of**

6

Missouri. **Defendants admit that Plaintiff was formerly employed by Hollywood, which operates a casino in Maryland Heights, Missouri. Defendants state Exhibit B speaks for itself and specifically deny any characterization or mischaracterization thereof. Defendants specifically deny PNG and/or Argosy jointly or otherwise employs or employed Plaintiff. Defendants deny all remaining allegations and implications in Paragraph 7.**

8.     Defendant Argosy Riverside is a limited liability company organized under the laws of the State of Missouri with its principal place of business in Platte County, Missouri.

**ANSWER:     Defendants admit the allegations in Paragraph 8.**

9.     Defendant Hollywood Casino St. Louis is a limited liability company organized under the laws of the State of Delaware with its principal place of business in St. Louis County, Missouri.

**ANSWER:     Defendants admit the allegations in Paragraph 9.**

10.     Defendant PNG is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Wyomissing, Pennsylvania.

**ANSWER:     Defendants admit the allegations in Paragraph 10.**

## JURISDICTION AND VENUE

11.     This Court has personal jurisdiction over Defendants Argosy Riverside and Hollywood Casino St. Louis because their principal places of business are located within the State of Missouri, they transact business within the State of Missouri, they enter into contracts within the State of Missouri, and they are authorized by the Missouri Secretary of State to do business within the State of Missouri.

**ANSWER:     The allegations in Paragraph 11 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit the United States District Court for the Western District of Missouri has jurisdiction over this matter**

75574456.2

based on diversity jurisdiction and that venue is proper in the United States District Court for the Western District of Missouri as to Plaintiffs, The Missouri Gaming Company, LLC, and St. Louis Gaming Ventures, LLC. Defendants specifically deny any wrongdoing and deny all remaining allegations and implications in Paragraph 11.**

12.     This Court has personal jurisdiction over Defendant PNG because it transacts business within the State of Missouri, it enters into contracts within the State of Missouri, and it is authorized by the Missouri Secretary of State to do business within the State of Missouri. For example, Defendant PNG possesses an approved casino operator's license issued by the Missouri Gaming Commission because it owns and operates three casinos in Missouri.

**ANSWER:     The allegations in Paragraph 12 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit PNG has a casino operator's license issued by the Missouri Gaming Commission because it owns three casinos in Missouri. Defendants deny the remaining allegations and implications in Paragraph 12.**

13.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. The Court possesses subject matter jurisdiction over Plaintiffs' FLSA claims based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court likewise has subject matter jurisdiction over Plaintiffs' state-law wage and hour claims because they are so related to the FLSA claims that they form part of the same case and controversy, satisfying supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**ANSWER:     The allegations in Paragraph 13 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit federal courts**

75574456.2

have federal question jurisdiction over FLSA claims and deny all allegations and implications in Paragraph 13.

14. ERISA authorizes actions by private parties to recover damages for violations of the statute's fiduciary duties. The Court possesses subject matter jurisdiction over Plaintiff Hammond's ERISA claims based upon 29 U.S.C. §§ 1132(a)(1) and (e)(1) and 28 U.S.C. § 1331.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

15. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district. Plaintiff Lipari-Williams worked for Defendants at their Argosy Riverside property, which Defendants operate within the Western District of Missouri.

**ANSWER:** **The allegations in Paragraph 15 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit Argosy operates a casino in Platte County, Missouri, and that Plaintiff Lipari-Williams was employed by Argosy. Defendants deny PNG and/or Hollywood employed Plaintiff Lipari-Williams, jointly or otherwise. Defendants deny all remaining allegations and implications in Paragraph 15.**

16. PNG operates a hub and spoke employment structure whereby, PNG, at the operational center of the wheel, has spokes leading out to each of its individual casino subsidiaries, including Argosy Riverside and Hollywood Casino St. Louis (collectively, the subsidiary casino

entities). By design, each individual subsidiary casino entity is the acknowledged employer of the employees, like Plaintiffs, who physically work at the casino property. However, as a matter of economic reality, from its position at the operational center of this structure, PNG has the ability to and, in fact, does operate its subsidiary casinos and instructs the entities on how and when to execute employment policies. The subsidiaries casino entities must and do follow PNG's operational instructions. Due to the pervasive control PNG both possesses and exercises over the employees at each of its casinos (both directly and indirectly), PNG is a joint employer of Plaintiffs and all others similarly situated, along with each respective subsidiary casino entity, like Argosy Riverside.

**ANSWER: Defendants admit that Argosy and Hollywood are indirect subsidiaries of PNG. Defendants further admit that Argosy and Hollywood are each an independent entity that employs individuals to work at a casino[1] operated specifically by that entity. Defendants deny the remaining allegations and implications set forth in Paragraph 16, including that PNG is an employer or joint employer of Plaintiffs or any individual they seek to represent in a putative class or collective.**

17.    There is no material difference between the manner in which PNG treats each of its casino properties or the Plaintiffs (and those who are similarly situated to them) who work at each of the PNG casino properties. Each of the casino properties is akin to a regional office of PNG's nationwide gaming operation with PNG in control and directing the policies and procedures across the country that affect the day-to-day lives of Plaintiffs and all other similarly situated employees.

**ANSWER:    Defendants deny the allegations set forth in Paragraph 17.**

---

[1] Hollywood and Argosy each own and operate gaming, hospitality, and entertainment businesses that are much more involved and complicated than operating a casino. These businesses include restaurants, hotels, entertainment venues, meeting and/or banquet facilities, bars and/or lounges. Nevertheless, for ease of identification only, Defendants will refer to the businesses Argosy and Hollywood own and operate as a "casino."

18.     At all relevant times, PNG, with and through the individual subsidiary casino entities, jointly employed each Plaintiff (and other similarly situated employees) because:

       a.     PNG had the right to and did exercise control over the hiring and firing of Plaintiff and all other similarly situated employees;

       b.     PNG had the right to and did supervise the work schedules, conditions of employment, and the manner in which Plaintiff and all other similarly situated employees performed their jobs;

       c.     PNG had the right to and did determine the rate and method of payment for Plaintiff and all other similarly situated employees; and

       d.     PNG was primarily responsible for and did maintain the employment records for Plaintiff and all other similarly situated employees.

**ANSWER:     Defendants deny the allegations set forth in Paragraph 18.**

19.     As owners and operators of gaming establishments (*i.e.*, casinos) within the State of Missouri, Defendants are subject to the provisions of Missouri law governing riverboat gambling and their interpreting regulations. *See* RSMo. § 313.800, *et seq.*; *see also* Mo. Code Regs. Ann. tit. 11, § 45-4.010, *et seq*.

**ANSWER:     Paragraph 19 contains legal arguments, interpretations, and conclusions to which no response is required. To the extent a response is required, Defendants admit the gaming industry in Missouri is regulated by various statutes, rules, and regulations. Defendants deny all further remaining allegations and implications in Paragraph 19.**

75574456.2

20.     Defendants must ensure their employees possess Occupational Gaming Licenses in order to conduct Defendants' casino businesses. Without licensed employees, Defendants' Missouri casinos could not function. *See* Mo. Code Regs. Ann. tit. 11, § 45-4.010.

**ANSWER:   Paragraph 20 contains legal arguments, interpretations, and conclusions to which no response is required. To the extent a response is required, Defendants admit the gaming industry in Missouri is regulated by various statutes, regulations and rules. Defendants further admit that all companies, including Defendants, need employees to function. Defendants deny all remaining allegations and implications in Paragraph 20.**

21.     Pursuant to the Missouri Gaming Commission's regulations, Level I Occupational Gaming Licenses cost $1,000 for an application fee and $100 for an annual license fee. Level II Occupational Gaming Licenses cost $75 for an application fee and $50 for an annual license fee. See Mo. Code Regs. Ann. tit. 11, § 45-4.380.

**ANSWER:   Paragraph 21 contains legal interpretations of Missouri state regulations to which no response is required. To the extent a response is required, Defendants state the cited regulation speaks for itself and deny any characterization or mischaracterization thereof.**

22.     Defendants have established a uniform gaming license deduction policy that governs all employees at its Missouri casinos.

**ANSWER:   Defendants deny the allegations and implications in Paragraph 22.**

23.     Under this policy, Defendants deduct from their employees' wages the amount it costs Defendants to initially obtain and thereafter renew the employees' state-issued gaming licenses.

75574456.2

**ANSWER:** Defendants admit that certain individuals who wish to work in casinos in Missouri must personally qualify for and obtain an appropriate gaming license from the Missouri Gaming Commission. Defendants further admit that such individuals who wish to continue working in casinos in Missouri must later qualify for and renew their license. Defendants further admit the Missouri Gaming Commission charges a fee to the individuals who wish to work or continue working in casinos in Missouri when the individuals obtain, replace or renew their personal gaming license. Defendants further admit certain Argosy and Hollywood employees voluntarily elected to pay for their gaming license through a convenient payroll deduction. Defendants specifically deny PNG jointly or otherwise employs Argosy's or Hollywood's employees, and that there is any "uniform gaming license deduction policy." Defendants deny all remaining allegations and implications in Paragraph 23.

24.     With respect to the FLSA, Defendants may only deduct these gaming license costs from their employees' wages if the costs are primarily for the benefit of employees. However, Defendants' employees' state-issued gaming licenses are primarily for the benefit or convenience of Defendants. Defendants' casinos exist in a heavily regulated environment. For example, Defendants can only have table games in their casinos if they are operated by employees (table games dealers) who have the required state-issued gaming license. These state-issued gaming licenses are specifically required for the employee's performance of the employer's particular business. Without these state licensed employees, Defendants could not compliantly operate their casinos and, in turn, generate the revenues needed to support their operations and realize profits. Also, courts interpreting the requirements of 29 C.F.R. § 531.35 ("Free and clear" payment; "kickbacks") and 29 C.F.R. § 531.32 ("Other facilities") have drawn

13

a line between costs arising from employment itself and those arising in the ordinary course of life. Costs that "primarily benefit the employee" are universally ordinary living expenses that one would incur in the course of life outside the workplace. Occupational licensing costs-like the state-issued gaming license at issue here-arise out of employment rather than the ordinary course of life. To that end, Plaintiffs and other similarly situated employees have no use for their gaming license in the ordinary course of life outside the workplace. Therefore, Defendants' employees' state-issued gaming license primarily benefits the employer, not the employee, and cannot be deducted from their wages where, as here, it plainly creates a minimum wage violation.

**ANSWER:  The allegations in Paragraph 24 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants admit the casino business and gaming industry is regulated by various state laws, regulations, or rules. Defendants further admit that almost all companies, including Defendants, cannot operate or generate revenue without employees. Defendants deny the remaining allegations and implications set forth in Paragraph 24.**

25.    The analysis of the FLSA minimum wage claim is the same as that of the MMWL minimum wage claim because the MMWL "follow[s] the written regulations established by the United States Department of Labor pertaining to the Fair Labor Standards Act." See Mo. Code Regs. Ann. tit. 8, § 30-4.010. Like the FLSA, the MMWL only permits certain deductions to be credited as minimum wages if they are "for the private benefit of the employee." See Mo. Code Regs. Ann. tit. 8, § 30-4.050.

**ANSWER:  The allegations in Paragraph 25 are legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 25.**

75574456.2

26.     Given that Defendants' gaming license deductions primarily benefit Defendants (as opposed to Plaintiffs and similarly situated employees), Defendants may not deduct the gaming license costs from employees' wages to the extent they create a minimum wage violation under the terms of the FLSA or MMWL.

**ANSWER:     Paragraph 26 contains improper legal arguments, interpretations, and conclusions to which no response is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 26.**

27.     For Defendants' many employees, like Plaintiffs, who are paid a direct cash wage of $7.25 per hour (the federally required minimum wage) or less, which include, among others, Defendants' tipped employees (like Plaintiffs) for whom Defendants pay a sub-minimum direct cash wage and claim an FLSA section 3(m) tip credit, this gaming license deduction is unlawful because it necessarily reduces the employee's earnings below the required minimum wage or overtime compensation in the workweeks in which Defendants make the deduction, resulting in violations of the FLSA.

**ANSWER:     The allegations in Paragraph 27 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 27.**

28.     As the Department of Labor has explained, when an employer claims an FLSA section 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions because any such deduction reduces the tipped employee's wages below the minimum wage

15

**ANSWER:** The allegations in Paragraph 28 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 28.

29. This is not the first time a federal district court has considered the applicability of the FLSA to the common casino industry practice of deducting the costs of obtaining and renewing gaming licenses from employees' wages in the context of minimum wage violations.

**ANSWER:** The allegations in Paragraph 29 contain improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants state any federal district court decisions or orders or other writings speak for themselves and deny any characterization or mischaracterization thereof. Defendants deny all further remaining allegations and implications in Paragraph 29.

30. In *Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019), Judge Fenner found "[t]he necessity of a gaming license arises out of employment, and therefore, it primarily benefits Defendants, as employers. Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license." *Id.* at 1049. In *Lockett*, the Court likewise found that, because the named plaintiffs were tipped employees earning a direct cash wage of $7.24 or less, any deduction necessarily created a minimum wage violation. *Id.* at 1048-49.

**ANSWER:** The allegations in Paragraph 30 do not comply with Federal Rules of Civil Procedure 8(a) and 8(d)(1) and should be stricken by this Court as improper and immaterial. Indeed, Paragraph 30 does not even discuss Defendants. The "allegations" in Paragraph 30 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants state any decision in *Lockett* speaks for itself and deny any characterization or mischaracterization thereof.

16

Defendants deny the *Lockett* case is binding or applicable, deny they violated any laws in any way, and deny all other allegations in Paragraph 30.

31.     In *Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019), this Court found "considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw [sic], the gaming license fee is a cost arising from employment and not arising in the ordinary course of life. Plaintiffs have satisfied their burden at this early stage in the litigation to plead facts that would support the conclusion that the gaming license fee primarily benefits Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and [Missouri Minimum Wage Law]." *Id*. at *3.

**ANSWER:**     **The allegations in Paragraph 31 do not comply with Federal Rules of Civil Procedure 8(a) and 8(d)(1) and should be stricken by this Court as improper and immaterial. Indeed, Paragraph 31 does not even discuss Defendants. The "allegations" in Paragraph 31 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants state any decision in *Lilley* speaks for itself and deny any characterization or mischaracterization thereof. Defendants deny the *Lilley* case is binding or applicable, deny they violated any laws in any way, and deny all other allegations in Paragraph 31.**

32.     Likewise, the Department of Labor announced in November 2018 that it had completed an investigation and concluded that a casino operator's deductions made from employees' wages to cover its costs for individual employee's casino gaming licenses created minimum wage violations when those deductions brought the employee's pay below the federal

minimum wage of $7.25 per hour. In that case, the casino operator was required to pay $175,128 in back wages and damages to 889 employees at its casinos.

**ANSWER:** **The allegations and arguments set forth in Paragraph 32 do not comply with Federal Rules of Civil Procedure 8(a) and 8(d)(1) and should be stricken by the Court as improper and immaterial. Indeed, Paragraph 32 does not even discuss Defendants. The "allegations" in Paragraph 32 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny a Department of Labor investigation of an entirely unrelated entity applies, deny they violated any law in any way, and deny all other allegations in Paragraph 32.**

33. Defendants deducted gaming license fees from Plaintiff Lipari-Williams' wages during the pay period ending on March 14, 2019. During this pay period, Defendants deducted a gaming license fee in the amount of $25.00 from Plaintiff Lipari-Williams' wages. During this pay period, Plaintiff Lipari-Williams was paid a direct cash wage of $6.386 per hour. This wage is below the federal minimum wage of $7.25 per hour and the then-applicable Missouri minimum wage of $8.60 per hour. Under these circumstances and for purposes of the FLSA and MMWL, any deduction from Plaintiff Lipari-Williams' wages, including the unlawful gaming license deduction at issue, constitutes a minimum wage violation.

**ANSWER:** **Defendants admit Plaintiff Lipari-Williams was paid a base hourly rate of $6.386 per hour plus tips during the March 14, 2019 pay period. Defendants further admit Argosy permissibly deducted the total amount of $25.00 from Plaintiff Lipari-Williams' pay check during the time period stated in Paragraph 33. Defendants deny all remaining allegations and implications in Paragraph 33.**

75574456.2

34.     Similarly, Defendants deducted gaming license fees from Plaintiff Hammond's wages during the pay period ending on May 30, 2019. During this pay period, Defendants deducted a gaming license fee in the amount of $25.00 from Plaintiff Hammond's wages. During this pay period, Plaintiff Hammond was paid a direct cash wage of $5.6456 per hour. This wage is below the federal minimum wage of $7.25 per hour and the then-applicable Missouri minimum wage of $8.60 per hour. Under these circumstances and for purposes of the FLSA and MMWL, any deduction from Plaintiff Hammond's wages, including the unlawful gaming license deduction at issue, constitutes a minimum wage violation.

**ANSWER:     Defendants admit Plaintiff Hammond was paid a base hourly rate of $5.6456 per hour plus tips during the March 14, 2019 pay period. Defendants further admit Argosy permissibly deducted the total amount of $25.00 from Plaintiff Hammond's pay check during the time period stated in Paragraph 34. Defendants deny all remaining allegations and implications in Paragraph 34.**

35.     Pursuant to 29 U.S.C. § 216(b), "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." As Defendants violated the FLSA's minimum wage and/or overtime compensation provisions through an illegal gaming license deduction, Plaintiffs and all others similarly situated are entitled to recover their unpaid minimum wages or overtime compensation, along with an additional equal amount as liquidated damages.

**ANSWER:     The allegations in Paragraph 35 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is**

75574456.2

required, Defendants deny the allegations set forth in Paragraph 35, and deny that Plaintiffs are entitled to any relief.

36. Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA. For example, Defendants have been aware of Judge Fenner's decision in *Lockett* holding gaming licenses are primarily for the benefit of the employer and may not be deducted where it creates a minimum wage violation since the decision was issued and has continued to deduct the cost of gaming licenses from its employees' wages since that opinion was issued. Further, Defendants have also intentionally or recklessly ignored case law from the Southern District of New York issued in 2013 that expressly holds that occupational licensing costs are primarily for the benefit of the employer and, therefore, cannot be deducted from an employee's wages if the deduction reduces the employee's earnings below the required minimum wage or overtime compensation. *See Williams v. Secure Resource Communication Corp.*, 2013 WL 4828578 (S.D.N.Y. Sept. 10, 2013).

**ANSWER:** **The allegations in Paragraph 36 include improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny *Williams* is binding or applicable, deny they violated any laws in any way, and deny all other allegations in Paragraph 36.**

37. Plaintiff Lipari-Williams is table games dealer who participates in mandatory tip pooling arrangement at Defendants' Argosy Riverside property. Plaintiff Hammond was a table games dealer who participated in a mandatory tip pooling arrangement at Defendants' Hollywood Casino St. Louis property. Defendants have operated an unlawful tip pooling

20

arrangement in violation of the FLSA and MMWL by including a category of employees commonly referred to as "Dual-Rate Supervisors" in the tip pool as explained below.

**ANSWER:** **Defendants admit Plaintiff Lipari-Williams was Table Games Dealer working at Argosy who participated in a valid tip pool. Defendants admit Plaintiff Hammond is a former Table Games Dealer who worked at Hollywood who participated in a valid tip pool. Defendants deny the remaining allegations and implications set forth in Paragraph 37.**

38. PNG has established a uniform or substantially similar Paid Time Off ("PTO") policy that governs PTO for hourly employees at its casinos, including Argosy Riverside and Hollywood Casino St. Louis.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 38.**

39. PNG's PTO policy provides that PTO hours accrue for every hour worked based on the employee's length of service with PNG according to a set schedule.

**ANSWER:** **Defendants admit PTO hours at Argosy and Hollywood accrue PTO based on hours worked and length of service. Defendants deny the remaining allegations and implications set forth in Paragraph 39.**

40. Defendants jointly employ certain workers under the job title "Dual-Rate Supervisor" (or its equivalent by any other name), which includes employment in two occupations: (1) floor supervisor; and (2) table games dealer. The Department of Labor refers to this type of employment as a "dual job" situation.

**ANSWER:** **Defendants admit Argosy and Hollywood employed individuals with various job titles, including Table Games Dealer, and individuals who work as dual-rate dealers. Defendants deny PNG employed or jointly employed any employees with the job**

titles Dual-Rate Supervisor, Floor Supervisor, or Table Games Dealer (or otherwise). To the extent Paragraph 40 call for legal conclusions to which no answer is required, Defendants deny the same. Defendants deny the remaining allegations and implications set forth in Paragraph 40.

41.     With respect to their employment as a floor supervisor (a non-tipped occupation), these employees are paid a regularly hourly rate (say, $19 per hour). Defendants classify full-time floor supervisors (who perform the same job duties as dual rate supervisors when Dual-Rate Supervisors are functioning in their floor supervisor role) as exempt pursuant to the executive and/or administrative exemption. Hours worked in their employment as a floor supervisor are specifically tracked and separately paid as such in Defendants' timekeeping and payroll records.

**ANSWER:     Defendants admit Argosy and Hollywood pay "dual rate" employees a separate hourly rate for each different job performed. Defendants deny the remaining allegations and implications set forth in Paragraph 41, including that any Table Games Dealer working in a "dual rate" position was a "supervisor" or "manager" pursuant to or consistent with the FLSA.**

42.     With respect to Dual-Rate Supervisors' employment as a table games dealer (a tipped occupation that participates in a mandatory tip pooling arrangement with Plaintiffs and other similarly situated employees), Defendants pay a sub-minimum direct cash wage. Under the FLSA, the sub-minimum direct cash wage must be at least $2.13 per hour, and the employer is able to count a limited amount of the employee's tips (as re-distributed by the employer to the employee under a valid tip pooling arrangement) as a partial credit to satisfy the difference between the direct cash wage and the required federal minimum wage (known as a "tip credit"), see 29 U.S.C. § 203(m)(2)(A). The credit allowed on account of tips may be less than that

permitted by statute, but it cannot be more. To illustrate, if Defendants pay a table games dealer a sub-minimum direct cash wage of say $4.25 per hour, the amount of the "tip credit" would be $3 (the difference between the employee's direct cash wage of $4.25 and the federal minimum wage of $7.25) - on the assumption further that the amount of tips actually received by the tipped employee (as redistributed by Defendants according to the mandatory tip pooling arrangement) is enough to make up the difference between the employee's direct cash wage and the federal minimum wage; if not, Defendants must make up the difference to ensure the employee is paid at least the required minimum wage for all hours worked in their employment as a table games dealer.

**ANSWER:** **The allegations in Paragraph 42 do not comply with Federal Rules of Civil Procedure 8(a) and 8(d)(1) and should be stricken by this Court as improper and immaterial. The allegations in Paragraph 42 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants admit Argosy and Hollywood pay some Table Games Dealers a base rate at less than the minimum wage, plus tips. Defendants deny all remaining allegations and implications in Paragraph 42.**

43. Under the FLSA, when an employer employs someone in both a tipped and non-tipped occupation, the tip credit is available only for the hours the employee works in the tipped occupation. Thus, for Defendants' Dual-Rate Supervisors, the hours worked in the tipped occupation (table games dealer) must be tracked and paid separately from the hours worked in the non-tipped occupation (floor supervisor).

**ANSWER:** **Defendants admit Argosy and Hollywood pay "dual rate" employees a separate hourly rate for each different job performed and separately track the hours**

worked in each different job. The remaining allegations in Paragraph 43 are improper legal arguments, interpretations, and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the remaining allegations and implications set forth in Paragraph 43.

44.     Dual-Rate Supervisors accrue PTO in a single pot. This means there is not one pot for PTO accrued as a tipped, hourly table games dealer, on the one hand, and a separate pot for PTO accrued as a non-tipped and manager/supervisor Dual-Rate Supervisor, on the other hand. Instead, the PTO earned by Dual-Rate Supervisors simply accrues in a single pot.

**ANSWER:     Defendants admit Argosy and Hollywood employees who work in a dual-rate capacity in their respective table games departments accrue PTO based on their time worked and length of service. Defendants further deny the remaining allegations and implications in Paragraph 44.**

45.     For Dual-Rate Supervisors, Defendants do not track how their PTO was accrued. However, when Dual-Rate Supervisors take PTO, they are paid PTO out of the table games dealers' tip pool. The PTO hours accrued in their employment as a floor supervisor (a non-tipped occupation and managerial and supervisory position) should not properly included in any valid tip pooling arrangement among table games dealers (like Plaintiff). But that is precisely what Defendants are doing for their own economic benefit and to the detriment of these employees.

**ANSWER:     Defendants deny the allegations in Paragraph 45, including that any uniform or substantially similar policy or practice exists or existed which results or resulted in dual-rate employees being paid as if they were or are employed only as Table Games Dealers.**

46. Defendants also unlawfully redistribute a portion of the table games dealers' tips to Dual-Rate Supervisors when they are paid for such things as jury duty, bereavement leave, sick leave, FMLA leave, and the like, which accrue and/or are paid in the same or substantially similar unlawful manner as the PTO described above. To the extent Dual-Rate Supervisors accrue such additional paid leave in their employment as a floor supervisor, those hours cannot be included as part of any valid tip pooling arrangement among table games dealers.

**ANSWER: Defendants deny the allegations set forth in Paragraph 46, including that any uniform or substantially similar policy or practice exists or existed which results or resulted in dual-rate employees being paid as if they were or are employed only as Table Games Dealers.**

47. Defendants' above-described scheme for the payment of PTO hours (and other forms of paid leave) for Dual-Rate Supervisors is unlawful and violates the FLSA's tip-pooling provisions because (1) Defendants are violating the FLSA's requirement that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement; (2) Defendants are violating the FLSA's prohibition against the pooling of tips among employees who do not customarily and regularly receive tips; and (3) Defendants are violating the FLSA's requirement that it "not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of the employees' tips, regardless of whether or not the employer takes a tip credit" - *see* 29 U.S.C. § 203(m), as amended by the Consolidated Appropriations Act, 2018 (signed March 23, 2018), along with such section as was in effect prior to then, and all applicable regulations (as the position title Dual-Rate Supervisor and Floor Supervisor confirm, when Dual-Rate Supervisors are

25

75574456.2

performing their non-tipped supervisory duties they are "managers or supervisors" within the meaning of the FLSA).

**ANSWER:** **Defendants deny there is any "scheme," and deny all remaining allegations and implications set forth in Paragraph 47.**

48.     Defendants' above-described scheme also results in Defendants' violation of the FLSA's minimum wage payment requirements, 29 U.S.C. § 206, because Defendants are paying a direct cash wage to table games dealers (including Plaintiff) that is less than the required minimum wage, and, due to Defendants' non-compliance with the FLSA's tip-pooling provisions, Defendants are not entitled to any credit using employees' tips against its minimum wage obligation with respect to Plaintiffs, and other similarly situated employees.

**ANSWER:** **Defendants deny there is any "scheme," and deny all remaining allegations and implications set forth in Paragraph 48.**

49.     For the same reasons, Defendants' above-described tip pooling practice also violates the MMWL. Pursuant to the MMWL, an employer may only pay a sub-minimum direct cash wage to an employee "who receives and retains compensation in the form of gratuities in addition to wages..." *See* RSMo. § 290.512(1). Defendants' tip pooling practices violate the MMWL because employees are not retaining tips within the meaning of the MMWL when tips are redistributed from the mandatory tip pool to non-tipped employees and manager/supervisor employees in the form of PTO. Due to these violations, Defendants may not claim a tip credit and may not pay a direct cash wage below Missouri's minimum wage meaning Defendants owe Plaintiff and all similarly situated employees the difference between their direct cash wage and the then-applicable minimum wage.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 49.**

50.     Because Defendants' FLSA violations as alleged herein were neither sporadic nor infrequent, Defendants' tip pooling arrangement for table games dealers should be invalidated for the entire statutory look-back period of three (3) years. Alternatively, and at a minimum, Defendants' tip pooling arrangement for table games dealers should be invalidated as to any pay period during the statutory look-back period of three (3) years in which Defendants unlawfully kept and then improperly redistributed table games dealers' tips to pay PTO hours (or other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

**ANSWER:     Defendants deny the allegations set forth in Paragraph 50.**

51.     As a result of Defendants' above-described FLSA violations, and pursuant to 29 U.S.C. § 216(b), Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor, and (3) an additional equal amount as liquidated damages.

**ANSWER:     Defendants deny the allegations in Paragraph 51, and deny that Plaintiffs are entitled to any relief.**

52.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA. By way of example, Defendants recognize, by their own pay policies, that Dual-Rate Supervisors are not permitted to participate in the table games dealers' tip pool for regular hours earned in their capacity as floor supervisors. Under the

27

circumstances, it demonstrates willful violations of the FLSA, or at least reckless disregard for the FLSA, to include other compensation (e.g., PTO, bereavement leave, sick leave, etc.) accrued by Dual-Rate Supervisors in their role as floor supervisors for payment from the table games dealers' tip pool.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 52.**

53. Plaintiffs and other similarly situated employees are also entitled under the FLSA, 29 U.S.C. § 216(b), to recover a reasonable attorney's fee to be paid by the Defendants, and costs of this action.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 53, and deny that Plaintiffs are entitled to any relief.**

54. Plaintiffs Lipari-Williams and Hammond bring Count I, the FLSA claim arising out of Defendants' unlawful gaming license deduction policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves individually and the following collective action class:

**Fair Labor Standards Act Collective - Gaming License Deduction**

All persons employed and paid a direct cash wage of $7.25 per hour or less at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis, and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from three years preceding the filing of the Complaint.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 54, including that any gaming license deduction collective action is appropriate and that any Plaintiff has standing to bring such an action.**

55. Plaintiff Lipari-Williams and Hammond bring Count II, the FLSA claim arising out of Defendants' illegal tip pooling policy, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself individually and the following collective action class:

**Fair Labor Standards Act Collective - Illegal Tip Pooling**

All persons employed as table games dealers at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis who participated in the table games dealer tip pool, at any time from three years preceding the filing of the Complaint.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 55, including that any tip pooling collective action is appropriate.**

56.     Plaintiffs' FLSA claims (Count I and II) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b). Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Defendants' above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action by U.S. Mail, email, text message, and posting an approved notice.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 56.**

57.     Plaintiffs bring Counts III, IV, V, VI, and VII as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of four classes.

**ANSWER:** **Defendants deny Plaintiffs have standing to bring these claims, that any such duplicative or pre-empted claims are appropriate, and that any such class actions are appropriate pursuant to Rule 23. Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding Count VII. Fed. R. Civ. Proc. 12(a)(4). Defendants further deny any remaining allegations and implications set forth in Paragraph 57.**

58.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiffs Lipari-Williams and Hammond bring Count III on behalf of themselves and the following class:

**Missouri Minimum Wage Law Class - Gaming License Deductions**

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license when the employee's direct cash wage was equal to or less than the then-applicable state minimum wage, at any time from three years prior to the filing of the Complaint to the present.

**ANSWER:** **Defendants deny that Plaintiffs have standing to bring this claim, that any such duplicative or pre-empted claims are appropriate, and that any such class action is appropriate pursuant to Rule 23. Defendants further deny any remaining allegations and implications set forth in Paragraph 58.**

59. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiffs Lipari-Williams and Hammond bring Count IV on behalf of themselves and the following class:

**Missouri Minimum Wage Law Class - Illegal Tip Pooling**

All persons employed as table games dealers at PNG casinos Argosy Casino Riverside and Hollywood Casino St. Louis who participated in the table games dealer tip pool, at any time from three years preceding the filing of the Complaint to the present.

**ANSWER:** **Defendants deny that Plaintiffs have standing to bring this claim, that any such duplicative or pre-empted claims are appropriate, and that any such class action is appropriate pursuant to Rule 23. Defendants further deny any remaining allegations and implications set forth in Paragraph 59.**

60. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiffs Lipari-Williams and Hammond bring Count V on behalf of themselves and the following class:

**Missouri Breach of Contract Class - Gaming License Deductions**

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued

75574456.2

gaming license, at any time from five years prior to the filing of the Complaint to the present.

**ANSWER:** **Defendants deny that Plaintiffs have standing to bring this claim, that any such duplicative or pre-empted claims are appropriate, and that any such class action is appropriate pursuant to Rule 23. Defendants further deny any remaining allegations and implications set forth in Paragraph 60.**

61. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff Lipari-Williams and Hammond bring Count VI on behalf of themselves and the following class:

### Missouri Unjust Enrichment/Quantum Meruit Class - Gaming License Deductions

All persons currently or formerly employed in hourly positions at Defendants' Argosy Riverside and/or Hollywood St. Louis properties and for whom a deduction was taken from their wages (or if the employee paid directly) for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license, at any time from five years prior to the filing of the Complaint to the present.

**ANSWER:** **Defendants deny that Plaintiffs have standing to bring this claim, that any such duplicative or pre-empted claims are appropriate, and that any such class action is appropriate pursuant to Rule 23. Defendants further deny any remaining allegations and implications set forth in Paragraph 61.**

62. Pursuant to Federal Rules of Civil Procedure 23(a) and (b), Plaintiff Hammond brings Count VII on behalf of herself and the following class:

### ERISA CLASS – Tobacco Surcharge

All participants in Defendant PNG's health plan who paid a tobacco surcharge, at any time from six years prior to the filing of the Complaint to the present.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to**

31

Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).

63. Plaintiffs' MMWL claims (Count III and IV), breach of contract claim (Count V), unjust enrichment/quantum meruit claim (Count VI), and Plaintiff Hammond's ERISA claim (Count VII) as described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Federal Rule of Civil Procedure 23.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4). Defendants deny the remaining allegations set forth in Paragraph 63.**

64. These classes each number in the hundreds, if not thousands, of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through U.S. Mail, e-mail, text message, and posting of an approved notice. Further, members can readily be identified by records Defendants, as employers, are required to maintain.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 64.**

65. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

a. Whether Defendants failed to pay Plaintiffs and class members minimum wage within the meaning of the Missouri Minimum Wage Law when they deducted gaming license fees from their wages;

b. Whether Defendants failed to pay Plaintiffs and class members overtime wages within the meaning of the Missouri Minimum Wage Law when they deducted gaming license fees from their wages;

c. Whether the gaming license fees are for the private benefit of Plaintiffs and class members such that they may be credited as wages;

d. Whether Defendants claimed a tip credit pursuant to the Missouri Minimum Wage Law against their Missouri minimum wage obligations;

e. Whether Defendants included non-tipped and/or manager/supervisor employees in the table games dealer tip pool;

f. Whether Defendants' tip pooling practices violated the Missouri Minimum Wage Law;

g. Whether Defendants breached their contracts with Plaintiffs and class members by failing to pay them for all hours worked by virtue of deducting the gaming license fees from their wages;

h. Whether Defendants were unjustly enriched by virtue of deducting the gaming license fees from Plaintiffs' and class members' wages;

i. Whether Defendant PNG offered participants in its health plan a reasonable alternative to the Tobacco Surcharge;

j. Whether Defendant PNG offered all similarly situated participants in its health plan the ability to obtain the same full reward of its outcome-based wellness program;

75574456.2

k.  Whether Defendant PNG disclosed to health plan participants any alternative to the Tobacco Surcharge in all of its health plan materials; and

l.  Whether Defendant PNG breached its fiduciary duties with respect to the Tobacco Surcharge.

**ANSWER:  Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4). Defendants deny the remaining allegations set forth in Paragraph 65.**

66.  The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

**ANSWER:  Defendants deny the allegations set forth in Paragraph 66.**

67.  Plaintiffs Lipari-Williams and Hammond's wage and hour claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs, were subject to the same unlawful gaming license fee deduction practices as Plaintiffs, and were subject to the same unlawful tip pooling procedures as Plaintiffs.

**ANSWER:  Defendants deny the allegations set forth in Paragraph 67.**

68.  Plaintiff Hammond's ERISA claim is typical of those of all class members because all class members have been subject to the Tobacco Surcharge under the same or similar circumstances.

34

**ANSWER:** Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).

69. A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 69.

70. Plaintiffs are adequate representatives because they are members of each of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation, including, specifically, gaming license fee deduction claims.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 70.

71. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in

75574456.2

consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 71.**

## COUNT I

72. At all relevant times, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:** **Defendants admit Plaintiffs' employment with Hollywood and Argosy is subject to the FLSA. Defendants deny any remaining allegations and implications in Paragraph 72.**

73. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

**ANSWER:** **The allegations in Paragraph 73 are legal statements and conclusions to which no answer is required. To the extent an answer is required, Defendants admit the FLSA regulates the payment of minimum wage and overtime pay with regard to certain employees. Defendants deny the remaining allegations and implications set forth in Paragraph 73.**

74. Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce. At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

36

**ANSWER:** Defendants admit they are subject to the minimum wage and overtime pay requirements of the FLSA with regard to their non-exempt employees. Defendants deny the remaining allegations and implications set forth in Paragraph 74.

75.     At all relevant times, Defendants were "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

**ANSWER:** Defendants admit Argosy was the employer of Plaintiff Lipari-Williams and Hollywood was the employer of Plaintiff Hammond. Defendants deny that PNG employed (jointly or otherwise) Plaintiffs or the individuals Plaintiffs seek to represent, deny there are "similarly situated employees," and deny any remaining allegations and implications in Paragraph 75.

76.     At all relevant times, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e).

**ANSWER:** Defendants admit Plaintiff Lipari-Williams was an employee of Argosy and Plaintiff Hammond was an employee of Hollywood. Defendants deny PNG employed (jointly or otherwise) Plaintiffs or the individuals Plaintiffs claim are similarly situated in any respect, deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 76.

77.     Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

**ANSWER:** Defendants admit Plaintiffs were non-exempt employees of Argosy (Plaintiff Lipari-Williams) and Hollywood (Plaintiff Hammond) within the meaning of the FLSA. Defendants deny PNG employed (jointly or otherwise) Plaintiffs or the individuals

75574456.2

Plaintiffs claim are similarly situated in any respect, deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 77.

78.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207(a).

**ANSWER:     The allegations in Paragraph 78 are legal statements and conclusions to which no answer is required. To the extent an answer is required, Defendants admit that certain employees are subject to the FLSA and are entitled to be paid consistent with its terms. Defendants deny the remaining allegations and implications set forth in Paragraph 78.**

79.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

**ANSWER:     The allegations in Paragraph 79 are improper legal arguments and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 79.**

80.     Plaintiffs and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

**ANSWER:     Defendants deny the allegations set forth in Paragraph 80.**

81.     By deducting the cost of gaming licenses (whether initially obtaining, renewing, or maintaining) from the wages of Plaintiffs and all similarly situated employees, Defendants have caused minimum wage violations given that Plaintiffs and all similarly situated employees are paid a direct cash wage of $7.25 or less. Further, the deductions are primarily for the benefit

of Defendants (as opposed to Plaintiffs and all similarly situated employees) such that they may not be deducted.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 81.**

82.     Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of this First Amended Class and Collective Action Complaint plus periods of equitable tolling, because, as described above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 82, and deny that Plaintiffs are entitled to equitable tolling or any relief.**

83.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 83, and deny that Plaintiffs are entitled to any relief.**

84.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the

unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 84, and deny that Plaintiffs are entitled to any relief.**

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a. conditional and final collective action certification of Plaintiffs' FLSA claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b. damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

c. reasonable attorneys' fees under the 29 U.S.C. § 216(b);

d. liquidated damages and/or pre-judgment interest;

e. costs of suit under 29 U.S.C. § 216(b); and

f. any further relief that the Court may deem just and equitable.

**ANSWER:** **Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT I."**

## COUNT II

85. At all relevant times, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:** **Defendants admit Plaintiffs' employment with Argosy and Hollywood is subject to the FLSA. Defendants deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 85.**

86. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in

40

the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

**ANSWER:** **The allegations in Paragraph 86 are legal statements and conclusions to which no answer is required. To the extent an answer is required, Defendants admit the FLSA regulates the payment of minimum wage and overtime pay with regard to certain employees. Defendants deny the remaining allegations and implications set forth in Paragraph 86.**

87.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are both enterprises engaged in interstate commerce and their employees are engaged in commerce. At all relevant times, each Defendant is or has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

**ANSWER:** **Defendants admit they are subject to the minimum wage and overtime pay requirements of the FLSA with regard to their non-exempt employees. Defendants deny the remaining allegations and implications set forth in Paragraph 87.**

88.     At all relevant times, Defendants were "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

**ANSWER:** **Defendants admit Argosy was the employer of Plaintiff Lipari-Williams and Hollywood was the employer of Plaintiff Hammond. Defendants deny that PNG employed (jointly or otherwise) Plaintiffs or the individuals Plaintiffs claim are similarly situated in any respect, deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 88.**

41

89.     At all relevant times, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA. *See* 29 U.S.C. § 203(e).

**ANSWER:     Defendants admit Plaintiff Lipari-Williams was an employee of Argosy and Plaintiff Hammond was an employee of Hollywood. Defendants deny PNG employed (jointly or otherwise) Plaintiffs or the individuals Plaintiffs claim are similarly situated in any respect, deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 89.**

90.     Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

**ANSWER:     Defendants admit Plaintiffs are or were non-exempt employees within the meaning of the FLSA employed by Argosy (Plaintiff Lipari-Williams) and Hollywood (Plaintiff Hammond). Defendants deny PNG employed (jointly or otherwise) Plaintiffs or the individuals Plaintiffs claim are similarly situated in any respect, deny there are "similarly situated employees," and deny any remaining allegations and implications set forth in Paragraph 90.**

91.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. *See* 29 U.S.C. § 207(a).

**ANSWER:     The allegations in Paragraph 91 are legal statements and conclusions to which no answer is required. To the extent an answer is required, Defendants admit that certain employees are subject to the FLSA and are entitled to be paid consistent with its**

75574456.2

terms. **Defendants deny the remaining allegations and implications set forth in Paragraph 91.**

92.    Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none apply here.

**ANSWER:    The allegations in Paragraph 92 are improper legal arguments and conclusions to which no answer is required. To the extent an answer is required, Defendants deny the allegations set forth in Paragraph 92.**

93.    Plaintiffs and all similarly situated employees are victims of uniform or substantially similar compensation policies and practices.

**ANSWER:    Defendants deny the allegations set forth in Paragraph 93.**

94.    As described above, Defendants operated an illegal tip pool by including non-tipped and/or manager/supervisor employees in the tip pool. As a result, Defendants may not claim a tip credit against their obligations to pay minimum wage. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (i.e., the difference between the direct cash wage and the required federal minimum wage) / the amount of the unpaid minimum wages, and (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

**ANSWER:    Defendants deny the allegations set forth in Paragraph 94.**

95.    Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage within the three (3) years preceding the filing of this First Amended Class and Collective Action Complaint plus periods of equitable tolling, because, as described

43

above, Defendants acted willfully and knew, or showed reckless disregard of, whether their conduct was prohibited by the FLSA.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 95, and deny that Plaintiffs are entitled to equitable tolling or any relief.**

96.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 96, and deny that Plaintiffs are entitled to any relief.**

97.     As a result of these violations of the FLSA's minimum wage provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 97, and deny that Plaintiffs are entitled to any relief.**

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a.      conditional and final collective action certification of Plaintiffs' FLSA claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b.      damages for unpaid minimum wages and overtime under 29 U.S.C. § 216(b);

c.      reasonable attorneys' fees under the 29 U.S.C. § 216(b);

d.      liquidated damages and/or pre-judgment interest;

e.      costs of suit under 29 U.S.C. § 216(b); and

f.      any further relief that the Court may deem just and equitable.

**ANSWER:      Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT II."**

## COUNT III

98.      At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

**ANSWER:      Defendants admit that the MMWL provides certain rights and protections to covered employees, and that Plaintiffs are attempting to bring claims on behalf of themselves and others pursuant to the MMWL. Defendants deny any such action is proper and deny all remaining allegations and implications in Paragraph 98.**

99.      The Missouri Minimum Wage Law regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law. RSMo. §§ 290.500(3), (4); RSMo. § 290.505.1.

45

**ANSWER:** The allegations in Paragraph 99 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants admit the MMWL regulates the payment of minimum wage and overtime with regard to certain employees. Defendants deny all remaining allegations and implications in Paragraph 99.

100. The Missouri Minimum Wage Law should be construed in accordance with its provisions and those of the Fair Labor Standards Act ("FLSA"). Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of The Missouri Minimum Wage Law follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1).

**ANSWER:** The allegations in Paragraph 100 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants deny all allegations and implications in Paragraph 100.

101. During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the class members within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3), (4).

**ANSWER:** Defendants admit that Argosy formerly employed Plaintiff Lipari-Williams. Defendants admit Hollywood formerly employed Plaintiff Hammond. Defendants deny PNG employed Plaintiffs or the putative class members, jointly or otherwise, and deny that class treatment is appropriate, that there are any "class members," and that any class has been or should be certified. Defendants deny all remaining allegations and implications in Paragraph 101.

46

102. During all times relevant to this action, Plaintiffs and the class members were Defendants' "employees" within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3).

**ANSWER:** **Defendants admit that Plaintiff Lipari-Williams is a former employee of Argosy. Defendants admit that Plaintiff Hammond is a former employee of Hollywood. Defendants deny PNG employed Plaintiffs or the putative class members, jointly or otherwise, and deny that class treatment is appropriate, that there are any "class members," and that any class has been or should be certified. Defendants deny all remaining allegations and implications in Paragraph 102.**

103. Plaintiffs and the class members are covered, non-exempt employees within the meaning of the Missouri Minimum Wage Law. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. RSMo. § 290.502.1.

**ANSWER:** **Defendants admit Argosy employed Plaintiff Lipari-Williams as a non-exempt employee and Hollywood employed Plaintiff Hammond as a non-exempt employee. Defendants specifically deny PNG employed Plaintiffs or any putative class member, jointly or otherwise, and deny that class treatment is appropriate, that there are any "class members," and that any class has been or should be certified. Defendants deny all remaining allegations and implications in Paragraph 103.**

104. Pursuant to the Missouri Minimum Wage Law, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. RSMo. § 290.505.1.

75574456.2

**ANSWER:** The allegations in Paragraph 104 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants admit that certain employees are subject to the MMWL and are entitled to be compensated consistent with its terms. Defendants deny all remaining allegations and implications in Paragraph 104.

105. Although the Missouri Minimum Wage Law contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none apply here. RSMo. § 290.500(3).

**ANSWER:** The allegations in Paragraph 105 are improper legal arguments and conclusions to which no response is required. To the extent a response is required, Defendants deny all allegations and implications in Paragraph 105.

106. Plaintiffs and the class members are victims of uniform and employer-based compensation policies, specifically the deduction of the cost of obtaining and thereafter maintaining a gaming license from their wages.

**ANSWER:** Defendants deny the allegations in Paragraph 106.

107. Plaintiffs and the Class are entitled to damages equal to all unpaid regular and overtime wages due within three years preceding the filing of the Class Action Petition, plus periods of equitable tolling, along with an additional amount as treble damages, less any amount actually paid to the employees by Defendants. RSMo. § 290.527.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 107, and specifically deny that Plaintiffs are entitled to equitable tolling or any relief.

108. Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

48

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 108, and deny that Plaintiffs are entitled to any relief.**

109.    Defendants are also liable to Plaintiffs and the Class for costs and reasonable attorney fees incurred in this action. RSMo. § 290.527.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 109, and deny that Plaintiffs are entitled to any relief.**

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a.      class action certification of Plaintiffs' MMWL claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b.      damages for unpaid minimum wages and overtime under RSMo. § 290.527;

c.      reasonable attorneys' fees under RSMo. § 290.527;

d.      treble damages, liquidated damages, and/or pre-judgment interest pursuant to the MMWL under RSMo. § 290.527;

e.      costs of suit under RSMo. § 290.527; and

f.      any further relief that the Court may deem just and equitable.

**ANSWER: Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT III."**

## COUNT IV

110.    At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, RSMo. §§ 290.500, *et seq.*

**ANSWER:** **Defendants admit that the MMWL provides certain rights and protections to covered employees, and that Plaintiffs are attempting to bring claims on**

behalf of themselves and others pursuant to the MMWL. **Defendants deny any such action is proper and deny all remaining allegations and implications in Paragraph 110.**

111.    The Missouri Minimum Wage Law regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law. RSMo. §§ 290.500(3), (4); RSMo. § 290.505.1.

**ANSWER:    The allegations in Paragraph 111 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants admit the MMWL regulates the payment of minimum wage and overtime with regard to certain employees. Defendants deny all remaining allegations and implications in Paragraph 111.**

112.    The Missouri Minimum Wage Law should be construed in accordance with its provisions and those of the Fair Labor Standards Act ("FLSA"). Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of The Missouri Minimum Wage Law follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1).

**ANSWER:    The allegations in Paragraph 112 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants deny all allegations and implications in Paragraph 112.**

113.    During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the class members within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3), (4).

**ANSWER:** Defendants admit that Argosy formerly employed Plaintiff Lipari-Williams. Defendants admit Hollywood formerly employed Plaintiff Hammond. Defendants deny PNG employed Plaintiffs or the putative class members, jointly or otherwise, and deny that class treatment is appropriate, that there are any "class members," and that any class has been or should be certified. Defendants deny all remaining allegations and implications in Paragraph 113.

114. During all times relevant to this action, Plaintiffs and the class members were Defendants' "employees" within the meaning of the Missouri Minimum Wage Law. RSMo. §§ 290.500(3).

**ANSWER:** Defendants admit that Plaintiff Lipari-Williams is a former employee of Argosy since October 2010. Defendants admit that Plaintiff Hammond is a former employee of Hollywood. Defendants deny PNG employed Plaintiffs or the putative class members, jointly or otherwise, and deny that class treatment is appropriate, that there are any "class members," and that any class has been or should be certified. Defendants deny all remaining allegations and implications in Paragraph 114.

115. Plaintiffs and the class members are covered, non-exempt employees within the meaning of the Missouri Minimum Wage Law. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. RSMo. § 290.502.1.

**ANSWER:** Defendants admit Argosy employed Plaintiff Lipari-Williams as a non-exempt employee and Hollywood employed Plaintiff Hammond as a non-exempt employee. Defendants specifically deny PNG employed Plaintiffs or any putative class member, jointly or otherwise, and deny that class treatment is appropriate, that there are

51

any "class members," and that any class has been or should be certified. **Defendants deny all remaining allegations and implications in Paragraph 115.**

116.     Pursuant to the Missouri Minimum Wage Law, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. RSMo. § 290.505.1.

**ANSWER:     The allegations in Paragraph 116 are legal statements and conclusions to which no response is required. To the extent a response is required, Defendants admit that certain employees are subject to the MMWL and are entitled to be compensated consistent with its terms. Defendants deny all remaining allegations and implications in Paragraph 116.**

117.     Although the Missouri Minimum Wage Law contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none apply here. RSMo. § 290.500(3).

**ANSWER:     The allegations in Paragraph 117 are improper legal arguments and conclusions to which no response is required. To the extent a response is required, Defendants deny all allegations and implications in Paragraph 117.**

118.     Plaintiffs and the class members are victims of uniform and employer-based compensation policies, specifically, Defendants' illegal tip pooling. As described above, Defendants operated an illegal tip pool by including non-tipped and/or manager/supervisor employees in the tip pool. As a result, Defendants may not claim a tip credit against their obligations to pay minimum wage. Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (i.e., the difference

between the direct cash wage and the required Missouri minimum wage) / the amount of the unpaid minimum wages, and (2) all tips that were unlawfully kept by Defendants and then improperly redistributed as payment of PTO hours (and other forms of paid leave) accrued by Dual-Rate Supervisors in their employment as a floor supervisor.

**ANSWER:** **Defendants deny the allegations and implications Paragraph 118.**

119.   Plaintiffs and the Class are entitled to damages equal to all unpaid regular and overtime wages due within three years preceding the filing of the Class Action Petition, plus periods of equitable tolling, along with an additional amount as treble damages, less any amount actually paid to the employees by Defendants. RSMo. § 290.527.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 119, and specifically deny that Plaintiffs are entitled to equitable tolling or any relief.**

120.   Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 120, and deny that Plaintiffs are entitled to any relief.**

121.   Defendants are also liable to Plaintiffs and the Class for costs and reasonable attorney fees incurred in this action. RSMo. § 290.527.

**ANSWER:** **Defendants deny the allegations set forth in Paragraph 121, and deny that Plaintiffs are entitled to any relief.**

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a.      class action certification of Plaintiffs' MMWL claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

53

b.      damages for unpaid minimum wages and overtime under RSMo. § 290.527;

c.      reasonable attorneys' fees under RSMo. § 290.527;

d.      treble damages, liquidated damages, and/or pre-judgment interest pursuant to the MMWL under RSMo. § 290.527;

e.      costs of suit under RSMo. § 290.527; and

f.      any further relief that the Court may deem just and equitable.

**<u>ANSWER</u>: Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT IV."**

## <u>COUNT V</u>

122.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

**<u>ANSWER</u>:   Defendants re-assert and incorporate by reference their answers, defenses and additional responses to the preceding paragraphs as if set forth fully herein.**

123.     Defendants entered into a contract with Plaintiffs and all similarly situated employees through which it agreed that employees would get paid an agreed-upon hourly rate for every hour worked during their employment.

**<u>ANSWER</u>:   Defendants deny each and every allegation and implication in Paragraph 123.**

124.     Defendants breached this contract by failing to pay Plaintiffs and all others similarly situated their agreed-upon hourly rate for every hour worked during their employment.

**<u>ANSWER</u>:   Defendants deny each and every allegation and implication in Paragraph 124.**

125.     Specifically, Defendants reduced Plaintiffs' and other similarly situated employees' wages by deducting the cost of the gaming license from their wages, which is not

permitted by the contract. This constitutes a breach of Defendants' employment contract with Plaintiffs and other similarly situated employees.

**ANSWER: Defendants deny each and every allegation and implication in Paragraph 125.**

126. Because of Defendants' breach, Plaintiffs and other similarly situated employees have been damaged.

**<u>ANSWER</u>: Defendants deny each and every allegation and implication in Paragraph 126.**

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

    a.    class action certification of Plaintiffs' breach of contract claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

    b.    compensatory damages for breach of contract; and

    c.    any further relief that the Court may deem just and equitable.

**<u>ANSWER</u>: Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT V."**

<u>COUNT VI</u>

127. Defendants benefited from the work performed by Plaintiffs and other similarly situated employees during the work weeks when Defendants deducted the costs of gaming licenses from Plaintiffs' and other similarly situated employees' wages. In deducting the costs for gaming licenses from Plaintiffs' and other similarly situated employees' wages, Defendants were receiving a benefit (the work) for which it had not paid wages due and owing.

**ANSWER:** Defendants deny each and every allegation and implication in Paragraph 127.

128. Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

**ANSWER:** Defendants deny each and every allegation and implication in Paragraph 128.

129. Defendants' acceptance and retention of the benefit of Plaintiffs and the other similarly situated employees' unpaid labor was inequitable and resulted in Defendants being unjustly enriched.

**ANSWER:** Defendants deny each and every allegation and implication in Paragraph 129.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and on behalf of all similarly situated employees awarding the following relief:

a. class action certification of Plaintiffs' unjust enrichment claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b. compensatory damages for breach of contract; and

c. any further relief that the Court may deem just and equitable.

**ANSWER: Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT VI."**

## COUNT VII

## Violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132

## Unlawful Wellness Program that Discriminates Based on an Impermissible Health Factor

### (Plaintiff Hammond asserts this claim against Defendant PNG)

130.    ERISA § 702, 29 U.S.C. § 1182, prohibits group health plans from discriminating against individuals in eligibility and continued eligibility for benefits and in individual premium or contribution rates on the basis of any health-status related factor.

**ANSWER:    Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

131.    The regulations in effect at 29 C.F.R. § 2590.702(f)(4) for an outcome-based wellness program based on an individual satisfying a standard that is related to a health factor, require, among other things, that the following two factors be met in order for the outcome-based wellness program to satisfy an exception to the general prohibitions against discrimination on the basis of any health-status related factor:

        a.    "The **full reward** under the outcome-based wellness program must be available to all similarly situated individuals", which means that the wellness program must allow "a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard based on the measurement, test, or screening" (29 C.F.R. § 2590.702(f)(4)(iv)(A) (emphasis added); and

75574456.2

b. "The plan or issuer must disclose in all plan materials describing the terms of an outcome-based wellness program . . . the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard) . . . [unless] plan materials merely mention that such a program is available, without describing its terms . . . ." (*Id.* § 29 C.F.R. § 2590.702(f)(4)(v)).

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

132. Defendant PNG sponsors a group health insurance plan for its employees within the meaning of ERISA. *See* 29 U.S.C. §§ 1182, 1191b(a)(1).

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

133. As a part of this group health insurance plan, Defendant PNG penalizes participants (and their dependents) who have used tobacco products within the prior three months of enrollment $50 per month (for one tobacco user) or $100 per month (for two tobacco users). Defendant PNG refers to this as the Tobacco Surcharge.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to**

58

Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).

134.    Plaintiff Hammond participated in Defendant PNG's group health insurance plan from (at least) 2014 through 2020. In each plan year, Plaintiff Hammond was subject to the Tobacco Surcharge. For example, in 2020, Defendant PNG charged Plaintiff Hammond $184.64 in Tobacco Surcharges through September 3, 2020. As explained below, Plaintiff Hammond and all other employees subject to the Tobacco Surcharge at Defendant PNG's casino properties around the country were not offered the full reward of the wellness program because the tobacco cessation program only applied to the Tobacco Surcharge on a prospective basis (*i.e.*, an employee who successfully completes the tobacco cessation program does not receive reimbursement for the previously paid Tobacco Surcharge). As a result, Defendant PNG did not offer Plaintiff Hammond and all other similarly situated employees a reasonable alternative to the Tobacco Surcharge and violated ERISA's fiduciary duties.

**ANSWER:    Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

135.    The Tobacco Surcharge is premised on a health-status related factor (*i.e.*, tobacco use) within the meaning of ERISA. This means the Tobacco Surcharge is an outcome-based wellness program within the meaning of ERISA. *See* 29 U.S.C. §1182(1)(a); 29 C.F.R. § 2590.702(f)(1)(v).

**ANSWER:    Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to**

59

Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).

136. Because the Tobacco Surcharge is an outcome-based wellness program under ERISA, it must provide a reasonable alternative to all similarly situated participants who do not meet the original criteria (*i.e.*, they use tobacco products). *See* 29 C.F.R. § 2590.702(f)(4)(iv)(A).

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

137. ERISA's interpreting regulations provide an example of a reasonable alternative for an outcome-based wellness program involving a tobacco surcharge:

**Example 6 - Tobacco use surcharge with smoking cessation program alternative**.

(i)     Facts. In conjunction with an annual open enrollment period, a group health plan provides a premium differential based on tobacco use, determined using a health risk assessment. The following statement is included in all plan materials describing the tobacco premium differential: "Stop smoking today! We can help! If you are a smoker, we offer a smoking cessation program. If you complete the program, you can avoid this surcharge." The plan accommodates participants who smoke by facilitating their enrollment in a smoking cessation program that requires participation at a time and place that are not unreasonably burdensome or impractical for participants, and that is otherwise reasonably designed based on all the relevant facts and circumstances, and discloses contact information and the individual's option to involve his or her personal physician. The plan pays for the cost of participation in the smoking cessation program. Any participant can avoid the surcharge for the plan year by participating in the program, regardless of whether the participant stops smoking, but the plan can require a participant who wants to avoid the surcharge in a subsequent year to complete the smoking cessation program again.

(ii)     Conclusion. In this Example 6, the premium differential satisfies the requirements of paragraphs (f)(4)(iii), (iv), and (v). The program is an outcome-based wellness program because the initial standard for obtaining a reward is dependent on the results of a health risk assessment (a measurement, test, or screening). The program is reasonably designed under paragraph (f)(4)(iii) because

75574456.2

the plan provides a reasonable alternative standard (as required under paragraph (f)(4)(iv) of this section) to qualify for the reward to all tobacco users (a smoking cessation program). The plan discloses, in all materials describing the terms of the program, the availability of the reasonable alternative standard (including contact information and the individual's option to involve his or her personal physician). Thus, the program satisfies the requirements of paragraphs (f)(4)(iii), (iv), and (v) of this section.

*See* 29 C.F.R. § 2590.702(f)(4)(vi) at Example 6.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

138. ERISA's interpreting regulations provide two examples of unreasonable alternatives for an outcome-based tobacco cessation wellness program that do not satisfy ERISA:

**Example 7 - Tobacco use surcharge with alternative program requiring actual cessation.**

(i)    Facts. Same facts as Example 6, except the plan does not provide participant F with the reward in subsequent years unless F actually stops smoking after participating in the tobacco cessation program.

(ii)    Conclusion. In this Example 7, the program is not reasonably designed under paragraph (f)(4)(iii) of this section and does not provide a reasonable alternative standard as required under paragraph (f)(4)(iv) of this section. The plan cannot cease to provide a reasonable alternative standard merely because the participant did not stop smoking after participating in a smoking cessation program. The plan must continue to offer a reasonable alternative standard whether it is the same or different (such as a new recommendation from F's personal physician or a new nicotine replacement therapy).

**Example 8 - Tobacco use surcharge with smoking cessation program alternative that is not reasonable.**

(i)    Facts. Same facts as Example 6, except the plan does not facilitate participant F's enrollment in a smoking cessation program. Instead the plan advises F to find a program, pay for it, and provide a certificate of completion to the plan.

(ii)     Conclusion. In this Example 8, the requirement for F to find and pay for F's own smoking cessation program means that the alternative program is not reasonable. Accordingly, the plan has not offered a reasonable alternative standard that complies with paragraphs (f)(4)(iii) and (iv) of this section and the program fails to satisfy the requirements of paragraph (f) of this section.

See 29 C.F.R. § 2590.702(f)(4)(vi) at Examples 7-8.

**ANSWER:     Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

139.     In this case, Defendant PNG's Tobacco Surcharge is plainly an outcome-based wellness program. However, Defendant PNG does not offer a reasonable alternative for all similarly situated employees in violation of ERISA. See 29 U.S.C. § 1182; 29 C.F.R. § 2590.702(f)(4).

**ANSWER:     Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

140.     Since, at least, 2014, PNG's health plan included a Tobacco Surcharge for employees enrolled in company-sponsored medical coverage who have used tobacco products within the last three months or have participating dependents who have used tobacco products within the last three months. Since 2019, the Tobacco Surcharge has been $23.08 per bi-weekly pay period ($50 per month) for one tobacco user, and $46.15 per bi-weekly pay period ($100 per month) for two tobacco users.

**ANSWER:     Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to**

Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).

141.    As part of its Tobacco Surcharge, Defendant PNG requires its employees to complete a Tobacco User Affidavit. Defendant PNG requires its employees to complete the Tobacco User Affidavit annually when the open enrollment in their health insurance plan begins. In addition, if an employees' (or their dependents') tobacco status changes, they are required to notify PNG and submit a revised Tobacco User Affidavit.

**ANSWER:**    **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

142.    According to PNG's outcome-based wellness program, if employees or their dependents enroll in a smoking cessation program, they are eligible to have the Tobacco Surcharge removed upon completion of the smoking cessation program, and the submission of an updated Tobacco User Affidavit. But any adjustments by PNG are on a *prospective* basis only - there are no retroactive adjustments to the tobacco user surcharge.

**ANSWER:**    **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

143.    In order to satisfy the requirement to provide a reasonable alternative standard, the same, *full reward* must be available under the wellness program to individuals who qualify by satisfying a reasonable alternative standard (*i.e.*, completing the tobacco use cessation

63

75574456.2

program) as is provided to individuals who qualify by satisfying the program's otherwise applicable standard (*i.e.*, not a tobacco user). Accordingly, while an employee may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

144. Although plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (*e.g.*, payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the individual receives *the full amount of the reward*.

**ANSWER:** **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

145. Because PNG refuses to make retroactive adjustments to the tobacco user surcharge, employees will not receive the full amount of the reward. The tobacco surcharge will only be removed after completion of the smoking cessation program (and submission of an

64

updated Tobacco User Affidavit) through the remainder of the plan year. As a result, that individual would not receive the full reward as is provided to individuals who meet the initial standard for that plan year (e.g., non-smoker not subject to the tobacco user surcharge).

**ANSWER:     Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

146.    Through the above-described outcome-based wellness program, PNG has failed to satisfy the requirement to provide a reasonable alternative standard. Because Defendant PNG failed to offer a reasonable alternative standard for the Tobacco Surcharge, it has operated an illegal wellness program under ERISA because it discriminates on the basis of a health-status related factor (namely, tobacco use).

**ANSWER:     Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

147.    Defendant PNG has breached its fiduciary duties under ERISA to participants in the plan because it:

a.    failed to act solely in the interest of the participants and beneficiaries of the health plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

b.    failed to discharge its duties in accordance with the documents and instruments governing the health plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. See 29 U.S.C. § 1104(a)(1)(D);

c.    caused the health plan to engage in transactions that Defendant PNG knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. See 29 U.S.C. § 1106(a)(1)(D);

d.    dealt with assets of the health plan in Defendant PNG's own interests in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1);

e.    acted on behalf of a party whose interests are adverse to the interests of the health plan or the interests of its participants and beneficiaries, in violation of ERISA. See 29 U.S.C. § 1106(b)(2); and

f.    jointly with the health plan, caused the health plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. See 29 U.S.C. § 1182(b).

**ANSWER:    Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

66

75574456.2

148.     As a result of its breach of fiduciary duties under ERISA, Defendant PNG must disgorge all Tobacco Surcharges it obtained from its employees.

**ANSWER:**     **Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4).**

**WHEREFORE**, Plaintiff Hammond requests the Court enter judgment for Plaintiff Hammond individually and on behalf of all similarly situated employees awarding the following relief:

a.     class action certification of Plaintiff Hammond's ERISA claim and an order appointing Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as class counsel;

b.     requiring Defendant PNG to reimburse all participants who paid the Tobacco Surcharge from October 1, 2014, through the present plus interest;

c.     requiring Defendant PNG to revise any Tobacco Surcharge Wellness Program it intends to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d.     enjoining Defendant PNG from collecting Tobacco Surcharges until Defendant PNG revises its Tobacco Surcharge Wellness Program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e.     requiring Defendant PNG to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed by it or for which it is liable;

f.  awarding Plaintiff Hammond's counsel attorneys' fees and costs consistent with ERISA's fee and cost shifting provisions for the costs of prosecuting this action; and

g.  any further relief that the Court may deem just and equitable.

**ANSWER: Defendants incorporate the Motion to Dismiss Count VII of Plaintiffs' Second Amended Complaint. Subject to and pending determination of the Motion to Dismiss, Defendants are not required to respond to the allegations brought regarding this Count. Fed. R. Civ. Proc. 12(a)(4). Defendants deny Plaintiffs are entitled to any relief, including relief requested in the "WHEREFORE" Paragraph for "COUNT VI."**

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demands a trial by jury on all issues so triable.

**ANSWER:  Defendants deny Plaintiffs are entitled to a jury trial or any relief.**

### GENERAL DENIAL

Defendants deny each and every allegation contained in the Second Amended Complaint not specifically admitted herein.

### ADDITIONAL AFFIRMATIVE DEFENSES AND RESPONSES

1.  Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

2.  Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred because all such individuals were properly compensated in accordance with all applicable laws at all relevant times.

68

3.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred because they suffered no injury or damage as a result of any act or omission of Defendants.

4.     Plaintiffs, and the putative collective or class they seek to represent, participated in lawful tip pools, including developing, implementing, and supervising such pools pursuant to their own policies, practices or rules regarding how their tips or tokes would be collected, counted, and shared.

5.     Plaintiffs' tip pool claims, and those of the members of the putative collective or class they seek to represent, are equitably barred as Plaintiffs (and other Table Games Dealers with whom Plaintiffs share tips) created, implemented, and supervised the tip or toke pool and the sharing of tips with all individuals the employees deemed appropriate; neither Plaintiffs, nor those they seek to represent, are allowed to benefit from their own independent and voluntary decisions and actions.

6.     Plaintiffs' claims and those of the members of the putative collective or class they seek to represent, are equitably barred in whole or in part based on the failure of Plaintiffs, or members of the putative collective or class they seek to represent, to maintain documents related to the policies, practices, or rules they created, implemented, and supervised regarding how their tips or tokes would be collected, counted, and shared.

7.     Plaintiffs' deduction-related claims, and those of the members of the putative collective or class they seek to represent, fail as a matter of law because the alleged deductions were permissible under applicable law.

69

8.      Plaintiffs' deduction-related claims, and those of the members of the putative collective or class they seek to represent, fail as a matter of law because the alleged deductions were not for the benefit of their employers or alleged employers.

9.      Plaintiffs' deduction-related claims, and those of the members of the putative collective or class they seek to represent, fail because Plaintiffs, and those they seek to represent, lack standing to pursue such claims, as they either (a) never had a deduction made during the relevant time period or (b) no deduction ever took the Plaintiffs' weekly wages below any statutory minimum.

10.     Plaintiffs' deduction-related claims, and those of the members of the putative collective or class they seek to represent, fail as Missouri does not prohibit (expressly or otherwise) the deduction of an individual's state-required license.

11.     Plaintiffs' claims, and those of the members of the putative classes they seek to represent, are barred because Defendants have fully performed any and all contractual, statutory or other duties owed under applicable law.

12.     Plaintiffs' claims, and/or those of the members of the putative collective or class they seek to represent, are barred, in whole or in part, by the applicable statutes of limitations. To the extent the Second Amended Complaint seeks relief for any alleged unlawful conduct that occurred outside the applicable limitations periods, whether with respect to Plaintiffs or members of the putative collective or class Plaintiffs seek to represent, such claims are time-barred under the FLSA and state law.

13.     The statute of limitations under the FLSA is two years, unless the causes of action arose out of a willful violation (in which case the statute of limitations is three years). Plaintiffs'

claims, and those of the members of the putative collective or class they seek to represent, do not arise out of a willful violation.

14. Plaintiffs' claims, and those of the members of the putative collective they seek to represent, are limited based on the date Plaintiffs or members of the putative collective filed a consent to join form consistent with 29 U.S.C. § 216(b).

15. This suit cannot be maintained as a class or collective action, and Plaintiffs cannot meet the standards necessary to certify a class or collective action, because Plaintiffs are not similarly situated to one another and/or the putative collective or class they seek to represent. Likewise, Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are not similarly situated to one another. There is no single or common policy; Plaintiffs' claims require individualized inquiries and proof; and Plaintiffs' damages require individualized inquiries and proof, all of which require separate trials.

16. Plaintiffs' Second Amended Complaint fails to identify a cognizable class under Federal Rule of Civil Procedure 23. Plaintiffs have failed to adequately and properly identify with particularity the putative class they purport to represent. Plaintiffs and/or Plaintiffs' counsel cannot adequately represent the purported class. Plaintiffs' claims are not typical of those of the putative class. Plaintiffs' claims do not involve common issues of law or fact that predominate over the remaining issues of law or fact. The putative class of plaintiffs is not so numerous that a collective or class action is appropriate. A collective or class action is not a superior method of resolving the claims of the putative class.

17. Individual issues predominate, and therefore a collective or class action is improper.

75574456.2

18.     Certain interests of the alleged putative group that Plaintiffs purport to represent are in conflict with the interests of all or certain sub-groups of the members of the alleged putative group.

19.     If this Court were to certify this action as a class or collective action and award damages (which it should not), any award of liquidated, multiple, duplicate, or punitive damages would deny Defendants due process of law.

20.     Any acts or omissions giving rise to this action occurred in good faith and with reasonable grounds for believing the actions or omissions were not in violation of the law.

21.     Plaintiffs have failed to allege, with respect to themselves and members of the putative collective or class, facts sufficient to allow for an award of additional tips, minimum wage, overtime, other pay, liquidated damages, costs, attorneys' fees, or any other relief in law or equity pursuant to the FLSA, any states' law, or otherwise.

22.     Plaintiffs' claims for liquidated damages, with respect to themselves or members of the putative collective or class, are barred because Defendants did not engage in any conduct that would rise to the level required to sustain an award of liquidated damages and/or because there is or was an active "dispute" regarding liability.

23.     Plaintiffs' claims, with respect to themselves or members of the putative collective or class, are barred in whole or in part, under the doctrines of waiver, estoppel, ratification, laches, preemption, forfeiture, and/or unclean hands.

24.     Certain members of the putative collective or class are barred from recovery because they signed, or will sign, an agreement that unconditionally releases Defendants from liability.

75574456.2

25.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, fail against Defendant Pinnacle Entertainment, Inc., because Pinnacle did not employ (jointly or otherwise) Plaintiffs or any members of the putative collective or class.

26.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, against Argosy and Hollywood fail as a matter of law to the extent they did not employ certain Plaintiffs and/or members of the putative collective or class.

27.     Missouri law does not provide relief for some or all of Plaintiffs' claims as pleaded in Plaintiffs' initial or Second Amended Complaint.

28.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, fail because Plaintiffs and members of the putative collective or class lack standing and/or have suffered no concrete harm entitling them to relief.

29.     At all material times, Plaintiffs and members of the putative collective or class were paid all sums of money to which they were entitled as employees and/or all amounts allegedly due and owing.

30.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred, in whole or in part, by the provisions of Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, because Defendants acted in good faith to comply with the FLSA and had reasonable grounds for believing they were in compliance with the FLSA and state law. Defendants also assert a lack of willfulness or intent to violate the FLSA or state law as a defense to any claim for liquidated damages. No act or omission of Defendants which is alleged to violate the FLSA or state law was willful, knowing, or in reckless disregard for the provisions of the law.

75574456.2

31.    Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred, in whole or in part, by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because actions taken in connection with Plaintiffs' compensation were done in good faith, in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor.

32.    Plaintiffs' claims, and/or those of the members of the putative collective or class they seek to represent, are barred in whole or in part by the *de minimis* doctrine.

33.    Plaintiffs' claims, and/or those of the members of the putative collective or class they seek to represent, are barred in whole or in part by *res judicata*, the terms of a settlement, or issue preclusion.

34.    Plaintiffs' claims to minimum wage payments, and those of the members of the putative collective or class they seek to represent, are barred in whole or in part, by the provisions of 29 U.S.C. § 206(g) and 29 C.F.R. § 786.300.

35.    If Plaintiffs, or members of the putative collective or class they seek to represent, establish any violation under the FLSA or any state law, and establish that any sums are due and owing, Defendants are entitled to a set-off against the sum to the extent paid, tendered, waived, compromised, and/or released prior to the adjudication herein, including but not limited to those amounts paid, tendered, waived, compromised, and/or released through any other proceeding, either formal or informal.

75574456.2

36.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, for damages are duplicative; to the extent the damages for such claims are duplicative, such claims and damages fail and should be disregarded.

37.     Defendants are entitled to an offset against any damages awarded for amounts paid to Plaintiffs, and/or retained by Plaintiffs, or any putative collective or class they seek to represent, to which they were not otherwise entitled, including but not limited to wage overpayments.

38.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred to the extent Defendants exercised reasonable care to prevent and correct the alleged claims, and Plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendants to avoid the harm alleged, or otherwise take action to mitigate their damages.

39.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, fail to the extent they are barred by applicable collective bargaining agreements, including such agreements that preclude Plaintiffs from asserting claims as a class and/or collective action.

40.     Some or all of Plaintiffs' claims, and/or those of the members of the putative collective or class group they seek to represent, are preempted by § 301 of the Labor Management Relations Act.

41.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred to the extent they are (or were at any time during the relevant time period) exempt employees who are not subject to minimum or overtime wage laws or regulations under one or more of the FLSA's or state laws' exceptions or exemptions.

75574456.2

42.     An award of civil penalties under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Defendants' due process and other rights under the United States Constitution and applicable state constitutions.

43.     To the extent Plaintiffs, or members of the putative collective or class they seek to represent, acted contrary to any employment policies, procedures, or other employer instructions, Defendants are not liable for any alleged damage caused thereby.

44.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred to the extent any alleged unpaid activities were not principal activities under the Portal-to-Portal Act.

45.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred to the extent any activities are preliminary or postliminary activities as determined under the Portal-to-Portal Act.

46.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred to the extent Plaintiffs seek recovery for time that is not compensable time under the FLSA or applicable state law, or to the extent Plaintiffs did not work over 40 hours in any given work week and, therefore, are not entitled to overtime.

47.     Plaintiffs' claims, and those of the members of the putative collective or class they seek to represent, are barred, in whole or in part, by the doctrine of accord and satisfaction.

48.     Any award of attorneys' fees or costs, which the Court should not award, must be "reasonable" or "reasonable and necessary," and must not include fees or costs related to time the attorneys spent advancing unsuccessful claims.

Defendants reserve the right to amend or add defenses or claims that may become known during discovery.

76

WHEREFORE, having answered and responded to the allegations in Plaintiffs' Second Amended Complaint, Defendants respectfully request this Court: (a) dismiss Plaintiffs' Second Amended Complaint with prejudice; (b) deny Plaintiffs' demands and prayer for relief; (c) award Defendants their costs and reasonable attorneys' fees incurred in defense of this action; and (d) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

POLSINELLI PC


By:/s/ *Denise K. Drake*
    DENISE K. DRAKE (MO #43351)
    JASON N.W. PLOWMAN (MO #67495)
    KAITLIN E. GALLEN (MO #65913)
    900 W. 48th Place, Suite 900
    Kansas City, MO 64112
    Telephone: (816) 753-1000
    Facsimile: (816) 753-1536
    ddrake@polsinelli.com
    jplowman@polsinelli.com
    kgallen@polsineli.com

    D. JACK BLUM (admitted *pro hac vice*)
    1401 I Street, NW, Suite 800
    Washington, D.C. 20005
    Telephone: (202) 772-8483
    Facsimile: (202) 783-3535
    jack.blum@polsinelli.com

    ATTORNEYS FOR DEFENDANTS

75574456.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of December 2020, a true and correct copy of the above and foregoing was electronically filed with the Clerk of the Court by using the Court's eFiling System, which sends a notice of electronic filing constituting service to the following:

George A. Hanson
Alexander T. Ricke
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
hanson@stuevesiegel.com
ricke@stuevesiegel.com
Tel.: (816) 714-7100
Fax: (816) 714-7101

ATTORNEYS FOR PLAINTIFF

Ryan L. McClelland
Michael J. Rahmberg
McClelland Law Firm
The Flagship Building
200 Westwoods Drive
Liberty, MO 64068-1170
(816) 781-0002
Fax: (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

ATTORNEYS FOR PLAINTIFF

 */s/ Denise K. Drake*
Attorney for Defendants