# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

GINA R. LIPARI-WILLIAMS,
MARISSA T. HAMMOND, and
LUCINDA M. LAYTON, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

PENN NATIONAL GAMING, INC., et al.

        Defendants.

Case No. 5:20-cv-06067-SRB

## PLAINTIFFS' SUGGESTIONS IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION OF ERISA CLAIM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .................................................................................................... 1

THE NATURE OF PLAINTIFFS' ERISA CLAIMS ................................................. 2

I.  ERISA Prohibits Discrimination Against Plan Participants on the Basis of a Health-Status Related Factor ..................................................................... 3

II.  PNG's Unlawful Tobacco Surcharge Gives Rise to Class-Wide Breach of Fiduciary Duty Claims and Class-Wide Claims for Equitable Relief ................................. 6

STATEMENT OF FACTS ......................................................................................... 8

I.  PNG Operated a Group Health Plan Subject to ERISA ........................................ 8

II.  PNG Implemented a Tobacco Surcharge for Plan Years 2015 Through 2020 ................. 8

III.  PNG Failed to Provide Participants in its Group Health Plan with Notice of a Reasonable Alternative Standard to Being Tobacco Free to Avoid the Surcharge ........... 9

    A.  The Annual Tobacco User Affidavits Failed to Inform Participants Subject to the Tobacco Surcharge of a Reasonable Alternative Standard to Avoid the Surcharge ............................................................................. 9

        i.  PNG's 2015-2016 Tobacco User Affidavit (Empyrean System) Failed to Provide Notice of a Reasonable Alternative Standard .......................... 10

        ii.  PNG's 2017-2020 Tobacco User Affidavit (Alight System) Failed to Provide Notice of a Reasonable Alternative Standard ............................ 11

    B.  PNG's Open Enrollment Documents Describe the Tobacco Surcharge but Fail to Provide Notice of a Reasonable Alternative Standard in Violation of ERISA .................................................................... 12

    C.  PNG's Annual Benefits Confirmation Describes the Tobacco Surcharge but Fails to Provide Notice of a Reasonable Alternative Standard in Violation of ERISA .................................................................... 13

IV.  PNG Distributed Documents to Plan Participants Subject to the Tobacco Surcharge in 2019 and 2020 Describing an Alternative Standard that Violated ERISA ............... 14

V.  Plan Participants Were Never Provided Notice of a Reasonable Alternative Standard as Evidenced by No Participant Ever Successfully Avoiding the Surcharge ................. 16

VI.  PNG's Class-Wide Failure to Provide Notice of a Reasonable Alternative Standard Enriched PNG at the Expense of Plan Participants. ....................................... 18

i

VII.    PNG's 2014 Tobacco Use Policy Document Provides No Safe Harbor ......................... 19

ARGUMENT .................................................................................................................... 21

I.      The Proposed Classes Are Sufficiently Numerous ........................................... 21

II.     The Proposed Classes Share Common Questions of Law and Fact ................................ 22

III.    Plaintiffs' Claims are Typical of Members of the Classes ................................. 23

IV.     Plaintiffs and Proposed Class Counsel are Adequate Representatives ........................... 24

V.      Class Certification is Appropriate under Rule 23(b)(1)(B) Because Adjudication of Plaintiffs' Claims Would Be Dispositive of the Interests of Other Plan Participants' Claims ................................................................................................................. 25

VI.     Class Certification is Appropriate under Rule 23(b)(3) Because Common Issues Predominate Over Individual Issues and a Class Action Is Superior to Individual Litigation ......................................................................................................... 26

        A.      Predominance is Satisfied .................................................................... 26

        B.      A Class Action is Superior to Individual Litigation ............................... 28

VII.    Class Certification is Appropriate under Rule 23(b)(2) Because Plaintiffs are Seeking Injunctive and Declaratory Equitable Relief, and PNG Acted on Grounds that Apply Generally to the Entire Class .................................................................. 29

CONCLUSION .................................................................................................................. 30

Case 5:20-cv-06067-SRB   Document 89   Filed 09/15/21   Page 3 of 37

# TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ................................................................. 23

*Amara v. CIGNA Corp.*,
   775 F.3d 510 (2d Cir. 2014) .................................................................. 29

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................... 24, 26

*Ark. Educ. Ass'n v. Bd. of Educ.*,
   446 F.2d 763 (8th Cir. 1971) ................................................................. 22

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ............................................................... 27

*Bauer v. Kraft Foods Glob., Inc.*,
   277 F.R.D. 558 (W.D. Wis. 2012) ........................................................ 28

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ................................................................. 27

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................... 7

*Bradford v. AGCO Corp.*,
   187 F.R.D. 600 (W.D. Mo. 1999) ........................................................ 22

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ................................................................. passim

*Cope v. Let's Eat Out, Inc.*,
   319 F.R.D. 544 (W.D. Mo. 2017) ................................................... 22, 23

*Cromeans v. Morgan Keegan & Co., Inc.*,
   303 F.R.D. 543 (W.D. Mo. 2014) ................................................... 21, 22

*Day v. Celadon Trucking Servs., Inc.*,
   827 F. 3d 817 (8th Cir. 2016) ............................................................... 27

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ................................................................. 23

iii

*Flynn v. FCA US LLC*,
  327 F.R.D. 206 (S.D. Ill. 2018) ............................................ 22

*Garcia v. Tyson Foods, Inc.*,
  No. 06-2198-JTM, 2012 WL 5985561 (D. Kan. Nov. 29, 2012) ............................................ 24

*George v. Kraft Foods Global, Inc.*,
  251 F.R.D. 338 (N.D. Ill. 2008) ............................................ 26

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ............................................ 7

*Holling-Fry v. Coventry Health Care of Kansas, Inc.*,
  No. 07-0092-CV-W-DGK, 2010 WL 3636156 (W.D. Mo. Sept. 10, 2010) ............................................ 27

*In re YRC Worldwide, Inc. ERISA Litig.*,
  2011 WL 1303367 (D. Kan. Apr. 6, 2011) ............................................ 26

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
  702 F.3d 364 (7th Cir. 2012) ............................................ 29

*Jones v. NovaStar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009) ............................................ 25, 26

*M.B. by Eggemeyer v. Corsi*,
  327 F.R.D. 271 (W.D. Mo. 2018) ............................................ 22

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................ 25

*Owens v. Metro. Life Ins. Co.*,
  323 F.R.D. 411 (N.D. Ga. 2017) ............................................ 28

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) ............................................ 22, 24

*Shirk v. Fifth Third Bancorp*,
  2008 WL 4425535 (S.D. Ohio Sept.30, 2008) ............................................ 26

*Tyson Foods, Inc.*,
  136 S. Ct. ............................................ 26

*Walker v. Monsanto Co. Pension Plan*,
  252 F.R.D. 450 (S.D. Ill. 2008) ............................................ 29

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................ 22

Case 5:20-cv-06067-SRB   Document 89   Filed 09/15/21   Page 5 of 37

*Wildman v. Am. Century Servs., LLC,*
   2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ......................................................................... 26

**Statutes**

29 U.S.C. § 1002 .................................................................................................................... 8

29 U.S.C. § 1104 .................................................................................................................... 7

29 U.S.C. § 1106 .................................................................................................................... 7

29 U.S.C. § 1109 ........................................................................................................ 6, 7, 8, 26

29 U.S.C. § 1132 .................................................................................................... 3, 6, 7, 21, 27

29 U.S.C. § 1182 ............................................................................................................... passim

**Rules**

Federal Rule of Civil Procedure 23 .................................................................................... passim

**Regulations**

29 C.F.R. § 2590.702 ....................................................................................................... passim

*Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*,
   78 Fed. Reg. 33158 (June 3, 2013) ................................................................................ passim

## INTRODUCTION

From 2016 through 2020, Defendant Penn National Gaming, Inc. (PNG) used its group health plan to deduct approximately $2,300,000 in surcharges from the wages of employees who attested to using tobacco, which PNG then used for its own benefit to offset its costs. In so doing, PNG breached its fiduciary duties and violated the non-discrimination provisions of the Employee Retirement Income Security Act of 1974 (ERISA). Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Layton and Hammond seek class certification of their claims for breach of fiduciary duty and appropriate equitable relief under ERISA to recover these unlawful deductions.

This case centers on ERISA's non-discrimination provisions, which prohibit group health plans from discriminating against participants based on a health-status related factor—including tobacco use. PNG's tobacco surcharge is prohibited *unless* PNG can prove that its tobacco surcharge was a *bona fide* wellness program, which it cannot do for two, class-wide reasons.

To qualify for the safe harbor of a *bona fide* outcome-based wellness program, PNG must prove (among other things) that it (1) offered a reasonable alternative standard to being tobacco free that provided the full reward of the program (*i.e.*, avoiding the tobacco surcharge in its entirety) to all plan participants *and* (2) provided notice of this alternative standard in all plan materials describing the tobacco surcharge and its premium differential, as well as in any disclosure that the participant would be subject to the surcharge. For each plan year between 2016 and 2020, PNG failed to satisfy one or both safe harbor provisions on a class-wide basis.

For plan years 2016 through 2020, PNG failed to provide notice of a reasonable alternative standard in all plan materials describing the tobacco surcharge or in the disclosure that the participant would be subject to the surcharge. The class-wide tobacco user affidavits, open enrollment documents, and disclosure documents informing participants they would be subject to the surcharge all informed participants of a binary option: (1) non-tobacco users avoid the

1

surcharge; or (2) tobacco users are subject to the surcharge. These class-wide documents failed to provide notice of a reasonable alternative standard in violation of ERISA.

And in 2019 and 2020, PNG provided notice of an alternative standard that PNG admits was "not accurate" and violated ERISA. Three class-wide documents were distributed to all plan participants subject to the tobacco surcharge informing them that removal of the tobacco surcharge "will be on a prospective basis once the smoking cessation program is completed" and "[t]here will be no retroactive adjustments to the tobacco user surcharge." This policy violates ERISA's requirement that the "full reward" (*i.e.*, avoiding the *entire* tobacco surcharge, not just part of it) be made available to participants who complete the alternative standard and it fails the notice requirement for the same reason. This is a class-wide ERISA violation for a sub-class of plan participants who were subject to a tobacco surcharge between 2019 and 2020.

ERISA's reasonable alternative standard and notice requirements for outcome-based wellness programs are not mere technical requirements. The impact of PNG's class-wide failings is evident: not a single plan participant subject to the tobacco surcharge has completed a tobacco cessation program and avoided the tobacco surcharge as part of PNG's purported "wellness" program. But PNG has collected $2,300,000 in unlawful tobacco surcharges to offset its own costs while requiring many participants subject to the tobacco surcharge to work in smoke-filled casinos, including Plaintiffs. This case is uniquely suited to class treatment because PNG's uniform, class-wide documents *are* the ERISA violation. The Court should grant class certification.

## THE NATURE OF PLAINTIFFS' ERISA CLAIMS

Before addressing the factual basis for Plaintiffs' claim that PNG committed multiple class-wide ERISA violations, it is necessary to address the legal framework of these claims.

## I.   ERISA Prohibits Discrimination Against Plan Participants on the Basis of a Health-Status Related Factor

As relevant here, PNG's group health plan violated ERISA's non-discrimination provision, passed as part of the Health Insurance Portability and Accountability Act ("HIPAA"), by imposing a surcharge against employees who use tobacco products, without having met the safe harbor requirements to make such a surcharge lawful.  As described in greater detail below, PNG's violations of ERISA's non-discrimination provisions give rise to a claim for equitable relief (*see* 29 U.S.C. § 1132(a)(3)(B)(i)) *and* a claim for breach of fiduciary duty (*see* 29 U.S.C. § 1132(a)(2)).

The relevant ERISA provision, 29 U.S.C. § 1182, provides that a group health plan may not discriminate against an individual participant on the basis of "health status", stating that:

> A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, *may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater* than such premium or contribution for a similarly situated individual enrolled in the plan *on the basis of any health status-related factor* in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

29 U.S.C. § 1182(b)(1) (emphasis added). The statute then carves out a safe harbor for compliant "wellness programs", stating that health plans may "establish[] premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B)

The implementing regulations "set forth criteria for a program of health promotion or disease prevention offered or provided by a group health plan or group health insurance issuer that *must be satisfied* in order for the plan or issuer to *qualify for an exception* to the prohibition on discrimination based on health status . . . ." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added).  In other words, the regulations "set forth criteria for an *affirmative defense* that can be used by plans and

3

issuers in response to a claim that the plan or issuer discriminated under the HIPAA nondiscrimination provisions." *Id.* (emphasis added). PNG bears the burden of establishing that all requirements of the affirmative defense have been met. *See, e.g., id.* at 33178 ("A health-contingent wellness program that is an outcome-based wellness program . . . does not violate the provisions of this section *only if all of the following requirements are satisfied*") (emphasis added).

An outcome-based health-contingent wellness program[1]—of which PNG's tobacco surcharge program is a paradigmatic example[2]—must satisfy five conditions[3] to qualify for the defense. Plaintiffs and the class have alleged that PNG failed to comply with two of these, *see* Third Amended Complaint, Doc. 62 at ¶ 132, rendering the tobacco surcharge ineligible for safe harbor protection and therefore unlawful.

First, a lawful outcome-based wellness program must have "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). For an "alternative standard" to be deemed reasonable, "[t]he *full reward* under the outcome-based wellness program *must be available* to all similarly situated individuals", which is to say, it must provide for a retroactive

---

[1] 29 C.F.R. § 2590.702(f) speaks to four types of wellness programs: participatory, health-contingent, activity-only, and outcome-based. "A health-contingent wellness program may be an activity-only wellness program or an outcome-based wellness program", and "[a]n outcome-based wellness program is a type of health-contingent wellness program." 29 C.F.R. § 2590.702(f)(1)(iii)-(v).

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (*such as not smoking* . . .) in order to obtain a reward." 78 Fed. Reg. 33158 at 33161 (emphasis added); *see also id.* at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a *program that imposes a premium surcharge based on tobacco use*") (emphasis added).

[3] These requirements pertain to frequency of opportunity to qualify, size of the reward, design of the program, uniform availability and reasonable alternative standards and notice of availability. 29 C.F.R. § 2590.702(f)(4)(i)-(v).

4

reimbursement for a person who completes the alternative standard, such as a smoking cessation program. *Id.* (emphasis added). Agency guidance makes this point explicit, stating that:

> to satisfy the requirement to provide a reasonable alternative standard, the same, full reward must be available under a health-contingent wellness program (whether an activity-only or outcome-based wellness program) to individuals who qualify by satisfying a reasonable alternative standard as is provided to individuals who qualify by satisfying the program's otherwise applicable standard . . . (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January, February, and March to that individual*.). Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and *the individual receives the full amount of the reward*.

78 Fed. Reg. 33158 at 33163 (emphasis added). Plaintiffs have identified two plan years—2019 and 2020—where PNG distributed uniform documents to plan participants expressly stating that there would be no retroactive reimbursement for completing a tobacco cessation program. This violates ERISA's reasonable alternative standard requirement for outcome-based wellness programs. *See* 29 U.S.C. § 1182(b)(1); *see also* 29 C.F.R. § 2590.702(f)(4)(iv).

Second, a lawful outcome-based wellness program must provide participants "[n]otice of availability of reasonable alternative standard." 29 C.F.R. § 2590.702(f)(4)(v). Specifically, "[t]he plan or issuer must disclose in *all* plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis added). The guidance issued in connection with the final rule provides that "[f]or outcome based-wellness programs, this notice must also be included in any disclosure that an individual did not satisfy an initial outcome-based standard." 78 Fed. Reg. 33158 at 33166. The guidance provides specifically with respect to tobacco surcharge outcome-based

wellness programs that "a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, *must include this disclosure*." *Id*. (emphasis added).

To put practical color on this requirement, a reasonable alternative standard is meaningless if plan participants subject to the outcome-based wellness program are never informed of it. That is precisely what Plaintiffs allege PNG did throughout the class period. As explained in depth below, the record is replete with plan documents—tobacco user affidavits, open enrollment packets, and benefit disclosures—where PNG informed participants they were subject to the tobacco surcharge without providing notice of a reasonable alternative standard. This plainly violates ERISA's notice requirements for outcome-based wellness programs. *See* 29 U.S.C. § 1182(b)(1); *see also* 29 C.F.R. § 2590.702(f)(4)(v). Thus, because PNG cannot prove every element of its "affirmative defense", *see* 78 Fed. Reg. 33158 at 33160, its tobacco surcharge violated ERISA's anti-discrimination provision set out in 29 U.S.C. § 1182 and did so on a class-wide basis.

## II. PNG's Unlawful Tobacco Surcharge Gives Rise to Class-Wide Breach of Fiduciary Duty Claims and Class-Wide Claims for Equitable Relief

In violating ERISA's non-discrimination provisions in connection with its tobacco surcharge, PNG is now subject to two types of ERISA claims: (1) breach of fiduciary duty (*see* 29 U.S.C. §§ 1132(a)(2), 1109(a), 1106(b), 1104(a)); and (2) a claim for appropriate equitable relief to redress PNG's violation of the statute.

With respect to breach of fiduciary duty, ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). As PNG concedes,

6

there is no question that PNG is a fiduciary with respect to the group health plan and its participants. When PNG collected tobacco surcharges in violation of ERISA's non-discrimination provisions, *see* 29 U.S.C. § 1182, and then used those funds for its own benefit, it violated ERISA's fiduciary duties, which the Eighth Circuit has called "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Specifically, when PNG collected unlawful tobacco surcharges from participants and then used those plan assets to offset its own costs, it violated ERISA's prohibition on a "fiduciary with respect to a plan … deal[ing] with the assets of the plan in his own interest or for his own account." *See* 29 U.S.C. § 1106(b)(1). This is a breach of ERISA's so-called "prohibited transactions" fiduciary duty. And this same conduct violated ERISA's duty of loyalty, which requires that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … for the exclusive purpose of … providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). Plaintiffs seek class-wide relief on behalf of the plan. *See* 29 U.S.C. § 1109.

In addition, the above-described ERISA violations give rise to a class-wide claim for equitable relief. *See* 29 U.S.C. § 1132(a)(3)(B)(i) ("a civil action may be brought by … a participant, beneficiary, or fiduciary … to obtain other appropriate equitable relief … to redress such violations"). Plaintiffs seek to have the Court use the authority conferred by ERISA to order an equitable remedy—whether that be constructive trust, surcharge, disgorgement, *etc.*—that would require PNG to disgorge these ill-gotten and unlawful tobacco surcharge deductions and return them to participants.[4]

---

[4] *See, e.g., Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (discussing the equitable remedy of disgorgement as a "kind of monetary remedy against a trustee."); *CIGNA Corp. v. Amara*, 563 U.S. 421, 441-42 (2011) ("the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief.").

7

## STATEMENT OF FACTS

### I.     PNG Operated a Group Health Plan Subject to ERISA

PNG is a nationwide gaming and entertainment conglomerate that operates 41 casinos in 19 states with over 18,000 employees.[5]  To attract and retain employees, PNG has offered its employees the opportunity to participate in its group health plan at all relevant times, including from 2016 to the present. *See* Ex. 1, Deposition of Natasha Romulus, Corporate Representative of Penn National Gaming, Inc. ("Romulus Dep."), at 16:1-10, 30:22-24.

PNG's group health plan carries with it the obligations, duties, and protections associated with employee welfare benefit plans under ERISA. *See* 29 U.S.C. § 1182; 29 U.S.C. § 1002(1). As the sponsor of an employee welfare benefit plan, PNG concedes it is subject to ERISA's fiduciary obligations with respect to the plan, plan participants, and plan beneficiaries. *See* Ex. 1, Romulus Dep. at 23:16-20 (Q: Does PNG have fiduciary obligations under ERISA with respect to its group health plans? A: PNG does have fiduciary responsibility), 34:14-17 (PNG group health plan must comply with ERISA); *see also* 29 U.S.C. § 1109.

### II.     PNG Implemented a Tobacco Surcharge for Plan Years 2015 Through 2020

Beginning in plan year 2015 and continuing through plan year 2020, PNG implemented a tobacco surcharge for all group health plan participants who use tobacco products. Ex. 1, Romulus Dep. at 78:12-79:4.  For plan year 2015, PNG deducted from the wages of participants in its group health plan a $25 per month surcharge for one tobacco user and a $50 per month surcharge for two tobacco users. *Id*.  The 2015 tobacco surcharges amounted to $300 annually for one tobacco user and $600 annually for two or more tobacco users.  For plan years 2016 through 2020, PNG doubled

---

[5] *See* Penn National Gaming, Inc. 2020 Annual Report and Form 10-K at pp. 6, 16 (available at: https://pennnationalgaming.gcs-web.com/static-files/8e8c0d00-abf9-4bc4-b52a-4baf36cffa52 (last visited September 9, 2021)).

the surcharge to $50 per month for one tobacco user and $100 per month for two or more tobacco users. *Id*. The increased tobacco surcharges applicable from 2016 through 2020 amounted to $600 annually for one tobacco user and $1,200 annually for two or more tobacco users.

## III. PNG Failed to Provide Participants in its Group Health Plan with Notice of a Reasonable Alternative Standard to Being Tobacco Free to Avoid the Surcharge

As described in more detail below, there were four categories of documents that were sent to plan participants on an annual basis between 2016 and 2020 that describe the terms of the tobacco surcharge while failing to disclose any reasonable alternative standard to being a non-tobacco user: (1) the annual tobacco user affidavits; (2) the annual open enrollment benefits packet; and (3) the annual disclosure of participant benefits and costs. *Each* of these documents *individually* gives rise to a class-wide ERISA violation. *See* 29 U.S.C. § 1182(b)(1); *see also* 29 C.F.R. § 2590.702(f)(4)(v).

### A. The Annual Tobacco User Affidavits Failed to Inform Participants Subject to the Tobacco Surcharge of a Reasonable Alternative Standard to Avoid the Surcharge

For plan years 2015 through 2020, PNG required all its group health plan participants to execute a tobacco user affidavit in connection with open enrollment. Ex. 1, Romulus Dep. at 80:10-16, 82:7-11. There were two nearly identical versions of this document: one for plan years 2015 and 2016 and one for plan years 2017 through 2020. *Id*. at 79:20-80:18. At all relevant times, group health plan participants were required to complete the tobacco user affidavit by logging into the applicable human resources vendor's website. *Id*. From 2015-2016, the tobacco user affidavit was completed through the Empyrean system. From 2017-2020, the tobacco user affidavit was completed through the Alight system. *Id*. The two tobacco user affidavits were nearly identical. *Id*. at 82:23-83:10 (referring to the language between the two tobacco user affidavits as "very similar"). Other than the tobacco user affidavits, there was no other document provided to

9

participants subject to the tobacco surcharge that determined and disclosed whether they would be subject to the tobacco surcharge.

### i. PNG's 2015-2016 Tobacco User Affidavit (Empyrean System) Failed to Provide Notice of a Reasonable Alternative Standard

PNG's first tobacco user affidavit was in place from 2015 through 2016 and was accessed through the Empyrean system. This document provided no information regarding a reasonable alternative standard to being tobacco free; instead, it described a binary system where tobacco users paid the surcharge and non-tobacco users did not:

> In order to determine if you are exempt from the Tobacco Use Surcharge it is necessary to confirm the tobacco use status of all members of your family enrolled in the Penn National Gaming group medical plan. You must complete this Affidavit prior to your enrollment. Failure to complete this Affidavit will result in the maximum surcharge being applied.
>
> You are considered a Non-Tobacco user if you:
> - Have not used tobacco products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine*), for at least 3 months.
>  1.
> You are considered a Tobacco User if you:
>
> - Are currently using any form of tobacco (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine*), in any amount (including occasional social use), or
> - Have used tobacco based products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine*), within the last 3 months.

*See* Ex. 2, 2015-2016 Tobacco User Affidavit (Empyrean). The last section of this first version of the tobacco user affidavit required participants to self-identify as tobacco users (including any dependents), which determined whether they would be charged the tobacco surcharge:

10

| | | |
|---|---|---|
| Box 1 | ☐ | I do not use tobacco. |
| Box 2 | ☐ | I and my enrolled dependents are non-tobacco users. |
| Box 3 | ☐ | I am a tobacco user. |
| Box 4 | ☐ | I and one of my enrolled dependents use tobacco. |

*See id*. There is no information on the 2015-2016 tobacco user affidavit regarding a reasonable alternative standard to being tobacco free to avoid the tobacco surcharge. *Id*.

ii. **PNG's 2017-2020 Tobacco User Affidavit (Alight System) Failed to Provide Notice of a Reasonable Alternative Standard**

PNG's second tobacco user affidavit was in place from 2017 through 2020 in the Alight system and suffered from the same deficiencies as the 2015-2016 version. The second tobacco user affidavit failed to provide any notice to plan participants of a reasonable alternative standard to being tobacco free to avoid the tobacco surcharge. Instead, the document stated:

> In order to determine if the Tobacco Use Surcharge is applicable, it is necessary to confirm the tobacco use status of all members of your family (age 18 or older) enrolled in [sic] Penn National Gaming group medical plan. You must complete this Affidavit prior to your enrollment.
>
> You are considered a Non-Tobacco User if you:
> Have not used tobacco products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine), for at least 3 months.
>
> You are considered a Tobacco User if you:
>
> Are currently using any form of tobacco (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine) in any amount (including occasional social use), or
>
> Have used tobacco based products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine) within the last 3 months.

11

*See* Ex. 3, 2017-2020 Tobacco User Affidavit (Alight) at p. 5953.  There is no information on the 2017-2020 tobacco user affidavit regarding a reasonable alternative standard to being tobacco free to avoid the tobacco surcharge. *Id.*

      **B.**    **PNG's Open Enrollment Documents Describe the Tobacco Surcharge but Fail to Provide Notice of a Reasonable Alternative Standard in Violation of ERISA**

      For each plan year between 2016 and 2020, PNG distributed what it describes as open enrollment benefits packets in the timeframe leading up to the open enrollment period during which participants could select their coverages under the group health plan. Ex. 1, Romulus Dep. at 44:19-45:2, 46:15-47:6.  However, these documents violate ERISA because they describe the terms of the tobacco surcharge while failing to provide notice of a reasonable alternative standard to being tobacco free.

      Take plan year 2016 as an example.  PNG distributed a 2016 Benefit Enrollment Guide that was accompanied by a company-wide letter titled Tobacco User Surcharge – Open Enrollment Certification. *See* Ex. 4, 2016 Benefit Enrollment Guide, Ex. 5, 2016 Tobacco User Surcharge Letter.  Both documents were distributed to all putative class members. *See* Ex. 1, Romulus Dep. at 102:6-21, 103:5-8, 106:6-107:1.  The 2016 Benefit Enrollment Guide contains a "What's New for 2016" page with a "Tobacco Surcharge" section that states that tobacco users will be subject to tobacco surcharge monthly premium differential of $50 for one covered tobacco user and $100 for two or more covered tobacco users. *See* Ex. 4 at p. 4802.  It also contains a page titled "Tobacco Surcharge" that provides a binary option: tobacco users are subject to the surcharge and non-tobacco users are not. *See id*. at p. 4806.  There is no mention in the 2016 Benefit Enrollment Guide of a reasonable alternative standard.  Similarly, in the company-wide 2016 Tobacco User Surcharge Letter, there is no notice of a reasonable alternative standard despite a lengthy

discussion of the tobacco surcharge premium differential. *See* Ex. 5.  And the same lack of sufficient notice plagues the open enrollment documents for plan years 2017-2020.[6]

### C. PNG's Annual Benefits Confirmation Describes the Tobacco Surcharge but Fails to Provide Notice of a Reasonable Alternative Standard in Violation of ERISA

At all relevant times, including from plan years 2016 through 2020, PNG has sent all plan participants a benefit confirmation that describes the coverages and costs associated with their election of benefits as part of the group health plan. *See* Ex. 1, Romulus Dep. at 193:7-194:7; *see also* Ex. 10, Exemplar Annual Benefits Confirmations.  These confirmation documents disclose to class members that they are subject to the tobacco surcharge, state the amount of the surcharge, and do not provide any information about a reasonable alternative standard. *See* Ex. 10.  This violates ERISA's requirement that benefits disclosures contain information regarding meeting a reasonable alternative statement. *See* 78 Fed. Reg. 33158 at 33166 ("[f]or outcome based-wellness

---

[6] Plan Year 2017: Ex. 6, 2017 Benefit Enrollment Guide at p. 4888 (discussing the $50 and $100 monthly tobacco surcharge with no mention of an alternative standard in the document).

Plan Year 2018: Ex. 7, 2018 Benefit Enrollment Guide at p. 5069 (same).

Plan Year 2019: Ex. 8, 2019 Benefit Enrollment Guide at p. 5624 (same).

Plan Year 2020: Ex. 9, 2020 Benefit Enrollment Guide at p. 5859 (describing the tobacco surcharge and stating only "[p]lease see your local Human Resources Representative for more information on other ways to avoid the surcharge or look under Tools and Resources…").  PNG may attempt to argue that this sentence is a satisfactory notice.  However, it is equally flawed as the earlier Benefit Enrollment Guides that say nothing of an alternative.  This single sentence fails to provide notice of an alternative standard because it does not inform participants of "the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." *See* 29 C.F.R. § 2590.702(f)(4)(v).  Further, it is important to note that the notice of a reasonable alternative standard is required in *every* document describing the tobacco surcharge; thus, that one document may arguably approach compliance by comparison to other plainly non-compliant documents does not absolve PNG for its other violations. *Id*.

13

programs, this notice must also be included in any disclosure that an individual did not satisfy an initial outcome-based standard.").

IV.    **PNG Distributed Documents to Plan Participants Subject to the Tobacco Surcharge in 2019 and 2020 Describing an Alternative Standard that Violated ERISA**

For plan years 2019 and 2020, PNG distributed documents to all class members that consistently described an alternative standard to being a non-tobacco user that, on its face, violated ERISA.

First, in early 2019, PNG created a Tobacco User Affidavit—Smoking Cessation Program. Ex. 1, Romulus Dep. at 148:4-149:1. This document allows plan participants subject to the tobacco surcharge to attest to PNG that they have completed a tobacco cessation program and avoid the surcharge. *Id*. at 148:4-12; *see also* Ex. 11, 2019-2020 Tobacco User Affidavit-Smoking Cessation Program. The affidavit was posted on the benefits website and made available to all potential class members in June 2019. Ex. 1, Romulus Dep. at 175:9-16, 176:10-17. It remained on the benefits website until it was replaced by revised affidavits in October 2020—after Plaintiffs asserted this ERISA claim.[7] *See id*. at 162:23-164:9, 177:22-178:5.

The 2019-2020 Tobacco User Affidavit—Smoking Cessation Program unequivocally informed participants that they would *not* be entitled to avoid the entire tobacco surcharge through the alternative standard:

> Adjustments to the tobacco user surcharge will be on a prospective basis once the smoking cessation program is completed. There will be no retroactive adjustments to the tobacco user surcharge.

---

[7] Plaintiffs filed their Motion to Amend Scheduling Order and for Leave to File a Second Amended Complaint (Doc. 33) on October 2, 2020. This motion contained a proposed Second Amended Complaint alleging the ERISA claim that is the subject of this motion for class certification. PNG was on notice of Plaintiffs' ERISA claim approximately one week prior to the 10/8/2020 revision date on the Tobacco User Affidavit—Smoking Cessation Program. The only logical conclusion is that the earlier, unlawful affidavit was still posted on the benefits website until that date.

Ex. 11, 2019 Tobacco User Affidavit—Smoking Cessation Program at 5709. This document describes a policy that violates ERISA's requirement that the reasonable alternative standard (*i.e.*, completing the tobacco cessation program) provide the same full reward (*i.e.*, completely avoiding the tobacco surcharge) as the original outcome-based standard. *See* 29 C.F.R. § 2590.702(f)(4)(iv) ("The *full reward* under the outcome-based wellness program must be available to all similarly situated individuals.") (emphasis added).

Second, in 2019, PNG created a Tobacco Surcharge FAQ document that was distributed to all class members subject to the tobacco surcharge through the plan benefits website. Ex. 1, Romulus Dep. at 142:18-144:5, 147:22-25; *see also* Ex. 12, 2019 Tobacco Surcharge FAQ. Like the affidavit for completing a tobacco cessation program discussed above, the Tobacco Surcharge FAQ expressly informed plan participants that they would not be entitled to retroactive reimbursement of the tobacco surcharge after completing a cessation program:

> Adjustments to the tobacco user surcharge will be on a prospective basis once the smoking cessation program is completed. There will be no retroactive adjustments to the tobacco user surcharge.

Ex. 12, 2019 Tobacco Surcharge FAQ at p. 5806.

Third, PNG doubled down on this policy of not providing a reasonable alternative standard that offered the same full reward with the 2020 Tobacco Surcharge FAQ:

> Adjustments to the tobacco user surcharge will be on a prospective basis once the smoking cessation program is completed. There will be no retroactive adjustments to the tobacco user surcharge.

*See* Ex. 13, 2020 Tobacco Surcharge FAQ at p. 5889. The 2020 Tobacco Surcharge FAQ was also distributed to all class members subject to the tobacco surcharge via the benefits website. Ex. 1, Romulus Dep. at 156:2-157:14.

15

Importantly, these three 2019 and 2020 documents—the 2019-2020 Tobacco User Affidavit, the 2019 Tobacco Surcharge FAQ, and the 2020 Tobacco Surcharge FAQ—are plan communications from PNG to participants regarding the plan and the tobacco surcharge. Though PNG may downplay them in retrospect to avoid liability, PNG intended for plan participants to review them. Like all other documents posted on the company's benefits website, PNG intended for class members to rely on them. *Id*. at 180:2-11. And PNG concedes it is important for information posted on the benefits website to be accurate. *Id*. at 180:12-16.

These three documents describe an alternative standard that is *not reasonable* under ERISA because they fail to offer the "full reward" of avoiding the entire tobacco surcharge. *See* 29 C.F.R. § 2590.702(f)(4)(iv) ("The full reward under the outcome-based wellness program must be available to all similarly situated individuals."). Even PNG concedes these documents are "not accurate." Ex. 1, Romulus Dep. at 175:9-177:8. These documents support a class-wide ERISA violation for a sub-class of participants subject to the tobacco surcharge in 2019 and 2020.

## V.    Plan Participants Were Never Provided Notice of a Reasonable Alternative Standard as Evidenced by No Participant Ever Successfully Avoiding the Surcharge

There can be no credible dispute that plan participants are similarly situated in that they were not provided notice of a reasonable alternative standard to avoiding the tobacco surcharge. This is confirmed by the testimony of the Plaintiffs and the dearth of plan participants taking advantage of any alternative standard.

First, the Plaintiffs' testimony points toward the conclusion that PNG's documents did not provide notice of a reasonable alternative standard to avoid the tobacco surcharge.[8]    Plaintiff

---

[8] Plaintiffs Layton and Hammond were plan participants subject to the tobacco surcharge during the class period. Plaintiff Layton paid $2,885 in tobacco surcharges, including being subject to the tobacco surcharge during each year between 2016 and 2020. *See* Ex. 19, Plaintiff Layton 2016-2020 Wage and Deduction Summaries. Likewise, Plaintiff Hammond was subject to the surcharge

Layton confirmed that she had no knowledge of a tobacco cessation program. *See* Ex. 15, Layton Dep. at 62:17-22 (Q: I know you testified earlier that you weren't aware that Argosy had resources to help you quit smoking, so I take it that you never talked with anybody at the casino about help with quitting smoking? A: No), 64:6-21 ("I didn't hear anything about—you get your money back. I know nothing about that."), 68:18-69:6 ("I've never been told any this ever in any of the pre-shifts"). Plaintiff Marissa Hammond similarly was never informed of a reasonable alternative standard. *See* Ex. 16, M. Hammond Dep. at 97:14-23. And Opt-In Plaintiff Tim Hammond confirmed he would have taken advantage of a reasonable alternative standard had he been provided notice of one. Ex. 17, T. Hammond Dep. at 137:23-138:24 ("I never completed anything because I didn't know they existed"), 140:5-11, 143:17-144:7, 161:2-162:1 (Q: Would you have considered attending a smoking cessation program if you would have been notified of this? A: Yes).

Second, Plaintiffs' experiences are confirmed by the objective data. No participant subject to a tobacco surcharge ever completed a tobacco cessation program—or any other reasonable alternative standard—and avoided the tobacco surcharge. *See* Ex. 1, Romulus Dep. at 183:9-184:1 (Q: Are you aware of any tobacco user affidavits regarding completion of a smoking cessation program being submitted any point from 2014 to the present? A: I do not have any); *see also* Ex. 14, PNG's Answers and Objections to Plaintiffs' First Set of Interrogatories at Interrogatory 5 ("Defendant is not aware of any participants who have successfully completed and returned documentation of a completion of an approved Tobacco Cessation Program. Accordingly, no participants have avoided the Tobacco Surcharge…").

---

in 2018, 2019, and 2020, paying $1,384.80 in total. *See* Ex. 23, Plaintiff Hammond 2018-2020 Wage and Deduction Summaries.

These objective data points are evidence that plan participants on a class-wide basis were never provided notice of a reasonable alternative standard to avoid the tobacco surcharge.

## VI. PNG's Class-Wide Failure to Provide Notice of a Reasonable Alternative Standard Enriched PNG at the Expense of Plan Participants.

2. For plan years 2016 through 2020, PNG collected millions of dollars in tobacco surcharges from thousands of plan participants. PNG then used its ill-gotten proceeds to offset its own costs in violation of ERISA's fiduciary duties. As shown below, the impact of PNG's unlawful tobacco surcharges was significant:

| 3. Impact of PNG's Unlawful Tobacco Surcharge[9] | | |
|---|---|---|
| Year | Plan Participants Subject to the Tobacco Surcharge | Value of Tobacco Surcharges |
| 2016 | 655 | $400,000 |
| 2017 | 675 | $400,000 |
| 2018 | 690 | $400,000 |
| 2019 | 650 | $400,000 |
| 2020 | 1,534 | $700,000 |

29.

30. PNG then used these approximately $2.3 million in tobacco surcharges to offset its own costs. *See* Ex. 1, Romulus Dep. at 189:22-190:7 (noting that PNG's unlawfully collected tobacco surcharges "go to help offset claims"). All the while, PNG has never provided notice of a reasonable alternative standard to its plan participants. PNG has never had a plan participant successfully avoid the tobacco surcharge through a cessation program. And PNG has required

---

[9] *See* Ex. 14, PNG's Answers and Objections to Plaintiffs' First Set of Interrogatories at Interrogatory 4 (identifying the number of participants subject to the tobacco surcharge annually); *see also* Ex. 1, Romulus Dep. at 188:22-189:21 (identifying approximate ranges of tobacco surcharges PNG collected annually).

many of these employees to work in smoke-filled casinos. *See id*. at 196:3-20 ("I have been to some casinos where they do allow smoking" and "depending on your role at the company, you may be around tobacco").

## VII. PNG's 2014 Tobacco Use Policy Document Provides No Safe Harbor

In 2014, PNG created a tobacco surcharge policy document describing the tobacco surcharge policy that would be implemented in plan year 2015. *See* Ex. 21, Penn National Gaming 2014 Tobacco Use Policy. PNG will presumably argue this policy document proves PNG provided a reasonable alternative standard to avoid the tobacco surcharge and that it provided notice of the same to participants. But this is wrong on both counts and, if anything, further supports Plaintiffs' theory.

First, the Tobacco Use Policy described an unreasonable alternative standard that does not comply with ERISA. This policy document states:

> if it is unreasonably difficult, due to a medical condition, or medically inadvisable for the employee... to be tobacco free, an Alternative Standard will be provided in order for the individual to satisfy the program requirements.

Ex. 21 at p. 5712. Providing a reasonable alternative standard to being tobacco free cannot be limited to those participants for whom it is "unreasonably difficult due to a medical condition" or "medically inadvisable." Instead, the reasonable alternative standard must be provided to *all* participants who did not meet the initial standard—*i.e.*, a reasonable alternative standard must be provided to all tobacco users. *See* 29 C.F.R. § 2590.702(f)(4)(iv) ("a reward under an outcome-based wellness program is not available to all similarly situated individuals for a period unless the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard"). This is underscored by the sample language provided by the regulations that plan sponsors—like PNG—should and could have used when describing an alternative to being tobacco free:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

*See* 29 C.F.R. § 2590.702(f)(6). By limiting its purportedly "reasonable" alternative standard to those for whom it would be "unreasonably difficult due to a medical condition" or "medically inadvisable," PNG violated the law.

Second, to the extent PNG claims the Tobacco Use Policy document cures the "full reward" violations with the 2019 and 2020 documents, PNG is wrong. The Tobacco Use Policy was not made available to plan participants in 2019 or 2020, which PNG's corporate representative herself confirmed. Ex. 1, Romulus Dep. at 77:2-25.[10] Instead, the information about a purported reasonable alternative standard provided to plan participants subject to the tobacco surcharge was contained in the three documents unequivocally informing plan participants that there would be no retroactive reimbursement for completing a tobacco cessation program—*i.e.*, no "full reward." The Tobacco Use Policy thus only underscores PNG's non-compliance with ERISA.

---

[10] It is also worth noting that the Tobacco Use Policy is an "internal" document and not the type of document that was historically provided in, for example, an employee handbook. In PNG's document production log, the policy is described as "internal documentation." *See* Ex. 22, PNG Production Index at p. 7 (describing the tobacco use policy as "Tobacco Surcharge Policy Internal Documentation"). Second, consistent with the document title, PNG's corporate representative could not actually confirm it was ever distributed to plan participants. PNG's corporate representative, who was designated to provide the company's knowledge with respect to communications to plan participants regarding the tobacco surcharge, testified that the company did not know whether the policy document was provided to participants. *See* Ex. 1, Romulus Dep. at 64:14-67:7 ("I have no way of knowing if it got mailed or not"). Plainly, then, the Policy – secret to PNG employees – cannot satisfy the company's obligation to provide adequate notice of an alternative standard.

## **ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiffs Hammond and Layton seek class certification of a nationwide class for plan years 2016, 2017, 2018, 2019, and 2020 and a sub-class for plan years 2019 and 2020.

**(1) Nationwide ERISA Class—Failure to Provide Notice of a Reasonable Alternative Standard**:

All participants in PNG's group health plan for plan years 2016, 2017, 2018, 2019, and 2020 who had a tobacco surcharge deducted from their wages.

**(2) Nationwide ERISA Sub-Class—Failure to Provide a Reasonable Alternative Standard or Notice of the Same:**

All participants in PNG's group health plan for plan years 2019 and 2020 who had a tobacco surcharge deducted from their wages.

Both classes assert claims for breach of fiduciary duty under ERISA for violating the statute's non-discrimination provisions and using the unlawful proceeds for its own benefit (*i.e.*, violating ERISA's fiduciary duties regarding prohibited transactions and the duty of loyalty). *See* 29 U.S.C. §§ 1132(a)(2), 1109(a), 1106(b), 1104(a). In addition, both classes assert claims for appropriate equitable relief, including the remedy of surcharge, seeking to have the Court order PNG to return the ill-gotten gains. *See* 29 U.S.C. § 1132(a)(3)(B).

To support class certification, Plaintiffs must show that each proposed class meets the four prerequisites of Rule 23(a) and one prong of Rule 23(b). As explained below, both classes meet the four prerequisites of Rule 23(a) and certification is appropriate under Rule 23(b).

## I. **The Proposed Classes Are Sufficiently Numerous**

Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable. "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan &*

21

*Co., Inc.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). "The Eighth Circuit has not set forth an arbitrary number or arbitrary rules regarding numerosity." *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999). Classes with as few as 20 members have been held sufficient to satisfy numerosity. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (a proposed class of 20 members satisfied numerosity); *Paxton*, 688 F.2d at 561 (finding a class of 74 employees satisfied numerosity); *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 554-55 (W.D. Mo. 2017) (Bough, J.) (certifying classes of 99 and 144 members).

Here, the proposed classes are sufficiently numerous, and exceed any potential baseline requirement needed to satisfy Rule 23(a)'s numerosity requirement. Both classes contain at least 1,500 members. Thus, Rule 23(a)'s numerosity requirement is satisfied.

## II. The Proposed Classes Share Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans*, 303 F.R.D. at 552 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[A] single common contention… is sufficient." *Flynn v. FCA US LLC,* 327 F.R.D. 206, 222-23 (S.D. Ill. 2018) (citing *Dukes*, 564 U.S. at 359)). Commonality "does not require that every question of law or fact be common to every member of the class ... and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *M.B. by Eggemeyer v. Corsi*, 327 F.R.D. 271, 278-79 (W.D. Mo. 2018) (citations omitted). For this reason, "[c]ommonality is easily satisfied in most cases." *Id.* at 278.

Here, the proposed classes satisfy Rule 23(a)(2)'s commonality requirement. Plaintiffs' ERISA claims rise (or fall) on the same class-wide set of documents and whether these documents violated ERISA's non-discrimination provisions. *See* 29 U.S.C. § 1182; 29 C.F.R. § 2590.702(f)(4)(iv-v). With respect to the Nationwide ERISA Class, *each* document discussed at length above was provided to *each* class member during that plan year. Whether those documents inform class members of a reasonable alternative standard to avoid the tobacco surcharge other than not being a tobacco user will be common to each class member. With respect to the Nationwide ERISA Sub-Class, whether the three class-wide documents provided to each class member described an alternative standard that failed to offer the "full reward" of the outcome-based wellness plan (*i.e.*, avoiding the tobacco surcharge) will be common to each class member. *See* 29 U.S.C. § 1182; 29 C.F.R. § 2590.702(f)(4)(iv).

## III.    Plaintiffs' Claims are Typical of Members of the Classes

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope*, 319 F.R.D. at 555 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal citations omitted).

The typicality requirement is satisfied here because Plaintiffs are asserting the same legal claims under ERISA that are grounded in the challenged tobacco surcharge policy, which is common to all class members. Plaintiffs claim PNG failed to provide notice of a reasonable alternative standard to avoid the tobacco surcharge based on the same set of challenged class-wide documents with respect to the Nationwide ERISA Class. And with respect to the Nationwide

23

ERISA Sub-Class, Plaintiffs claim PNG failed to offer a reasonable alternative standard that provided the full reward (*i.e.*, avoiding the entire tobacco surcharge) based on three class-wide documents. With respect to both classes, Plaintiffs seek to recoup the unlawful surcharges through claims of breach of fiduciary duty and appropriate equitable relief provided for by ERISA. Thus, Rule 23(a)'s typicality requirement is satisfied.

## IV.     Plaintiffs and Proposed Class Counsel are Adequate Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citation omitted). The focus is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton*, 688 F.2d at 562-63.

Here, Plaintiffs have no interest that is antagonistic to, or conflicting with, the interests of the classes. To the contrary, their interests are coextensive with those of proposed class members in establishing PNG's violation of ERISA by failing to provide a reasonable alternative standard to avoid the tobacco surcharge and failing to provide notice of the same. Plaintiffs have also demonstrated their commitment to the prosecution of these claims by responding to written discovery and appearing for depositions.

Further, Plaintiffs have retained qualified attorneys who are experienced in class action litigation and employment litigation. *See, e.g., Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (awarding attorneys' fees to Stueve Siegel Hanson LLP following a successful class action jury verdict and finding "it appears that plaintiffs' counsel's experience in wage-hour class actions has unmatched depth"); Ex. 18, Stueve Siegel Hanson LLP Firm Resume (noting the firm has tried three class

24

actions to successful verdicts, including in the Western District of Missouri). Thus, Rule 23(a)'s

adequacy requirement is satisfied

## V. Class Certification is Appropriate under Rule 23(b)(1)(B) Because Adjudication of Plaintiffs' Claims Would Be Dispositive of the Interests of Other Plan Participants' Claims

Rule 23(b)(1)(B) provides for class certification in situations where adjudication of one

claim will necessarily impact the adjudication of the other similar claims:

> A class action may be maintained if … prosecuting separate actions by or against individual class members would create a risk of … adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests

*See* Fed. R. Civ. P. 23(b)(1)(B). The Advisory Committee Notes regarding the Rule provide

further clarity on the nature of (b)(1)(B) class actions:

> This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit.

*See* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Notes (1966 Amendment). As Judge

Laughrey held in certifying an ERISA breach of fiduciary duty class, "[t]o qualify as a class action

under Rule 23(b)(1)(B), it must be shown that 'the shared character of rights claimed or relief

awarded entails that any individual adjudication by a class member disposes of, or substantially

affects, the interests of absent class members.'" *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193

(W.D. Mo. 2009) (Laughrey, J.) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999)).

And Judge Laughrey further noted "[s]everal courts have certified classes alleging breaches of

ERISA fiduciary duties under Rule 23(b)(1)(B)." *Id.* (collecting cases).

Rule 23(b)(1)(B) class certification is appropriate in ERISA cases where the class alleges

a breach of fiduciary duties—like Plaintiffs have alleged here—because breach of fiduciary duties

under ERISA are brought on behalf of the plan. *See* 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"). Because Plaintiffs' claim for breach of fiduciary duty on behalf of the plan would be dispositive of the claims of other class members, Rule 23(b)(1)(B) certification is appropriate. *Jones*, 257 F.R.D. 181, 193 ("given that that Jones's claim seeks Plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.") (citing *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535 (S.D. Ohio Sept.30, 2008)); *see also George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 352 (N.D. Ill. 2008) (finding that adjudication of the claims of a plaintiff representing the interests of a plan would be dispositive of the interests of plan participants as a practical matter).[11]

## VI. Class Certification is Appropriate under Rule 23(b)(3) Because Common Issues Predominate Over Individual Issues and a Class Action Is Superior to Individual Litigation

### A. Predominance is Satisfied

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When determining whether common questions predominate, the court asks whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Tyson Foods, Inc.*, 136 S. Ct. at 1045 ("A common question is one where 'the same evidence

---

[11] *See, e.g., In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367, at *9 (D. Kan. Apr. 6, 2011) (Lungstrum, J.) (certifying ERISA breach of fiduciary duty class action and noting that "courts consistently reason that certification is appropriate on the grounds that such claims seek plan-wide relief such that a failure to certify could leave future plaintiffs without relief.") (collecting cases); *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487, at *6 (W.D. Mo. Dec. 6, 2017) (Kays, J.) (certifying ERISA breach of fiduciary duty class action on the grounds that "because Plaintiffs seek Plan-wide relief, adjudication of Plaintiffs' claims would be dispositive of the interest of all plan participants.").

will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."); *Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). And when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (internal citation omitted).

In this case, two discrete, common questions predominate among the proposed classes that warrant adjudication of their ERISA claims on a representative basis. With respect to the Nationwide ERISA Class, Plaintiffs' claims generally rise (or fall) under ERISA on the same basis. The common question that predominates and binds members of each of the Nationwide ERISA Class is the same: whether the challenged plan documents provided notice of a reasonable alternative standard to avoid the tobacco surcharge. If not, Plaintiffs and class members are entitled to equitable relief—including the Court utilizing equitable remedies to return the unlawful tobacco surcharges—on a class-wide basis. *See* 29 U.S.C. § 1132(a)(3)(B). With respect to the Nationwide ERISA Sub-Class, a related common question predominates: whether the three 2019 and 2020 plan documents described an unreasonable alternative standard to the tobacco surcharge that did not offer the same full reward and therefore violated ERISA. If so, the members of the proposed class will also be entitled to appropriate equitable relief. *See* 29 U.S.C. § 1132(a)(3)(B).

ERISA claims are frequently certified under Rule 23(b)(3) because common, plan-wide documents tend to drive common, plan-wide answers. *See, e.g., Holling-Fry v. Coventry Health Care of Kansas, Inc*., No. 07-0092-CV-W-DGK, 2010 WL 3636156, at *5 (W.D. Mo. Sept. 10, 2010) (finding Rule 23(b)(3) requirements met in ERISA case because the question of whether

class members were charged payments "in excess of that authorized by law is easily determined on a class-wide basis by generalized evidence showing how Defendant applied the regulation to the class as a whole."); *Bauer v. Kraft Foods Glob., Inc*., 277 F.R.D. 558, 563 (W.D. Wis. 2012) (certifying ERISA class action under Rule 23(b)(3) in part because ("[a]ll class members were subject to the same collective bargaining agreement and health plan."); *Owens v. Metro. Life Ins. Co*., 323 F.R.D. 411, 424 (N.D. Ga. 2017). Rule 23(b)(3)'s predominance requirement is satisfied.

### B.      A Class Action is Superior to Individual Litigation

In addition to predominance, Rule 23(b)(3) requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides that matters pertinent to this finding include: "(A) the class members' interested in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Because Plaintiffs' ERISA class claims all rise (or fall) on the same common question susceptible to generalized, class-wide proof as to all plan participants subject to a tobacco surcharge, a representative action is clearly superior to other available methods for fairly and efficiently adjudicating the controversy in a single forum.

Also favoring class treatment is that the amount in controversy on an individual basis is rather modest – for example, the annualized cost of the tobacco surcharge for a single covered tobacco user was $600 and was $1,200 for two or more covered tobacco users. Though these sums are meaningful to the individual—and certainly to PNG in the aggregate—they would not justify an individual lawsuit. Indeed, this lawsuit is the only known action raising these claims on an individual or representative basis in any forum.

Finally, there should be no concerns about the Court's ability to efficiently manage the litigation as a class action. As discussed above, the focus in this case is on PNG's conduct—more specifically, the class-wide documents PNG created and distributed that Plaintiffs allege violate ERISA's non-discrimination provisions—such that there are no individualized issues that would undermine the superiority of a class action. Thus, Rule 23(b)(3)'s superiority requirement is satisfied.

## VII. Class Certification is Appropriate under Rule 23(b)(2) Because Plaintiffs are Seeking Injunctive and Declaratory Equitable Relief, and PNG Acted on Grounds that Apply Generally to the Entire Class

For the same reasons certification is appropriate under Rule 23(b)(1)(B) and (b)(3), the class should be certified under Rule 23(b)(2) as well. That section provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Courts have frequently certified classes alleging ERISA violations under this section, including instances where the class is seeking monetary relief. *See, e.g., Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 369-72 (7th Cir. 2012); *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014); *see also Walker v. Monsanto Co. Pension Plan*, 252 F.R.D. 450, 453 (S.D. Ill. 2008) (finding the class "meets the requirements of Rule 23(b)(2) because [e]nforcement of the Plan provisions at issue as against all class members constitutes action on grounds generally applicable to members of the proposed classes."). Because Plaintiffs are seeking equitable injunctive and declaratory relief against PNG, and the company acted on grounds that applied generally to the class as a whole by enforcing the tobacco surcharge, certification under Rule 23(b)(2) is warranted.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court grant class certification pursuant to Federal Rule of Civil Procedure 23(a), (b)(1)(B), (b)(2), and (b)(3); appoint Plaintiffs Hammond and Layton as Class Representatives pursuant to Federal Rule of Civil Procedure 23; appoint George A. Hanson and Alexander T. Ricke of Stueve Siegel Hanson LLP and Ryan L. McClelland of McClelland Law Firm, P.C. as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g); instruct the parties to meet and confer regarding a notice plan pursuant to Federal Rule of Civil Procedure 23(c)(2); and for any other relief the Court deems appropriate.

Dated:  September 15, 2021

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*/s/ Alexander T. Ricke*
George A. Hanson, MO. Bar No. 43450
Alexander T. Ricke, MO. Bar No. 65132
Caleb Wagner, MO. Bar No. 68458
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     (816) 714-7100
Facsimile:      (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
Michael J. Rahmberg, MO. Bar No. 66979
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:     (816) 781-0002
Facsimile:      (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

30

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 15, 2021 the foregoing document was filed with the Court's CM/ECF system, which served a copy of the foregoing document on all counsel of record.

/s/ *Alexander T. Ricke*

**ATTORNEY FOR PLAINTIFFS**