**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

GINA R. LIPARI-WILLIAMS,
MARISSA T. HAMMOND, and
LUCINDA M. LAYTON, on behalf of
themselves and all others similarly situated,

          Plaintiffs,

v.

PENN NATIONAL GAMING, INC., et al.

          Defendants.

Case No. 5:20-cv-06067-SRB

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF MOTION FOR**
**FLSA CONDITIONAL AND RULE 23 CLASS CERTIFICATION OF**
**WAGE AND HOUR CLAIMS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION ..................................................................................................................... 1

I. Statement of the Nature of the Matter Before the Court ...................................... 1

    A. The Parties ................................................................................................... 1

    B. The Claims .................................................................................................... 2

    C. FLSA Conditional and Rule 23 Class Certification ................................. 3

        1. Certification of Plaintiffs' Gaming License Deduction Claims ................. 3

        2. Certification of Plaintiffs' Unlawful Tip Pool Claims .............................. 3

ARGUMENT AND AUTHORITIES ..................................................................................... 4

I. The Court Should Accept the Parties' Stipulation and Grant FLSA Conditional and Rule 23 Class Certification of Plaintiffs' FLSA Gaming License Collective and MMWL Gaming License Class. ............................................................................. 4

    A. The Legal Standard for FLSA Conditional and Rule 23 Class Certification ......... 5

    B. The FLSA Gaming License Collective and Missouri State Law Class. ................. 7

        1. The FLSA Gaming License Collective ...................................................... 7

        2. The Rule 23 Class Under Missouri Law .................................................... 7

    C. The FLSA and MMWL Wage Deduction Requirements ...................................... 8

        1. The FLSA .................................................................................................... 8

        2. The Missouri Minimum Wage Law ........................................................... 9

    D. The Requirements for FLSA Conditional Certification and Rule 23 Class Certification Are Satisfied. ...................................................................................... 9

        1. The Court Should Conditionally Certify the FLSA Gaming License Collective. ............................................................................................... 10

        2. The Court Should Grant Rule 23 Certification of the MMWL Gaming License Class. ...................................................................................... 11

            a. The Numerosity Requirement Is Satisfied. ..................................... 12

b. The Commonality Requirement Is Satisfied ................................... 13

c. The Typicality Requirement Is Satisfied........................................ 14

d. The Adequacy Requirement Is Satisfied ........................................ 15

e. Rule 23(b)(3)'s Requirements Are Satisfied .................................. 16

    i. Predominance.................................................................... 16

    ii. Superiority......................................................................... 18

II. The Court Should Accept the Parties' Stipulation and Grant FLSA Conditional and Rule 23 Class Certification of Plaintiffs' Tip Pooling Collectives and Related State Law Classes. ..................................................................................... 19

A. The Legal Standard for FLSA Conditional Certification and Rule 23 Class Certification. ..................................................................................... 19

B. The FLSA Tip Pooling Collectives and Missouri State Law Classes. ................. 20

    1. The Argosy Riverside Casino Tip Pooling Collective.............................. 20

    2. The Hollywood Casino St. Louis Tip Pooling Collective ....................... 20

    3. The Argosy Casino Riverside Tip Pooling Class. .................................. 21

    4. The Hollywood Casino St. Louis Tip Pooling Class. .............................. 21

C. The FLSA and MMWL's Tip Pooling Requirements. ......................................... 21

    1. The FLSA.............................................................................................. 21

    2. The MMWL .......................................................................................... 23

D. The Requirements for FLSA Conditional and Rule 23 Class Certification Are Satisfied........................................................................................... 24

    1. The Court Should Conditionally Certify the Argosy Casino Riverside and Hollywood Casino St. Louis Tip Pooling Collectives. ..................... 24

    2. The Court Should Grant Rule 23 Certification of the Argosy Casino Riverside Tip Pooling Class and Hollywood Casino St. Louis Tip Pooling Class. .................................................................. 29

        a. The Numerosity Requirement Is Satisfied. .................................. 30

        b. The Commonality Requirement Is Satisfied................................. 31

c.     The Typicality Requirement Is Satisfied ..................................... 31

d.     The Adequacy Requirement Is Satisfied....................................... 31

e.     Rule 23(b)(3)'s Requirements Are Satisfied................................ 32

        i.      Predominance.................................................................... 32

        ii.     Superiority......................................................................... 33

CONCLUSION........................................................................................................ 34

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Las Margaritas, Inc.*,
No. 16-1390, 2018 WL 6812370 (E.D. Pa. Dec. 27, 2018) .................................................... 22

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996) ...................................................................................................... 14

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................... 15, 16

*Ark. Educ. Ass'n v. Bd. of Educ.*,
446 F.2d 763 (8th Cir. 1971) ...................................................................................................... 12

*Arriaga v. Fla. Pac. Farms, LLC*,
305 F.3d 1228 (11th Cir. 2002) ..................................................................................................... 8

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) ...................................................................................................... 16

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ....................................................................................................... 16

*Bradford v. AGCO Corp.*,
187 F.R.D. 600 (W.D. Mo. 1999) ............................................................................................... 12

*Brock v. 50 Eggs, Inc.*,
No. 16-20294-CIV, 2016 WL 10933025 (S.D. Fla. Oct. 11, 2016) ......................................... 29

*Camara v. Mastro's Restaurants LLC*,
340 F. Supp. 3d 46 (D.D.C. 2018) .............................................................................................. 29

*Chhab v. Darden Restaurants, Inc.*,
No. 11-CIV-8345-NRB, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ................................... 29

*Compere v. Nusret Miami, LLC*,
391 F. Supp. 3d 1197 (S.D. Fla. 2019) ...................................................................................... 29

*Cope v. Let's Eat Out, Inc.*,
319 F.R.D. 544 (W.D. Mo. 2017) .................................................................................... 12, 14, 17

*Cromeans v. Morgan Keegan & Co., Inc.*,
303 F.R.D. 543 (W.D. Mo. 2014) ....................................................................................... 12, 13

*Davis v. NovaStar Mortgage, Inc.*,
408 F. Supp. 2d 811 (W.D. Mo. 2005) ......................................................................................... 6

*Day v. Celadon Trucking Servs., Inc.*,
    827 F. 3d 817 (8th Cir. 2016) ............................................................. 16

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) ............................................................. 14

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) ......................................................... 13

*Garcia v. Tyson Foods, Inc.*,
    No. 06-2198-JTM, 2012 WL 5985561 (D. Kan. Nov. 29, 2012) ..................... 15

*Halle v. W. Penn Allegheny Health Sys Inc.*,
    842 F.3d 215 (3d Cir. 2016) ......................................................... 6, 29

*Haworth v. New Prime, Inc.*,
    448 F. Supp. 3d 1060 (W.D. Mo. March 3, 2020) ................................... 5, 6

*James v. Boyd Gaming Corp.*,
    No. 19-2260-DDC-JPO, 2021 WL 794899 (D. Kan. Mar. 2, 2021) ........... 4, 5, 29

*Kautsch v. Premier*,
    *Communs.*, 504 F. Supp. 2d 685 (W.D. Mo. 2007) ............................... 5, 6

*Lilley v. IOC-Kansas City, Inc.*,
    2019 WL 5847841 (W.D. Mo. Nov. 7, 2019) ..................................... 3, 8, 9

*Lockett v. Pinnacle Ent., Inc.*,
    No. 19-00358-CV-W-GAF, 2021 WL 960424 (W.D. Mo. Mar. 12, 2021) ............ 4, 11, 18, 29

*Lockett v. Pinnacle Entertainment, Inc.*,
    408 F. Supp. 3d 1043 (W.D. Mo. 2019) ......................................... passim

*M.B. by Eggemeyer v. Corsi*,
    327 F.R.D. 271 (W.D. Mo. 2018) ..................................................... 13, 14

*Montano v. Montrose Restaurant Associates, Inc.*,
    800 F.3d 186 (5th Cir. 2015) ......................................................... 22, 23

*Montoya v. CRST Expedited, Inc.*,
    311 F. Supp. 3d 411 (D. Mass. 2018) ................................................... 11

*Paxton v. Union Nat'l Bank*,
    688 F.2d 552 (8th Cir. 1982) ......................................................... 12, 15

*Pedigo v. Austin Rumba, Inc.*,
    722 F. Supp. 2d 714 (W.D. Tex. 2010) ................................................. 22

*Perrin v. Papa John's Int'l, Inc.*,
    No. 4:09-CV-01335-AGF, 2013 WL 6885334 (E.D. Mo. Dec. 31, 2013) .............................. 17

*Polzin v. Schreiber Foods, Inc.*, No. 10-1117-CV-SW-GAF,
    2011 U.S. Dist. LEXIS 142955 (W.D. Mo. Aug. 15, 2011) ...................................................... 6

*Postawko v. Missouri Dep't of Corr.*,
    910 F.3d 1030 (8th Cir. 2018) ................................................................................................. 7

*Taylor v. Bear Communs., LLC*,
    No. 4:12-CV-01261-BCW, 2013 WL 3270971 (W.D. Mo. June 27, 2013) ........................ 5, 6

*Tropicana Ent., Inc.*,
    No. 4:19 CV 404 RWS, 2021 WL 1105500 (E.D. Mo. Mar. 23, 2021) ............................ 11, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................................... 7, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................................... 13

*Williams v. Secure Res. Commc'n Corp.*,
    No. 11-CIV-03986-PAC-JCF, 2013 WL 4828578 (S.D.N.Y. Sept. 10, 2013) ........................ 9

*Young v. Cerner Corp.*,
    503 F. Supp. 2d 1226 (W.D. Mo. 2007) .................................................................................. 5

**Statutes**

29 U.S.C. § 203 ................................................................................................ 21, 22, 23, 25, 28

29 U.S.C. § 206 ........................................................................................................................... 8

29 U.S.C. § 216 ..................................................................................................................... 5, 23

Mo. Rev. Stat. § 290.502 ............................................................................................................ 9

Mo. Rev. Stat. §§ 290.500 ........................................................................................................... 9

RSMo. § 290.512 .................................................................................................................. 23, 28

**Rules**

Federal Rule of Civil Procedure 23 .................................................................................... 6, 7, 9

Case 5:20-cv-06067-SRB   Document 93   Filed 09/15/21   Page 7 of 44

**Regulations**

29 C.F.R. § 531.56 ................................................................................................................ 25

Mo. Code Regs. Ann. tit. 11, § 45-4.380 .............................................................................. 18

## INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for FLSA conditional and Rule 23 class certification of (1) FLSA Gaming License Collective; (2) Missouri Minimum Wage Law Gaming License Class; (3) Hollywood Casino St. Louis Tip Pooling Collective; (4) Hollywood Casino St. Louis Tip Pooling Class; (5) Argosy Casino Riverside Tip Pooling Collective; and (6) Argosy Casino Riverside Tip Pooling Class. The parties have completed Phase I discovery as limited to the issues surrounding whether Plaintiffs' claims are appropriate for class or collective action treatment. By agreement, Defendants have stipulated to FLSA conditional certification of the FLSA Gaming License Collective and class certification of the related Rule 23 class under Missouri law. *See* Ex. 1, Stipulation. Likewise, Defendants have stipulated to FLSA conditional certification of the Hollywood Casino St. Louis and Argosy Casino Riverside Tip Pooling Collectives and class certification of a related Rule 23 class at each respective casino under Missouri law.[1] *See* Ex. 1, Stipulation. For the following reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and direct issuance of notice to the FLSA collectives and Rule 23 classes.

## I. Statement of the Nature of the Matter Before the Court

### A. The Parties

The Missouri Gaming Company, LLC d/b/a Argosy Riverside Casino ("Argosy Casino Riverside") and St. Louis Gaming Ventures, LLC d/b/a Hollywood Casino St. Louis ("Hollywood Casino St. Louis") (collectively, "Defendants") are casinos in Missouri. Plaintiffs are hourly, non-exempt table games dealers that work (or worked) at Argosy Casino Riverside

---

[1] Defendant does not oppose certification pursuant to the terms of the parties' Stipulation. Plaintiffs acknowledge, however, that Defendant does not concede or endorse any of Plaintiffs' substantive allegations and reserves all rights related to opposing Plaintiffs' claims on the merits.

and/or Hollywood Casino St. Louis. As table games dealers, Plaintiffs are "tipped employees" (*i.e.*, employees who customarily and regularly receive at least $30 a month in tips), but are not permitted to retain their own tips. Instead, Defendants require their table games dealers to pool their tips as part of the mandatory tip pooling arrangements that Defendants operate at their casinos. Defendants' table games dealers often make less than the applicable minimum wage per hour as a base hourly wage (referred to as a sub-minimum base hourly wage), and Defendants claim a "tip credit" towards the required minimum wage. As a condition of their employment, Plaintiffs, like other hourly, non-exempt workers, have been subject to deductions from their wages for amounts associated with initially obtaining or thereafter renewing a State-issued gaming license.

### B. The Claims

Plaintiffs' operative Third Amended Class and Collective Action Complaint (Doc. 62) includes two categories of wage and hour claims. First, Plaintiffs allege that Defendants improperly deducted gaming license costs from their paychecks. Plaintiffs allege that gaming license costs arise out of employment rather than the ordinary course of life and that they, therefore, primarily benefit the employer. Plaintiffs have advanced their gaming license deduction claims as an FLSA collective action and Rule 23 class action under Missouri law. Second, Plaintiffs allege that Defendants operated an unlawful, mandatory tip pooling arrangement for their Table Games Dealers by retaining and then distributing a portion of the Table Games Dealers' pooled tips to Dual-Rate Table Games Supervisors – non-tipped, supervisory employees – in violation of the FLSA and Missouri state law. Plaintiffs have advanced their tip pool claims as FLSA collective actions and Rule 23 class actions under Missouri law.

## C.     FLSA Conditional and Rule 23 Class Certification

### 1.     Certification of Plaintiffs' Gaming License Deduction Claims

Defendants have stipulated that Plaintiffs' gaming license deduction claims should be conditionally certified as an FLSA collective action and a Rule 23 class action under Missouri law. *See* Ex. 1, Stipulation.  The Court should readily conclude that the parties' agreement to certification of the gaming license deduction claims is objectively reasonable and entirely consistent with applicable FLSA and Rule 23 standards.

The suitability of class and collective action treatment of Plaintiffs' gaming license deduction claims is demonstrated by this Court's Order denying a motion to dismiss directed at identical claims.  *See Lilley v. IOC-Kansas City, Inc.*, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019).  As that Order demonstrates, the viability of Plaintiffs' gaming license deduction claims principally turns on the common question of whether a gaming license primarily benefits Defendants, as employers.  If it does, the FLSA prohibits the deduction of any cost or fee for the gaming license, at least to the extent the deduction brings an employee's pay below the statutory minimum wage. *Id*. at *2.  And Plaintiffs' state law claims under Missouri law arise under statutes interpreted consistent with the FLSA.  Because the "primary beneficiary" inquiry is susceptible to common proof and class-wide resolution as to all similarly situated employees in one stroke (and all other elements for FLSA conditional and Rule 23 class certification are satisfied), it is entirely appropriate for the Court to approve the parties' Stipulation and permit further litigation of Plaintiffs' gaming license deduction claims as a conditionally certified FLSA collective action and Rule 23 class action.

### 2.     Certification of Plaintiffs' Unlawful Tip Pool Claims

Defendants have also stipulated that Plaintiffs' unlawful tip pool claims should be conditionally certified at each casino as FLSA collective actions and Rule 23 class actions under

Missouri law. *See* Ex. 1, Stipulation. The Court should likewise conclude that the parties' agreement to certification of the tip pool claims is objectively reasonable and entirely consistent with applicable FLSA and Rule 23 standards. As explained below, Plaintiffs' Hollywood Casino St. Louis Tip Pooling Collective and Argosy Casino Riverside Tip Pooling Collective should be conditionally certified as FLSA collective actions because their members – all table games dealers that participate in Defendants' mandatory tip pooling arrangements at each respective casino – were together victims of a single policy and practice that affected them in the same or substantially similar manner. That is, Plaintiffs allege, and the record supports that Defendants operated an unlawful, mandatory tip pooling arrangement for their table games dealers by retaining and then distributing a portion of the dealers' pooled tips to Dual-Rate Table Games Supervisors, which is a non-tipped, supervisory position, in violation of the FLSA and Missouri law. Thus, it is entirely appropriate for the Court to approve the parties' Stipulation and permit further litigation of Plaintiffs' unlawful tip pool claims as conditionally certified FLSA collective actions and Rule 23 class actions.

Indeed, courts in this District, as well as the District of Kansas, have previously certified claims nearly identical to those asserted by Plaintiffs here. *See Lockett v. Pinnacle Ent., Inc*., No. 19-00358-CV-W-GAF, 2021 WL 960424 (W.D. Mo. Mar. 12, 2021) (Fenner, J.); *James v. Boyd Gaming Corp.*, No. 19-2260-DDC-JPO, 2021 WL 794899 (D. Kan. Mar. 2, 2021) (Crabtree, J.). This Court should follow suit.

## <u>ARGUMENT AND AUTHORITIES</u>

**I.     The Court Should Accept the Parties' Stipulation and Grant FLSA Conditional and Rule 23 Class Certification of Plaintiffs' FLSA Gaming License Collective and MMWL Gaming License Class.**

Defendants have stipulated that Plaintiffs' gaming license deduction claims should be conditionally certified as an FLSA collective action and a Rule 23 class action under Missouri

4

law. *See* Ex. 1, Stipulation. Because the parties' agreement to certification of these claims is objectively reasonable and entirely consistent with applicable FLSA and Rule 23 standards, the Court should accept the parties' stipulation and grant FLSA conditional and Rule 23 class certification of Plaintiffs' Gaming License Collective and Missouri Minimum Wage Law Gaming License Class.

### A.     The Legal Standard for FLSA Conditional and Rule 23 Class Certification

The FLSA provides a private right of action to recover damages for violations of its provisions. 29 U.S.C. § 216(b). An action may be brought by an employee individually and on behalf of "other employees similarly situated." *Id.* In an FLSA collective action, individuals must "opt in" to participate. *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1228-29 (W.D. Mo. 2007).

One of the most recent published decisions from this district conditionally certifying an FLSA collective action is *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060 (W.D. Mo. March 3, 2020). As explained in *Haworth*, the Court may certify a collective action only if members of the collective are "similarly situated" or raise similar legal issues related to alleged FLSA violations, including those regarding coverage, exemption, or nonpayment of wages. *Id.* at 1066. Although the FLSA does not define the term "similarly situated" and the Eighth Circuit has not articulated a standard for conditionally certifying an FLSA collective, "the majority of the district courts in the Eighth Circuit use a two-step process." *Id.* (citing *Kautsch v. Premier Communs.*, 504 F. Supp. 2d 685, 688-89 (W.D. Mo. 2007); *Taylor v. Bear Communs., LLC*, No. 4:12-CV-01261-BCW, 2013 WL 3270971, at *2 (W.D. Mo. June 27, 2013)).

During the first stage of the two-step process, the named plaintiff moves for conditional certification for the limited purpose of providing notice to putative collective members. *Id.*

During this stage, the "similarly situated" threshold requires only a "modest factual showing." *Id*. (citing *Kautsch*, 504 F. Supp. 2d at 689; *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)). "Courts do not evaluate the merits of the plaintiff's claim at this early stage." *Id*. (citing *Polzin v. Schreiber Foods, Inc.*, No. 10-1117-CV-SW-GAF, 2011 U.S. Dist. LEXIS 142955, at *7 (W.D. Mo. Aug. 15, 2011)). Instead, a plaintiff need only establish a "colorable basis" for a claim that the putative collective members were "together the victims of a single decision, policy or plan." *Id*.

Stated another way: "The first step, so-called conditional certification requires a named plaintiff to make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

As courts within this District have explained, the standard at conditional certification is "lenient" and "generally results in conditional certification of a representative class." *Haworth*, 448 F. Supp. 3d at 1066 (citing *Polzin*, 2011 U.S. Dist. LEXIS 142955, at *7) (Fenner, J.)). "Any doubts in the notice stage should favor allowing conditional certification." *Id*.

If the Court grants conditional certification of an FLSA collective, putative collective members are given notice and the opportunity to opt in, and the action proceeds as a collective action throughout merits discovery. *Id*. After merits discovery is complete, a defendant may file a motion to decertify. *Id*. At this second stage, the Court is able to make a more informed decision to ensure the collective members before the Court are actually similarly situated. *Id*.

Class certification, on the other hand, is governed by Federal Rule of Civil Procedure 23, which requires that the plaintiff satisfy the requirements of Rule 23(a) and at least one of the

three subsections of Rule 23(b). *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016); *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018).

**B.**    **The FLSA Gaming License Collective and Missouri State Law Class.**

**1.**    **The FLSA Gaming License Collective**

The Parties have stipulated to conditional certification of Plaintiffs' **FLSA Gaming License Collective**, defined as follows:

> **All persons employed and paid a direct cash wage of the applicable federal minimum wage or less per hour during the relevant time period at Argosy Casino Riverside or Hollywood Casino St. Louis, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license.**

The relevant time period for Plaintiffs' FLSA Gaming License Collective is September 15, 2018 (three years preceding the effective date of the Parties' stipulation) to either (a) the date the Court approves the Notice (assuming no changes in pay practices); or (b) such other date as may be agreed to by the parties or ordered by the Court. The Parties stipulate that, as to any member of the FLSA Gaming License Collective for whom a timely Consent to Join is filed with the Court after issuance of the Court-approved Notice, such Consent to Join shall be deemed filed for limitations purposes as of September 15, 2021 (the effective date of the Parties' stipulation). *See* Ex. 1, Stipulation.

**2.**    **The Rule 23 Class Under Missouri Law**

The Parties have stipulated to Rule 23 class certification of Plaintiffs' **MMWL Gaming License Class**, defined as follows:

> **All persons employed and paid a direct cash wage of the applicable Missouri minimum wage or less per hour during the relevant time period at Argosy Casino Riverside or Hollywood Casino St. Louis, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license.**

The relevant time period for Plaintiffs' MMWL Gaming License Class is March 31, 2017 (three years preceding the filing of the Class Action Petition) to either: (a) the date the Court approves the Notice (assuming no change in pay practices); or (b) such other date as may be agreed to by the parties or ordered by the Court. *See* Ex. 1, Stipulation.

### C. The FLSA and MMWL Wage Deduction Requirements

#### 1. The FLSA

This Court has already directly addressed the applicable legal standard for evaluating whether a deduction for a State-issued gaming license violates the FLSA. *See Lilley v. IOC-Kansas City, Inc.*, No. 4:19-CV-00553-SRB, 2019 WL 5847841 (W.D. Mo. Nov. 7, 2019); *see also Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019) (undertaking the same analysis and reaching the same conclusion).

To summarize, the FLSA requires payment of a minimum wage for all hours worked. 29 U.S.C. § 206(a). An employer may not deduct from an employee's wages the cost of facilities which primarily benefit the employer if such deductions drive the employee's wages below minimum wage. *Lilley,* 2019 WL 5847841 at *2; *Lockett*, 408 F. Supp. 3d at 1047-48. The test is whether the item primarily benefits the employer or the employee. *Lockett*, 408 F. Supp. 3d at 1048 (*citing Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1242-43 (11th Cir. 2002)). In making that determination, this Court noted that there exists "a consistent line being drawn between those costs arising from the employment itself" and primarily benefit the employer, and "those that would arise in the course of ordinary life" and primarily benefit the employee. *Lilley,* 2019 WL 5847841 at *2. And, as this Court recognized in *Lilley*, "[p]rofessional licensing costs arise out of employment rather than the ordinary course of life. They therefore primarily benefit the employer, not the employee, and are not deductible to the extent they bring an

employee's pay below the minimum wage." *Id.* at *2 (citing *Williams v. Secure Res. Commc'n Corp.*, No. 11-CIV-03986-PAC-JCF, 2013 WL 4828578, at *6 (S.D.N.Y. Sept. 10, 2013)).

As part of its analysis in *Lilley*, the Court dismissed various assertions advanced by the defendants, stating: "Defendant's argument that the gaming license fee deduction represents repayment of a loan and is therefore permissible is also unavailing because the relevant inquiry focuses on whether the gaming license fee benefits the employer or employee." *Id.* at *3; *see also Lockett*, 408 F. Supp. 3d at 1048 (holding "it does not matter if the gaming license is . . . considered a loan[]"). Ultimately, in denying the defendants' motion to dismiss in *Lilley*, this Court stated: "The Court finds that considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw, the gaming license fee is a cost arising from employment and not arising in the ordinary course of life." *Lilley,* 2019 WL 5847841 at *3. Accordingly, the FLSA prohibits the deduction of any cost or fee for the gaming license, at least to the extent the deduction brings an employee's pay below the minimum wage.

## 2. The Missouri Minimum Wage Law

Plaintiffs' claims under the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500, *et seq*., generally rise (or fall) on the same basis and for the same reasons as Plaintiffs' FLSA claim because the Missouri statutes are interpreted consistent with the FLSA's provisions and regulations. *See Lockett*, 408 F. Supp. 3d at 1048-49 ("The MMWL … [is] interpreted consistent with FLSA regulations"). It should be noted, however, that the applicable Missouri minimum wage is higher than the federal minimum wage. *See* Mo. Rev. Stat. § 290.502(3).

## D. The Requirements for FLSA Conditional Certification and Rule 23 Class Certification Are Satisfied.

1. **The Court Should Conditionally Certify the FLSA Gaming License Collective.**

The parties' agreement on certification is supported by substantial allegations and record evidence that members of the FLSA Gaming License Collective are similarly situated for purposes of FLSA conditional certification because they were together victims of a single policy and practice that affected them in the same or substantially similar manner.

Defendants have confirmed that certain hourly, non-exempt employees that work in a position that requires a State-issued gaming license are treated the same in regard to being responsible for the payment or repayment of the cost to initially obtain, maintain, and/or renew the license. Defendants admit that certain individuals who wish to work at Argosy Casino Riverside and Hollywood Casino St. Louis must personally qualify for and obtain an appropriate gaming license from the Missouri Gaming Commission. *See* Doc. 65, Defendants' Answer to Plaintiffs' Third Amended Class and Collective Action Complaint ("Defendant's Answer"), at ¶ 3. Defendants further admit that certain individuals who wish to continue working at Argosy Casino Riverside and Hollywood Casino St. Louis must later qualify for and renew their license. *Id.* Defendants further admit the Missouri Gaming Commission charges a fee to the individuals who wish to work or continue working at Argosy Casino Riverside and Hollywood Casino St. Louis when the individuals obtain, replace, or renew their personal gaming license. *Id.* Defendants further admit certain employees at Argosy Casino Riverside and Hollywood Casino St. Louis paid for their gaming license through a payroll deduction. *Id. See also* Ex. 2, Answers and Objections to Plaintiff Gina R. Lipari-Williams' First Set of Interrogatories Directed to Defendant Missouri Gaming Company, LLC at ¶ 1 ("In all instances, the gaming license is issued to an individual, and so that individual is required to cover the cost of obtaining and then renewing any applicable gaming license.").

10

At Hollywood Casino St. Louis alone, between 2017 and 2020, approximately 500 individuals across 11 different job titles who made equal to or less than $7.25/hour had the costs associated with the gaming license required by the Missouri Gaming Commission deducted from their paycheck.  *See* Ex. 3, Defendant St. Louis Gaming Ventures, LLC's Answers to Plaintiff Hammond's First Interrogatories, at ¶ 5.

Thus, Plaintiffs have satisfied the requirement of making a modest factual showing to demonstrate a factual nexus between the manner in which Defendants' gaming license policy affected them and the manner in which it affected the proposed collective action members. Indeed, other courts have granted conditional certification on nearly identical claims. *See, e.g., Lockett v. Pinnacle Ent., Inc.*, No. 19-00358-CV-W-GAF, 2021 WL 960424, at *9 (W.D. Mo. Mar. 12, 2021) ("Plaintiffs have satisfied their burden for conditional certification of the FLSA Gaming License Deduction Collective"); *MacMann v. Tropicana Ent., Inc*., No. 4:19 CV 404 RWS, 2021 WL 1105500, at *3 (E.D. Mo. Mar. 23, 2021) (certifying FLSA collective on the basis of the defendant's common policy of requiring employees to pay for their own gaming licenses); *see also Montoya v. CRST Expedited, Inc.*, 311 F. Supp. 3d 411, 419-22 (D. Mass. 2018). Accordingly, the Court should conditionally certify the FLSA Gaming License Collective.

### 2. The Court Should Grant Rule 23 Certification of the MMWL Gaming License Class.

Plaintiffs' proposed MMWL Gaming License Class is based on Defendants' common policy and practice of deducting from the wages of hourly, non-exempt employees the costs associated with initially obtaining or thereafter renewing a state-issued gaming license.  The class presents a common and predominant liability question: whether the gaming license primarily benefits the employer or the employee. As noted above, this Court has already ruled on a motion to dismiss with respect to the legality of a substantially similar gaming license

deduction policy and demonstrated that the applicable "primary beneficiary" test adopted by this Court is capable of adjudication on a class-wide basis where the answer is the same for all class members.

As explained below, the record supports that parties' agreement on Rule 23 certification because Plaintiffs' proposed MMWL Gaming License Class satisfies the requirements of Rule 23(a), along with subsection (b)(3).

### a.     *The Numerosity Requirement Is Satisfied.*

Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable. "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). "The Eighth Circuit has not set forth an arbitrary number or arbitrary rules regarding numerosity." *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999). Classes with as few as 20 members have been held sufficient to satisfy numerosity. *See, e.g.*, *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (a proposed class of 20 members satisfied numerosity); *Paxton*, 688 F.2d at 561 (finding a class of 74 employees satisfied numerosity); *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 554-55 (W.D. Mo. 2017) (certifying classes of 99 and 144 members).

Here, the proposed Class is sufficiently numerous (and ascertainable), and exceeds any potential baseline requirement needed to satisfy Rule 23(a)'s numerosity requirement.

Defendants have estimated that the class includes hundreds of persons. At Hollywood Casino St. Louis, approximately 540 individuals between 2017 and 2020 (approximately 210

individuals in 2017; 310 individuals in 2018; 350 individuals in 2019; and 140 individuals in 2020) were paid a base hourly wage below the Missouri minimum wage and had the costs associated with obtaining or renewing a State-issued gaming license deducted from their wages. *See* Ex. 3, Defendant St. Louis Gaming Ventures, LLC's Answers to Plaintiff Hammond's First Interrogatories at ¶ 4. At Argosy Casino Riverside, approximately 290 individuals between 2017 and 2020 (approximately 140 individuals in 2017; 165 individuals in 2018; 160 in 2019; and 55 individuals in 2020) were paid a base hourly wage below the Missouri minimum wage and had the costs associated with obtaining or renewing a State-issued gaming license deducted from their wages. *See* Ex. 2, Answers and Objections to Plaintiff Gina R. Lipari-Williams' First Set of Interrogatories Directed to Defendant Missouri Gaming Company, LLC, at ¶ 4.

Thus, Rule 23(a)'s numerosity requirement is satisfied.

### b. *The Commonality Requirement Is Satisfied*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans*, 303 F.R.D. at 552 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "[A] single common contention… is sufficient." *Flynn v. FCA US LLC*, 327 F.R.D. 206, 222-23 (S.D. Ill. 2018) (citing *Dukes*, 564 U.S. at 359)). Commonality "does not require that every question of law or fact be common to every member of the class ... and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *M.B. by Eggemeyer v. Corsi*,

13

327 F.R.D. 271, 278-79 (W.D. Mo. 2018) (citations omitted). For this reason, "[c]ommonality is easily satisfied in most cases." *Id.* at 278.

Here, the proposed Class satisfies Rule 23(a)(2)'s commonality requirement.

Plaintiffs' state law claims under Missouri law generally rise (or fall) on the same basis and for the same reasons as Plaintiffs' FLSA claim because the Missouri statute is interpreted consistent with the FLSA's provisions and regulations. *See Lockett*, 408 F. Supp. 3d at 1048-49. Again, the common question that binds members of each of these classes is the same: whether the gaming license primarily benefits the employer or the employee. And, as this Court's Order in *Lilley* demonstrates, the applicable "primary beneficiary" test is a common question capable of adjudication on a class-wide basis in one stroke.

Thus, Rule 23(a)'s commonality requirement is satisfied.

### c.     *The Typicality Requirement Is Satisfied*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope*, 319 F.R.D. at 555 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). In assessing typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

The typicality requirement is satisfied here because the proposed class representatives, Plaintiffs Lipari-Williams and Hammond, are asserting the same legal claims that commonly arise from the same gaming license policy at both Argosy Casino Riverside and Hollywood Casino St. Louis, that has affected them and all hourly, non-exempt employees in the same

manner. Indeed, Defendants admit that Plaintiffs Lipari-Williams and Hammond were employed by Defendants, were paid a base hourly rate less than the Missouri minimum wage, and were subject to a payroll deduction for costs associated with a State-issued gaming license. *See* Doc. 65, Defendants' Answer, at ¶¶ 34, 35. Defendants' policies have affected Plaintiffs and the putative class in the same manner.

Thus, Rule 23(a)'s typicality requirement is satisfied.

### d. *The Adequacy Requirement Is Satisfied*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (internal citation omitted). The focus is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton*, 688 F.2d at 562-63.

Here, the proposed class representatives, Plaintiffs Lipari-Williams and Hammond, have no interest that is antagonistic to, or conflicting with, the interests of the Class. To the contrary, their interests are coextensive with those of the proposed Class members in establishing Defendants' violations of Missouri law by improperly deducting the cost of gaming licenses from their wages. Plaintiffs Lipari-Williams and Hammond have also demonstrated their commitment to the prosecution of these claims by responding to written discovery and appearing for a deposition.

Further, Plaintiffs Lipari-Williams and Hammond have retained qualified attorneys who are experienced in class and collective action and wage and hour litigation. *See, e.g., Garcia v.*

*Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (awarding attorneys' fees to George Hanson and Stueve Siegel Hanson LLP following a successful class and collective action jury verdict and finding "it appears that plaintiffs' counsel's experience in wage-hour class actions has unmatched depth"); Ex. 4, Firm Resume and C/V Information for proposed Class Counsel).

Thus, Rule 23(a)'s adequacy requirement is satisfied.

### e.     *Rule 23(b)(3)'s Requirements Are Satisfied*

#### i.     **Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When determining whether common questions predominate, the court asks whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Tyson Foods, Inc.,* 136 S. Ct. at 1045 ("A common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."); *Blades v. Monsanto Co*., 400 F.3d 562, 566-67 (8th Cir. 2005); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). And when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (internal citation omitted).

In this case, a single common question predominates among the class of similarly situated non-exempt hourly employees to warrant adjudication of their gaming license deduction claims on a representative basis. As previously explained, Plaintiffs' state law claims under Missouri

law generally rise (or fall) on the same basis and for the same reasons as Plaintiffs' FLSA claim because the Missouri statute is interpreted consistent with the FLSA's provisions and regulations. *See Lockett*, 408 F. Supp. 3d at 1048-49. The common question that predominates and binds members of each of these classes is the same: whether the gaming license primarily benefits the employer or the employee. Likewise, Defendants have already indicated through their Answer that they intend to put on a class-wide defense that the gaming license deductions are permissible for the same reasons as to all hourly, non-exempt employees under Missouri law. *See* Doc. 65, Defendants' Answer, at Affirmative Defenses ¶¶ 7-10 ("Plaintiffs' deduction-related claims, and those of the members of the putative collective or class they seek to represent, fail as a matter of law because the alleged deductions were not for the benefit of their employers."). Thus, the applicable "primary beneficiary" test raises a common, predominating liability question capable of adjudication on a class-wide basis in one stroke.

Plaintiffs' claims are analogous to other cases where courts have held that the lawfulness of employee wage deductions and kickbacks is the predominant question driving the litigation. *See e.g., Perrin v. Papa John's Int'l, Inc.*, No. 4:09-CV-01335-AGF, 2013 WL 6885334, at *7 (E.D. Mo. Dec. 31, 2013) (certifying Rule 23 class actions under five states' minimum wage statutes (including the Missouri Minimum Wage Law) where vehicle expenses creating minimum wage violations for pizza delivery drivers and determining the predominant question was whether "Defendants' vehicle reimbursement policy does not reasonably approximate Plaintiffs' vehicle expenses."); *Cope*, 319 F.R.D. at 556-57 (certifying Missouri Minimum Wage Law class and holding legality of defendant's policy requiring employees to reimburse employer for customer walkouts was the predominant issue). Indeed, courts routinely certify Rule 23 classes on the very issue of an unlawful gaming license deduction. See MacMann v. Tropicana

Ent., Inc., No. 4:19 CV 404 RWS, 2021 WL 1105500, at *6 (E.D. Mo. Mar. 23, 2021) (finding that any individualized issues are "not sufficient to overcome class certification", as all class members' claims turn on a single question of law); *Lockett v. Pinnacle Ent., Inc*., No. 19-00358-CV-W-GAF, 2021 WL 960424, at *9 (W.D. Mo. Mar. 12, 2021).

Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

### ii.    Superiority

In addition to predominance, Rule 23(b)(3) requires a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) provides that matters pertinent to this finding include: "(A) the class members' interested in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Because both the FLSA collective claim, as well as the Missouri law class claim, all rise (or fall) on the same common question susceptible to generalized, class-wide proof as to all similarly situated employees, a representative action is clearly superior to other available methods for fairly and efficiently adjudicating the controversy in a single forum.

Also favoring class treatment is that the amount in controversy on an individual claim is rather modest – for example, pursuant to the Missouri Gaming Commission's regulations, Level II Occupational Gaming Licenses cost $75 for an application fee and $50 for an annual license fee.    *See* Mo. Code Regs. Ann. tit. 11, § 45-4.380.    Thus, a class member's interest in individually controlling the prosecution of a separate action is quite low. Indeed, this lawsuit is

the only known action against Defendants raising these claims on an individual or representative basis in any forum.

Finally, the parties' ability to reach an agreement on Rule 23 certification of the Missouri class – as well as the parties' agreement to FLSA conditional certification of the related collective – also supports a finding of superiority and underscores the parties' and the Court's ability to efficiently manage the litigation as a class action.

Thus, Rule 23(b)(3)'s superiority requirement is satisfied.

Accordingly, the Court should conclude that Plaintiffs' proposed MMWL Gaming License Class meet all the requirements for class certification.

## II. The Court Should Accept the Parties' Stipulation and Grant FLSA Conditional and Rule 23 Class Certification of Plaintiffs' Tip Pooling Collectives and Related State Law Classes.

Defendants have also stipulated that Plaintiffs' unlawful tip pooling claims should be conditionally certified as FLSA collective actions and corresponding Rule 23 class actions under Missouri law. *See* Ex. 1, Stipulation. Because the parties' agreement to certification of these claims is objectively reasonable and entirely consistent with applicable FLSA and Rule 23 standards, the Court should accept the parties' stipulation and grant FLSA conditional and Rule 23 class certification of Plaintiffs' Argosy Casino Riverside Tip Pooling Collective, Hollywood Casino St. Louis Tip Pooling Collective, Argosy Casino Riverside Tip Pooling Class, and Hollywood Casino St. Louis Tip Pooling Class.

### A. The Legal Standard for FLSA Conditional Certification and Rule 23 Class Certification.

The legal standard for FLSA conditional and Rule 23 class certification is set forth above at Section I., which is incorporated herein by reference.

### B. The FLSA Tip Pooling Collectives and Missouri State Law Classes.

#### 1. The Argosy Riverside Casino Tip Pooling Collective

The Parties have stipulated to conditional certification of Plaintiffs' **Argosy Casino Riverside Tip Pooling Collective**, defined as follows:

> **All persons employed as Table Games Dealers at Argosy Casino Riverside during the relevant time period and who participated in the Table Games Dealer tip pool.**

The relevant time period for Plaintiffs' Argosy Casino Riverside Tip Pooling Collective is September 15, 2018 (three years preceding the effective date of the Parties' stipulation) to April 23, 2021 (the last date any individual worked as a Dual-Rate Table Games Supervisor). The Parties stipulate that, as to any member of the FLSA Gaming License Collective for whom a timely Consent to Join is filed with the Court after issuance of the Court-approved Notice, such Consent to Join shall be deemed filed for limitations purposes as of September 15, 2021 (the effective date of the Parties' stipulation). *See* Ex. 1, Stipulation.

#### 2. The Hollywood Casino St. Louis Tip Pooling Collective

The Parties have stipulated to conditional certification of Plaintiffs' **Hollywood Casino St. Louis Tip Pooling Collective**, defined as follows:

> **All persons employed as Table Games Dealers at Hollywood Casino St. Louis during the relevant time period and who participated in the Table Games Dealer tip pool.**

The relevant time period for Plaintiffs' Hollywood Casino St. Louis Tip Pooling Collective is September 15, 2018 (three years preceding the effective date of the Parties' stipulation) to October 31, 2019. The Parties stipulate that, as to any member of the FLSA Gaming License Collective for whom a timely Consent to Join is filed with the Court after issuance of the Court-approved Notice, such Consent to Join shall be deemed filed for limitations purposes as of September 15, 2021 (the effective date of the Parties' stipulation). *See* Ex. 1, Stipulation.

3. **The Argosy Casino Riverside Tip Pooling Class.**

The Parties have stipulated to Rule 23 class certification of Plaintiffs' **Argosy Casino Riverside Tip Pooling Class**, defined as follows:

> **All persons employed as Table Games Dealers at Argosy Casino Riverside during the relevant time period and who participated in the Table Games Dealer tip pool.**

The relevant time period for Plaintiffs' Argosy Casino Riverside Tip Pooling Class is March 31, 2017 (three years preceding the filing of the Class Action Petition) to April 23, 2021 (the last date any individual worked as a Dual-Rate Table Games Supervisor).

4. **The Hollywood Casino St. Louis Tip Pooling Class.**

The Parties have stipulated to Rule 23 class certification of Plaintiffs' **Hollywood Casino St. Louis Tip Pooling Class**, defined as follows:

> **All persons employed as Table Games Dealers at Hollywood Casino St. Louis during the relevant time period and who participated in the Table Games Dealer tip pool.**

The relevant time period for Plaintiffs' Hollywood Casino St. Louis Tip Pooling Class is March 31, 2017 (three years preceding the filing of the Class Action Petition) to October 31, 2019.

**C. The FLSA and MMWL's Tip Pooling Requirements.**

1. **The FLSA**

For their unlawful tip pool claims, Plaintiffs allege that Defendants failed to comply with the FLSA's tip pooling requirements, rendering Defendants' mandatory tip pooling arrangements for its Table Games Dealers invalid.

Under the FLSA, the requirement that an employee must retain all tips (because they are the property of the employee, not the employer) does not preclude a valid tip pooling arrangement among employees who customarily and regularly receive tips. *See* 29 U.S.C. §

203(m)(2)(A)(ii) (requiring that "all tips received by such [tipped] employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.").

Plaintiffs and the defined collectives of other similarly situated Table Games Dealers at Argosy Casino Riverside and Hollywood Casino St. Louis are tipped employees that are required to pool their tips pursuant to Defendants' mandatory tip pooling arrangements. For these tip pooling arrangements to be valid, however, Defendants must ensure that participation in the tip pool is limited to "employees who customarily and regularly receive tips," *and* adhere to the FLSA's prohibition against "[a]n employer . . . keep[ing] tips received by its employees for any purposes, including allowing managers and supervisors to keep any portion of employees' tips." *See* 29 U.S.C. § 203(m)(2)(A)-(B).

The employer has the burden to prove it operates a valid tip pooling arrangement and complies with all FLSA tip pool requirements. *See, e.g.*, *Montano v. Montrose Restaurant Associates, Inc.*, 800 F.3d 186, 189 (5th Cir. 2015) (explaining that the employer has "the burden of establishing its entitlement to the tip credit," which includes "the burden to prove it operated a legal tip pool"); *Acosta v. Las Margaritas, Inc.*, No. 16-1390, 2018 WL 6812370, at *7 (E.D. Pa. Dec. 27, 2018) ("Courts have held that [the employer] has the burden to prove it operated a legal tip pool."); *Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 723-24 (W.D. Tex. 2010) (same).

If a tip pooling arrangement violates the FLSA's requirements, the employer is ineligible to claim the "tip credit"[2] and is liable for the difference between its tipped employees' sub-minimum direct cash wage and the federal minimum wage, and must reimburse all improperly retained / distributed tips. *See, e.g.*, *Montano*, 800 F.3d at 189 (explaining that an employee is owed all tips he or she contributed to the pool and the full $7.25 minimum wage "[i]f an employee is required to share tips with an employee who does not customarily and regularly receive tips"); 29 U.S.C. § 216(b) ((1) "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."; and (2) "Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.").

## 2. The MMWL

The Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of the MMWL follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1). Additionally, pursuant to MMWL, an employer may only pay a sub-minimum direct cash wage to an employee "who receives and retains compensation in the form of gratuities in addition to wages …" *See* RSMo. §

---

[2] Section 3(m) of the FLSA permits an employer under certain circumstances to take a tip credit toward its minimum wage obligation for tipped employees equal to the difference between the required cash wage (which must be at least $2.13) and the federal minimum wage ($7.25). *See* 29 U.S.C. § 203(m)(2). *See also* U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (April 2018), available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs15.pdf. Plaintiff Lipari-Williams and Hammond, like many other table games dealers, were paid a sub-minimum base hourly wage. *See* Doc. 65, Defendants' Answer, at ¶¶ 34, 35.

290.512(1). Thus, an employer's tip pooling practices violate the MMWL if employees are not retaining tips within the meaning of the MMWL when tips are redistributed from a mandatory tip pool to non-tipped employees and manager/supervisor employees in the form of PTO. Employers who violate these requirements may not claim a tip credit and may not pay a direct cash wage below Missouri's minimum wage – meaning employees would be owed the difference between their direct cash wage and the then-applicable minimum wage.

### D. The Requirements for FLSA Conditional and Rule 23 Class Certification Are Satisfied.

#### 1. The Court Should Conditionally Certify the Argosy Casino Riverside and Hollywood Casino St. Louis Tip Pooling Collectives.

The parties' agreement on certification is supported by substantial allegations and record evidence that members of the Argosy Casino Riverside Tip Pooling Collective and Hollywood Casino St. Louis Tip Pooling Collective are similarly situated for purposes of FLSA conditional certification because they were together victims of a single policy and practice that affected them in the same or substantially similar manner.

Defendants employed Table Games Dealers (including Plaintiffs Lipari-Williams and Hammond) and Dual Rate Table Games Supervisors at their casinos. *See* Doc. 65, Defendants' Answer, at ¶ 41. Dual-Rate Table Games Supervisors (or its equivalent by any other name), are employed in two occupations: (1) Floor Supervisor; and (2) Table Games Dealer. *See* Doc. 62, Plaintiff's Third Amended Class and Collective Action Complaint, at ¶ 41. The Department of Labor refers to this as a "dual job" situation under the FLSA, which requires an employer to

distinguish between hours worked in a tipped position from hours worked in a non-tipped position.[3]

Employees working as Table Games Dealers participated in a mandatory tip pool. *See* Doc. 65, Defendants' Answer, at ¶¶ 4, 38. Many Table Games Dealers, including Plaintiffs Lipari-Williams and Hammond, were paid a base hourly rate at less than the minimum wage, plus tips (or "tokes") from the mandatory tip pool. *See* Doc. 65, Defendants' Answer, at ¶ 43. Dual Rate Table Games Supervisors were paid a separate hourly rate for each job performed – one rate when working as a Table Games Dealer (base hourly rate plus tips), and a separate higher hourly rate when working in a supervisory role (e.g., $19/hour). *See* Doc. 65, Defendants' Answer, at ¶ 42. Defendants tracked the hours a Dual Rate Table Games Supervisor worked in each different role. *See* Doc. 65, Defendants' Answer, ¶ 44.[4]

---

[3] As described in what is referred to as the FLSA's "dual job" regulation, an employee works in a "dual job" when the employee engages in more than one occupation with a portion of his time spent in a job meeting the tip requirements, and a portion spent in a job that does not. The example used in the regulation is instructive: "*In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $ 30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.*" 29 C.F.R. § 531.56(e). Extending this example to the context of the FLSA's tip pooling requirements, with respect to his employment as a waiter (a tipped position), this employee can participate in a tip pooling arrangement, for example, among other waiters (all tipped employees). With respect to his employment as a maintenance worker (a non-tipped position), this employee is not eligible to participate in any tip sharing arrangement. And if the non-tipped position is also a managerial or supervisory position, this employee would not be eligible to participate in any tip sharing arrangement on that additional basis as well. *See* 29 U.S.C. § 203(m)(2)(A)-(B).

[4] Under the FLSA, when an employer employs someone in both a tipped and nontipped occupation, the tip credit is available only for the hours the employee works in the tipped occupation. Thus, for Defendants' Dual-Rate Table Games Supervisors, the hours worked in the tipped occupation (Table Games Dealer) must be tracked and paid separately from the hours

Defendants also maintained a uniform paid-time-off ("PTO") policy at each casino, whereby employees accrued PTO based on hours worked and length of service. *See* Doc. 65, Defendants' Answer, at ¶ 40. Employees who worked as a Dual Rate Table Games Supervisor in the Table Games Department also accrued PTO based on their time worked and length of service. *See* Doc. 65, Defendants' Answer, at ¶ 45.

At Argosy Casino Riverside, during the relevant time period, tips (or "tokes") were distributed to Table Games Dealers when they took PTO. Tokes were also distributed to Dual Rate Table Games Supervisors for half of the PTO the Dual Rate Table Games Supervisor took regardless of whether those PTO hours were accrued in a supervisor capacity or as a Table Games Dealer. *See* Ex. 5, Defendant Missouri Gaming Company, LLC's Answers to Plaintiff Gina R. Lipari-Williams' Second Set of Interrogatories at ¶ 9. According to Defendants, Defendant had no obligation to track the position in which the employee worked when accruing the PTO. *See* Ex. 5, Defendant Missouri Gaming Company, LLC's Answers to Plaintiff Gina R. Lipari-Williams' Second Set of Interrogatories at ¶ 13.[5] According to Defendants, April 23, 2021 is the last date any individual worked as a Dual Rate Table Games Dealer at Argosy Casino Riverside. *See* Ex. 1, Stipulation.

At Hollywood Casino St. Louis, during the relevant time period, tips (or "tokes") were also distributed to Table Games Dealers when they took PTO. However, during this time,

---

worked in the non-tipped occupation (Floor Supervisor). *See* Doc. 62, Plaintiff's Third Amended Class and Collective Action Complaint, at ¶ 44.

[5] Accordingly, Dual-Rate Table Games Supervisors accrued PTO in a single pot. This means there was not one pot for PTO accrued as a tipped, hourly Table Games Dealer, on the one hand, and a separate pot for PTO accrued as a non-tipped and manager/supervisor Dual-Rate Table Games Supervisor, on the other hand. Instead, the PTO earned by Dual-Rate Table Games Supervisors simply accrued in a single pot. *See* Doc. 62, Plaintiff's Third Amended Class and Collective Action Complaint, at ¶ 45.

whether tokes were distributed to Dual Rate Table Games Supervisors when they took PTO depended on the following factors. The first inquiry was whether the Dual Rate Table Games Supervisor was scheduled to work as a Table Games Dealer when the PTO was taken. In that event, tokes would be distributed to the employee for those PTO hours. If the Dual Rate Table Games Supervisor was scheduled in a supervisory capacity, then no tokes would be distributed to the Dual Rate Table Games Supervisor for those PTO hours. However, if the Dual Rate Table Games Supervisor scheduled PTO before a schedule was published, tokes would be distributed for that PTO, regardless of whether those PTO hours were accrued in a supervisor capacity or as a Table Games Dealer. Since September 2019, Dual Rate Table Games Supervisors were paid at their supervisor rate for all PTO, and tokes were no longer distributed for that PTO. *See* Ex. 3, Defendant St. Louis Gaming Ventures, LLC's Answers to Plaintiff Hammond's First Interrogatories at ¶ 8.

In sum, Defendants created a mandatory tip pooling policy by which Defendants required their Table Games Dealers to pool their tips and then, in violation of the FLSA and MMWL, distribute those tips to the Table Games Dealers who earned them as well as to pay the PTO of Dual Rate Table Games Supervisors – non-tipped, supervisory employees. As a common policy and practice at each casino, Defendants paid Dual-Rate Table Games Supervisors taking PTO at their dealer rate (with corresponding tips from the dealers' tip pool), without regard to whether such PTO actually accrued based on the individual hours the Dual-Rate Table Games Supervisor worked as a Table Games Dealer. The result of Defendants' common policy and practice is the unlawful distribution of a portion of its dealers' pooled tips to Dual-Rate Table Games

Supervisors for the payout of PTO that accrued via hours worked in a non-tipped, supervisory position.[6]

These practices commonly violated the express language of the FLSA prohibiting tip pooling whereby employees "who customarily and regularly receive tips" shared tips with non-tipped employees who did not. *See* 29 U.S.C. § 203(m)(2)(A)(ii). Likewise, these practices violated the express language of the FLSA prohibiting the employer from keeping any portion of its employees' tips, "including allowing managers or supervisors to keep any portion of employees' tips." *See* 29 U.S.C. § 203(m)(2)(B). In addition, these practices violated the MMWL because these table games dealers who earned the tips are not being allowed to "retain[] compensation in the form of gratuities" as provided for under the MMWL. *See* RSMo. § 290.512(1).

Plaintiffs' above-described substantial allegations, together with Defendants' admissions and information gleaned during Phase I discovery, are more than sufficient to support conditional certification of the Argosy Casino Riverside and Hollywood Casino St. Louis Tip Pool Collectives under the applicable lenient standard. Plaintiffs have certainly established a "colorable basis" for a claim that the putative collective members were "together the victims of a single decision, policy or plan." *See Haworth*, F.Supp. 3d at 1066. Or stated another way, Plaintiffs have made the requisite "modest factual showing" to demonstrate "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner

---

[6] Of course, doing so is in Defendants' economic self-interest. If the PTO hours were classified as hours worked as a "supervisor," Defendants, under their common PTO policy and substantially similar related pay practices, would pay out these PTO hours at the much higher supervisor's hourly rate (e.g., $19 per hour). By classifying the PTO hours as "dealer hours," Defendants pay out these PTO hours at the much lower dealer's sub-minimum base hourly rate (less than $7.25 per hour), and misappropriates its dealers' pooled tips to pay the rest.

in which it affected proposed collective members." *See Halle*, 842 F.3d at 224. And as with

Plaintiffs' gaming license claim, other courts have previously granted conditional FLSA

certification of nearly identical tip pooling claims brought by casino employees. *See, e.g.,*

*Lockett v. Pinnacle Ent., Inc.*, No. 19-00358-CV-W-GAF, 2021 WL 960424, at *7 (W.D. Mo.

Mar. 12, 2021) (holding that dealers asserting that dual-rate supervisors participating in their tip

pool violated the FLSA had "challenge[d] a common policy and pay practice that impacts all of

them in the same or substantially similar manner.", and thus certification was appropriate);

*James v. Boyd Gaming Corp.*, No. 19-2260-DDC-JPO, 2021 WL 794899, at *22 (D. Kan. Mar.

2, 2021) ("The court finds that plaintiff is similarly situated to the proposed Tip Pool

Collective."). Thus, this Court should grant Plaintiffs' motion for conditional FLSA certification

of the Argosy Casino Riverside Tip Pooling Collective and Hollywood Casino St. Louis Tip

Pooling Collective.[7]

> **2.      The Court Should Grant Rule 23 Certification of the Argosy Casino Riverside Tip Pooling Class and Hollywood Casino St. Louis Tip Pooling Class.**

Plaintiffs' proposed Argosy Casino Riverside Tip Pooling Class and Hollywood Casino

St. Louis Tip Pooling Class are based on Defendants' common policy and practice of requiring

---

[7] *See, e.g.*, *Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 55-60 (D.D.C. 2018)
(conditionally certifying multi-location collective action asserting violation of FLSA's tip pool
participation restrictions); *Chhab v. Darden Restaurants, Inc.*, No. 11-CIV-8345-NRB, 2013 WL
5308004, at *13 (S.D.N.Y. Sept. 20, 2013) (conditionally certifying nationwide tip pooling
collective action where plaintiff alleged policy of sharing tips with non-tipped employees);
*Compere v. Nusret Miami, LLC*, 391 F. Supp. 3d 1197, 1204 (S.D. Fla. 2019) (conditionally
certifying collective action where plaintiff alleged a tip pool where tipped employees were
required to share tips with non-tipped employees); *Brock v. 50 Eggs, Inc.*, No. 16-20294-CIV,
2016 WL 10933025, at *2 (S.D. Fla. Oct. 11, 2016) (conditionally certifying collective where
plaintiff alleged tip pooling arrangement with non-tipped employees and rejecting defendant's
argument opposing certification that the tip pooling arrangement did not violate the FLSA as a
second stage merits issue).

Table Games Dealers to pool their tips and then distribute those tips to pay for the PTO of certain non-tipped, supervisor employees. The class presents a common and predominant liability question: whether Defendants included non-tipped and/or manager/supervisor employees in the Table Games Dealers' tip pool. This question is certainly capable of adjudication on a class-wide basis where the answer is the same for all class members.

As explained below, the record supports that parties' agreement on Rule 23 certification because Plaintiffs' proposed Rule 23 classes satisfy the requirements of Rule 23(a), along with subsection (b)(3).[8]

### a. The Numerosity Requirement Is Satisfied.

Here, the proposed classes are sufficiently numerous (and ascertainable), and exceeds any potential baseline requirement needed to satisfy Rule 23(a)'s numerosity requirements. Defendants have estimated that the classes include hundreds of persons. In 2017, Argosy Casino Riverside employed approximately 170 hourly, non-exempt employees in the Table Games Department who participated in the tip pool. In 2018, there were approximately 180; in 2019, there were approximately 180; in 2020, there were approximately 150 employees. *See* Ex. 2, Defendant Missouri Gaming Company, LLC's Answers to Plaintiff Gina R. Lipari-Williams' Second Set of Interrogatories at ¶ 8. In 2017, Hollywood Casino St. Louis employed approximately 300 hourly, non-exempt employees in the Table Games Department who participated in the tip pool. In 2018, there were approximately 310; in 2019, there were approximately 300; in 2020, there were approximately 260 employees. *See* Ex. 3, Defendant St. Louis Gaming Ventures, LLC's Answers to Plaintiff Hammond's First Interrogatories at ¶ 3.

---

[8] The applicable legal standards for evaluating each requirement of Rule 23(a) and subsection (b)(3) were articulated above in Section I.D.2.(a)-(e), and are incorporated herein by reference.

Thus, Rule 23(a)'s numerosity requirement is satisfied.

### b.    The Commonality Requirement Is Satisfied

Plaintiffs' state law claims under Missouri law generally rise (or fall) on the same basis and for the same reasons as Plaintiffs' FLSA claim because the Missouri statutes are interpreted consistent with the FLSA's provisions and regulations.  Again, the common question that binds members of each of these classes is the same: whether Defendants included non-tipped and/or manager/supervisor employees in the Table Games Dealers' tip pool.  This is a common question capable of adjudication on a class-wide basis in one stroke.

Thus, Rule 23(a)'s commonality requirement is satisfied.

### c.    The Typicality Requirement Is Satisfied

The typicality requirement is satisfied here because the proposed class representatives, Plaintiffs Lipari-Williams and Hammond, are asserting the same legal claims that commonly arise from the uniform tip pooling policy at Argosy Casino Riverside and Hollywood Casino St. Louis, that has affected them and all hourly, non-exempt employees at each casino in the same manner. Indeed, Defendants admit that Plaintiffs Lipari-Williams and Hammond were employed as hourly Table Games Dealers working at Argosy Casino Riverside and Hollywood Casino St. Louis (respectively), and participated in the mandatory tip tool.  *See* Doc. 65, Defendants' Answer, at ¶ 38.  As a result, Defendants' tip pooling policies have affected Plaintiffs and the putative classes they seek to represent in the same manner.

Thus, Rule 23(a)'s typicality requirement is satisfied.

### d.    The Adequacy Requirement Is Satisfied

The proposed class representatives, Plaintiffs Lipari-Williams and Hammond, have no interest that is antagonistic to, or conflicting with, the interests of the Class. To the contrary, their

31

interests are coextensive with those of the proposed Class members in establishing Defendants' violations of State law by retaining and then distributing a portion of their pooled tips to non-tipped, supervisory employees. Plaintiffs Lipari-Williams and Hammond have also demonstrated their commitment to the prosecution of these claims by responding to written discovery and appearing for a deposition. Finally, Plaintiffs Lipari-Williams and Hammond have retained qualified attorneys who are experienced in class and collective action and wage and hour litigation.

Thus, Rule 23(a)'s adequacy requirement is satisfied.

### e. Rule 23(b)(3)'s Requirements Are Satisfied

#### i. Predominance

In this case, a single common question predominates among the class of similarly situated non-exempt hourly employees to warrant adjudication of their unlawful tip pooling claims on a representative basis. As previously explained, Plaintiffs' state law claims under Missouri law generally rise (or fall) on the same basis and for the same reasons as Plaintiffs' FLSA claim because the Missouri statute is interpreted consistent with the FLSA's provisions and regulations. The common question that predominates and binds members of each of these classes is the same: whether Defendants included non-tipped and/or manager/supervisor employees in the Table Games Dealers' tip pool. As Plaintiffs understand it, Defendants intend to commonly defend against Plaintiffs' unlawful tip pool claims based the assertion that they have no obligation under the FLSA to track the position in which a Dual-Rate Table Games Supervisor worked the hours used as the basis for PTO accrual or payout, and that they are free to distribute tips from the dealers' tip pool to Dual-Rate Table Games Supervisors taking PTO as

they see fit.[9]  Whether (or not) Defendants are correct in these contentions or could ever prevail on that type of defense is a question that goes to the merits of Plaintiffs' claims and cannot be resolved at this initial notice stage. But, for present purposes, Defendants' common assertion of this same theory of defense further supports conditional certification as it presents a common issue capable of resolution on a class-wide basis in one stroke.

Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

### ii. Superiority

Because both the FLSA collective claim, as well as the Missouri law class claim, all rise (or fall) on the same common question susceptible to generalized, class-wide proof as to all similarly situated employees, a representative action is clearly superior to other available methods for fairly and efficiently adjudicating the controversy in a single forum. Additionally, the class members' interest in individually controlling the prosecution of a separate action is quite low.  Indeed, this lawsuit is the only known action against Defendants raising these claims on an individual or representative basis in any forum.

Finally, the parties' ability to reach an agreement on Rule 23 certification of the Missouri classes – as well as the parties' agreement to FLSA conditional certification of the related collectives – also supports a finding of superiority and underscores the parties' and the Court's ability to efficiently manage the litigation as a class action.

Thus, Rule 23(b)(3)'s superiority requirement is satisfied.

---

[9] *See* Ex. 3, Defendant St. Louis Gaming Ventures, LLC's Answers to Plaintiff Hammond's First Interrogatories, Answer to Interrogatory No. 12 ("Further, as the FLSA does not govern the accrual or payment of PTO, Defendant has no obligation under federal law to track the position in which the employee worked when accruing the PTO."); *see also* Ex. 5, Defendant Missouri Gaming Company, LLC's Answers to Plaintiff Gina R. Lipari-Williams' Second Set of Interrogatories, Answer to Interrogatory No. 13 (same).

Accordingly, the Court should conclude that Plaintiffs' proposed Argosy Casino Riverside Tip Pooling Class and Hollywood Casino St. Louis Tip Pooling Class meet all the requirements for Rule 23 class certification.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their Motion for FLSA Conditional and Rule 23 Class Certification of the Wage and Hour Claims.

Plaintiffs further request an Order from the Court that within 10 days of the Court's Order granting Plaintiffs' motion for FLSA conditional and Rule 23 class certification, Defendants shall provide Plaintiffs for each casino at issue an electronic spreadsheet containing the full name, employee ID, position(s), dates of employment, and all available contact information (including last known address, telephone number(s) and email address) of each member of the conditionally certified FLSA collectives and Rule 23 classes.

Plaintiffs further request an Order from the Court directing the parties to confer and agree on a proper notice, FLSA consent-to-join / Rule 23 opt-out forms, and email/text message to collective and class members that are consistent with the Court's Order.

Dated: September 15, 2021   Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ Alexander T. Ricke
George A. Hanson, MO. Bar No. 43450
Alexander T. Ricke, MO. Bar No. 65132
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
mcguire@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343

Michael J. Rahmberg, MO. Bar No. 66979
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone:     (816) 781-0002
Facsimile:     (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that, on September 15, 2021, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

/s/ Alexander T. Ricke
**ATTORNEY FOR PLAINTIFFS**