# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

GINA R. LIPARI-WILLIAMS, individually and
on behalf of all others similarly situated,

        Plaintiffs,

        v.

THE MISSOURI GAMING COMPANY, LLC,
et al.,

        Defendants.

Case No. 20-cv-06067-SRB

## ORDER

Before the Court is Plaintiffs' Motion for Class Certification of ERISA Claim. (Doc. #88.) For the reasons set forth below, the motion is GRANTED.

## I. FACTUAL BACKGROUND

The following facts are taken from the Third Amended Class and Collective Action Complaint (Doc. #62), and from the parties' briefs with exhibits.[1] Defendant Penn National Gaming, Inc. ("Defendant") operates 41 casinos in 19 states and employs approximately 18,000 individuals. At all relevant times, Defendant sponsored a group health plan (the "Plan") and gave all employees an opportunity to participate in it. The Plan qualifies as an employee welfare benefit plan and must comply with the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1182.

Beginning in 2015, Defendant implemented and imposed a tobacco surcharge for all group health participants that used tobacco products. For plan years 2016 through 2020, Defendant deducted $50 per month from the wages of each covered individual using tobacco

---

[1] Only those facts necessary to resolve the pending motion are discussed below, and those facts are simplified to the extent possible. Additional relevant facts are discussed in Section III.

products.  Defendant learned about tobacco use by requiring all participants to execute a tobacco user affidavit through a website during open enrollment.

Plaintiffs Marissa Hammond ("Hammond") and Lucinda Layton ("Layton") (collectively, the "Plaintiffs") were employed by Defendant, participated in the Plan, and paid the tobacco surcharge.  On March 31, 2020, Plaintiffs filed this lawsuit against Defendant.[2]  Count VII of the Third Amended Class and Collective Action Complaint alleges that the tobacco surcharge violates ERISA and that Defendant thus breached its fiduciary duty to participants.  Plaintiffs seek various forms of relief, including damages and equitable relief.

Plaintiffs now move for class certification of a class and subclass of participants who had a tobacco surcharge deducted from their wages.  As further discussed in Section III, Plaintiffs allege that: (a) in plan years 2016-2020, Defendant issued uniform documents that wrongfully failed to notify participants of an alternative way to avoid the tobacco surcharge; and (b) in plan years 2019 and 2020, Defendant issued uniform documents that wrongfully informed participants they could not receive a retroactive reimbursement of a prior tobacco surcharge.

Plaintiffs seek certification of the following proposed Class and proposed Sub-Class under Federal Rule of Civil Procedure 23(a), (b)(1)(B), (b)(2), and (b)(3):

**(1) Nationwide ERISA Class—Failure to Provide Notice of a Reasonable Alternative Standard:**

All participants in Defendant's group health plan for plan years 2016, 2017, 2018, 2019, and 2020 who had a tobacco surcharge deducted from their wages (hereinafter, the "proposed Class").

---

[2] Gina R. Lipari-Williams is also a named Plaintiff in this case.  However, the pending motion was filed by Hammond and Layton.

### (2) Nationwide ERISA Sub-Class—Failure to Provide a Reasonable Alternative Standard or Notice of the Same:

All participants in Defendant's group health plan for plan years 2019 and 2020 who had a tobacco surcharge deducted from their wages (hereinafter, the "proposed Sub-class").

Defendant opposes class certification, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23 requires a plaintiff to satisfy all four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

A district court "must undertake a 'rigorous analysis' to ensure that the requirements of Rule 23 are met." *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th Cir. 2011). The Rule 23 analysis will frequently overlap with the merits of the underlying claims. *Wal-Mart*, 564 U.S. at 351. However, there are limits to a court's analysis of the merits at the class certification stage. "A court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'" *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

3

## III. DISCUSSION

The Court must "begin by considering the nature of plaintiffs' claim to determine whether it is suitable for class certification." *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020) (citation omitted). Here, Plaintiffs allege that Defendant's tobacco surcharge violated two requirements under ERISA. The applicable law and facts are discussed below.

### A. The Nature of Plaintiffs' Claims

First, Plaintiffs contend that Defendant violated ERISA's so-called non-discrimination provision. This provision prohibits a group health plan from charging a premium based on a participant's health status-related factor. Specifically, 29 U.S.C. § 1182(b)(1) provides that:

> A group health plan . . . *may not require any individual* (as a condition of enrollment or continued enrollment under the plan) *to pay a premium or contribution which is greater* than such premium or contribution for a similarly situated individual enrolled in the plan *on the basis of any health status-related factor* in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

29 U.S.C. § 1182(b)(1) (emphasis supplied).

However, the non-discrimination prohibition is not absolute. Section 1182(b)(2)(B) contains an exception that allows a plan to issue discounts to participants who comply with a wellness program:

> [n]othing in paragraph [b](1) shall be construed . . . *to prevent a group health plan . . . from establishing premium discounts or rebates* or modifying otherwise applicable copayments or deductibles *in return for adherence to programs of health promotion and disease prevention*.

29 U.S.C. § 1182(b)(2)(B) (emphasis supplied). As relevant here, these two statutory provisions allow a plan to issue discounts or rebates to participants that do not use tobacco if the plan has implemented a valid wellness program. *See id.*

4

Under Department of Labor regulations, a plan's wellness program must comply with certain requirements in order to qualify for § 1182(b)(2)(B)'s exception. *See* 78 Fed. Reg. 33158, at 33160 (June 3, 2013) ("Set[ting] forth criteria . . . that must be satisfied in order for the plan . . . to qualify for an exception to the prohibition on discrimination based on health status"). Plaintiffs allege that Defendant's tobacco surcharge failed to comply with two requirements: (1) a requirement that participants have notice of an alternate way to avoid paying the tobacco surcharge; and (2) a requirement that participants be retroactively reimbursed if they complete that alternative option.

First, an outcome-based wellness program (e.g., not using tobacco) must give participants "notice of availability of [a] reasonable alternative standard" to qualify for the discount or rebate. 29 C.F.R. § 2590.702(f)(4)(v).[3] "The plan or issuer must disclose in *all* plan materials describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis supplied). "[A] plan disclosure that references a premium differential based on tobacco use . . . is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure." 78 Fed. Reg. 33158, at 33166.

In this case, Plaintiffs' proposed Class alleges that Defendant failed to give participants notice of a reasonable alternative standard. In particular, Plaintiffs contend that Defendant issued "class-wide tobacco user affidavits, open enrollment documents, and disclosure

---

[3] As discussed below, retroactive reimbursement following the completion of a smoking cessation program could be a reasonable alternative option to avoid the tobacco surcharge.

documents . . . [that] informed participants of a binary option: (1) non-tobacco users avoid the surcharge; or (2) tobacco users are subject to the surcharge." (Doc. #89, pp. 7-8.)[4]

For example, the 2015-16 tobacco user affidavit stated that:

> In order to determine if you are exempt from the Tobacco Use Surcharge it is necessary to confirm the tobacco use status of all members of your family enrolled in [Defendant's] group medical plan. You must complete this Affidavit prior to your enrollment. Failure to complete this Affidavit will result in the maximum surcharge being applied.
>
> You are considered a Non-Tobacco user if you:
>
> - Have not used tobacco products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine), for at least 3 months.
>
> You are considered a Tobacco User if you:
>
> - Are currently using any form of tobacco (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine), in any amount (including occasional social use), or
>
> - Have used tobacco based products (cigarettes, cigars, pipes, chewing tobacco, smokeless/electronic devices, or any other form of tobacco or nicotine), within the last 3 months.

(Doc. #89, p. 16.)

A checkbox form then contained the following options: "I do not use tobacco," "I and my enrolled dependents are non-tobacco users," "I am a tobacco user," and "I and one of my enrolled dependents use tobacco." (Doc. #89, p. 17.) Defendant implemented a second tobacco user affidavit from 2017 through 2020, though it is substantially similar to the first affidavit. Plaintiffs allege Defendant's tobacco user affidavits, open enrollment documents, and annual

---

[4] All page numbers refer to the pagination automatically generated by CM/ECF.

benefits confirmation documents violate ERISA by failing to give participants notice of a reasonable alternative standard to avoid the tobacco surcharge.[5]

Second, for an "alternative standard" to be deemed reasonable, "[t]he *full reward* under the outcome-based wellness program *must be available* to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis supplied). The "full reward" requires retroactively reimbursing a participant that completes the alternative standard. In particular, "if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual." 78 Fed. Reg. 33158, at 33163.

Here, Plaintiffs' proposed Sub-class for 2019 and 2020 allege that Defendant distributed documents to all participants through a benefits website that violated the retroactive requirement. Plaintiffs contend that in 2019, Defendant issued a Tobacco User Affidavit—Smoking Cessation Program, and a Tobacco Surcharge FAQ which stated:

> If you or your dependents(s) . . . enroll in a smoking cessation program with either CVS Caremark . . . or with your Medical Carrier, you will be eligible to have the tobacco surcharge removed upon completion[.] Adjustments to the tobacco user surcharge will be on a prospective basis once the smoking cessation program is completed. *There will be no retroactive adjustments to the tobacco user surcharge.*

(Doc. #90-10, p. 2); (Doc. #90-11, p. 4) (emphasis supplied). Defendant's 2020 Tobacco Surcharge FAQ contained similar language. Plaintiffs argue these documents contain an alternate standard that is facially not reasonable because they do not offer the "full reward" of

---

[5] Defendant argues that its separately-issued Tobacco Use Policy provided for a reasonable alternative standard. In relevant part, the Tobacco Use Policy stated the surcharge could be avoided "if it is unreasonably difficult, due to a medical condition, or medically inadvisable . . . to be tobacco free." (Doc. #101, pp. 10-11.) However, the Court agrees with Plaintiffs that "a reasonable alternative standard to being tobacco free cannot be limited to those participants" with certain medical conditions. (Doc. #89, p. 25.)

7

retroactive reimbursement. As such, Plaintiffs seek certification of "a sub-class of participants subject to the tobacco surcharge in 2019 and 2020." (Doc. #89, p. 22.)[6]

Based on these alleged violations, Plaintiffs' proposed Class and proposed Sub-class assert two types of claims under ERISA. The first claim alleges Defendant breached its fiduciary duty and duty of loyalty by "collect[ing] tobacco surcharges in violation of ERISA . . . and us[ing] those funds for its own benefit." (Doc. #89, p. 13) (quoting 29 U.S.C. § 1106(b)(1) (prohibiting a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account"); 29 U.S.C. § 1104(a)(1)(A) (requiring the plan to "discharge . . . duties with respect to a plan solely in the interest of participants and beneficiaries")). The second claim is for equitable relief. *See* 29 U.S.C. § 1132(a)(3)(B)(i) (providing that "a civil action may be brought . . . to obtain other appropriate equitable relief"). Plaintiffs request that the "unlawful tobacco surcharge deductions [be] return[ed] . . . to participants." (Doc. #89, p. 13.)[7]

Having framed "the nature of plaintiffs' claim[s]," the Court must now determine whether they are "suitable for class certification." *Harris*, 953 F.3d at 1033.

## B. Standing

As a threshold issue, Defendant argues that Plaintiffs and the putative class members lack Article III standing to pursue their claims. "Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). To establish standing, a plaintiff must show (1) an "injury in fact," (2) "a causal connection between

---

[6] Defendant concedes that the 2019 and 2020 documents "mistakenly indicate that there would be no retroactive adjustments." (Doc. #101, p. 12.) However, Defendant argues this was an unintentional error that did not accurately reflect its separately-issued Tobacco Use Policy. (Doc. #101, p. 12.)

[7] During plan years 2016 through 2020, thousands of participants were allegedly subjected to the tobacco surcharge. (Doc. #89, p. 24.) Plaintiffs contend that Defendant "collected millions of dollars in tobacco surcharges" and wrongfully "used [those] ill-gotten proceeds to offset its own costs." (Doc. #89, p. 24.)

8

the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 791-92 (8th Cir. 2004) (citations and quotations omitted). In the class certification context, each class member must have standing. *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).

In this case, Defendant contends there is no evidence "that Plaintiffs—let alone every putative class member—have suffered any harm, or that the harm was caused by any alleged disclosure violations. . . . a failure to provide statutorily-required (or here, regulatorily required) information does not, by itself, establish a concrete injury, let alone causation." (Doc. #101, p. 24.) Defendant argues the proposed Sub-class is similarly flawed because "Plaintiffs admitted that they have never even seen the [2019 and 2020] communications at issue, and thus could not have been harmed by them." (Doc. #101, p. 25.) Defendant further argues the 2019 and 2020 documents did not cause any harm because "no Plaintiff or putative class member has completed a tobacco cessation program or alternative standard and had their tobacco premium eliminated prospectively, but not retroactively." (Doc. #101, p. 25.)

Upon review, Defendant's standing arguments are rejected. Plaintiffs have alleged and presented facts showing that Defendant imposed a tobacco surcharge on them and on putative class members in violation of ERISA and its implementing regulations. "[A] statutory right not to be charged . . . cause[s] a particularized injury that affect[s] the class members in a personal and individual way. Paying a fee they should not have been charged [is] also a concrete injury, not an abstract one that does not "actually exist." *McKeage v. Bass Pro Outdoor World, LLC*, 943 F.3d 1148, 1150 (8th Cir. 2019) (citations and quotations omitted). The standing

requirement is satisfied here because Plaintiffs have alleged that Defendant caused them monetary loss by imposing a fee that was unlawful.

### C. Plaintiffs' Reliance on Regulations

Defendant also attacks Plaintiffs' overarching legal theory as "fundamentally" flawed. (Doc. #101, p. 20.) Specifically, Defendant contends that Plaintiffs rely on regulations that are inconsistent with the plain language of § 1182(b). As discussed above, § 1182(b)(2)(B) provides that "nothing in [the nondiscrimination prohibition, § 1182(b)(1)] shall be construed . . . to prevent a group health plan . . . from establishing premium discounts or rebates . . . in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B). However, the regulations impose certain requirements in order to qualify for this exception to the nondiscrimination prohibition. Defendant argues that "[i]f the statute itself cannot be construed to prohibit charging lower premiums to non-tobacco users (or higher premiums to tobacco users) pursuant to the Tobacco Use Policy, then Plaintiffs cannot use regulations under the statute to do that either." (Doc. #101, p. 20.)

Upon review, the Court rejects Defendant's argument. The plain language of § 1182(b)(2) allows "premium *discounts or rebates*[.]" 29 U.S.C. § 1182(b)(2) (emphasis supplied). However, the tobacco surcharge at issue does not appear to be a discount or a rebate. The Court agrees with Plaintiffs that "[i]n their ordinary usage, both 'discount' and 'rebate' refer to a *reduction* in cost, whereas [Defendant's] tobacco surcharge imposes an *increase* in cost on tobacco users above the baseline price." (Doc. #107, p. 11) (citing Merriam-Webster Dictionary) (emphasis in original). For purposes of the class certification analysis, the Court finds that the tobacco surcharge is not a "discount" or "rebate," and thus does not fall under § 1182(b)(2)'s exception.

Even if "discount" or "rebate," could be construed as ambiguous, the Court finds that 29 C.F.R. § 2590.702(f) does not impermissibly conflict with § 1182(b)(2). *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (recognizing that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). The regulation does not "prevent a group health plan" from establishing discounts or rebates as allowed by § 1182(b)(2). Instead, the regulation simply explains the parameters under which discounts and rebates may be offered under the statute. For these reasons, and for the additional reasons stated by Plaintiffs, the Court finds that the regulations relied upon by Plaintiffs are not inconsistent with § 1182(b).[8]

### D. Requirements Under Rule 23(a)

Under Rule 23(a), a proposed class must satisfy four elements: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the absent class members (adequacy). Fed. R. Civ. P. 23(a)(1)-(4). Each element is addressed below.

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." In determining whether or not the numerosity requirement is satisfied, "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joinder is relevant." *Emanuel v.*

---

[8] Among other things, Plaintiffs note that "the Department of Labor has filed suit against several large employers and plan administrators alleging that they violated 29 U.S.C. § 1182 and 29 C.F.R. § 2590.702(f) by imposing a tobacco surcharge against plan participants, and has obtained consent decrees against others." (Doc. #107, p. 9 n.2) (citations omitted).

*Marsh*, 828 F.2d 438, 444 (8th Cir. 1987), *cert. granted and judgment vacated on other grounds*, 487 U.S. 1229 (1988) (citing *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559–560 (8th Cir. 1982)).

Here, Plaintiffs state that "[b]oth of [their] proposed classes contain at least 1,500 members." (Doc. #89, p. 28.) The size of both classes exceeds those previously found sufficient by the Eighth Circuit. *Ark. Educ. Ass'n v. Bd. Of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members sufficient); *Paxton*, 688 F.2d at 561 (impracticable to join some portion of the 74 class members). Defendant does not dispute the numerosity element. Consequently, the Court finds the numerosity element is satisfied for the proposed Class and proposed Sub-class.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50. The "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, No. 13-206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton*, 688 F.2d at 561).

Plaintiffs argue the proposed Class has commonality because Defendant distributed the tobacco surcharge documents at issue to each class member during that plan year. "Whether those documents inform class members of a reasonable alternative standard to avoid the tobacco surcharge other than not being a tobacco user will be common to each class member." (Doc. #89, p. 29.) Plaintiffs contend their proposed Sub-class also has commonality regarding whether the 2019 and 2020 documents "described an alternative standard that failed to offer the 'full reward' of the outcome-based wellness plan[.]" (Doc. #89, p. 29.)

Defendant argues that commonality is lacking.[9] According to Defendant, individualized inquiries will be necessary to determine whether any participant was harmed by the alleged ERISA violations. Those inquiries include whether each participant read or were aware of the documents at issue, and whether any participant was harmed or prejudiced by any of those documents. For example, "whether an individual is interested in quitting smoking can change over time and is influenced by myriad personal factors." (Doc. #101, p. 27.)

Upon review, the Court finds the commonality requirement is satisfied for the proposed Class and proposed Sub-class. Plaintiffs' theory of liability is based on common, class-wide tobacco surcharge documents that were distributed and/or available to all participants. This document-based theory of liability does not require individualized testimony. Moreover, the proposed Class and proposed Sub-class are limited to those participants "who had a tobacco surcharge deducted from their wages." (Doc. #89, p. 27.) Those participants allegedly suffered a common injury by paying an unlawful fee. Consequently, there are common questions of law and fact.

---

[9] As with standing, Defendant argues that Plaintiffs' failure to show any harm from the regulatory disclosure violations is "central to the commonality, typicality, and adequately analysis under Rule 23." (Doc. #101, p. 25.) Defendant's lack of harm argument is rejected for the reasons stated throughout.

13

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citing *Paxton*, 688 F.2d at 562). Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977).

Plaintiffs argue the typicality requirement is met because they "are asserting the same legal claims under ERISA that are grounded in the challenged tobacco surcharge policy, which is common to all class members." (Doc. #89, p. 29.) Further, both classes "seek to recoup the unlawful surcharges through claims of breach of fiduciary duty and appropriate equitable relief provided for by ERISA." (Doc. #89, p. 30.) Defendant argues Plaintiffs cannot show typicality for similar reasons it opposed commonality: "the action each putative class member would or would not have taken upon receiving all the disclosures . . . and the harm or prejudice, if any . . . is an individualized inquiry that depends on that person's unique situation." (Doc. #101, p. 28.)

For reasons similar to those discussed above, the Court agrees with Plaintiffs and finds that their claims are typical of the claims of the proposed classes. Even if there are some factual differences among the class members, their claims are typical of Plaintiffs' claims— whether Defendant's tobacco surcharge violated ERISA and the corresponding surcharges paid as a result of that violation. As a result, the typicality requirement is satisfied for the proposed Class and proposed Sub-class.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry examines whether the named plaintiff has any conflicts of interest with the putative class members. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiffs argue they have no conflict of interest with the putative class members. To the contrary, Plaintiffs contend that they and the class members have the same interest in showing that Defendant violated ERISA and imposed wrongful tobacco surcharges. In response, Defendant again argues that Plaintiffs have failed to show any personal harm from the alleged violations and thus "lack standing to pursue claims on behalf of other putative class members who may have been harmed." (Doc. #101, p. 28.)

As previously stated, the Court rejects Defendant's argument that Plaintiffs have failed to show any harm. In addition, there does not appear to be any conflict of interest between the interests of Plaintiffs and the proposed classes. Consequently, the Court finds that Plaintiffs have satisfied the adequacy requirement with respect to the proposed Class and proposed Sub-class.[10]

### E. Requirements Under Rule 23(b)

If Rule 23(a) is satisfied, the party seeking certification "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast,* 569 U.S. at 33. Plaintiffs move for class certification under Rule 23(b)(1)(B), Rule 23(b)(3), and Rule(b)(2). Each rule is discussed below.

#### a. Rule 23(b)(1)(B)

Rule 23(b)(1)(B) requires a finding that:

> (1) prosecuting separate actions by or against individual class members would create a risk of:

---

[10] Plaintiffs further contend that their attorneys are qualified and experienced in class action litigation. Defendant does not argue that Plaintiffs' counsel is unable to adequately represent the proposed classes.

. . .

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B).

Plaintiffs argue Rule 23(b)(1)(B) is satisfied because adjudication of their claims would be dispositive of the interests of other Plan participants' claims. Upon review, the Court agrees.

In particular, Plaintiffs contend that their breach of fiduciary duty claims are brought on behalf of the Plan and would thus be dispositive of the claims of other class members. Plaintiffs have cited deposition testimony in which Defendant acknowledged having fiduciary responsibilities with respect to the Plan. (Doc. #107, p. 22.) Defendant allegedly breached those fiduciary obligations by implementing the tobacco surcharge and by using that money to offset its own costs related to the Plan. Under these circumstances, Plaintiffs' claim for breach of fiduciary duty on behalf of the Plan would likely be dispositive of the claims of other class members. Therefore, Plaintiffs have met the requirements under Rule 23(b)(1)(B).

Defendant's arguments to the contrary are not persuasive. First, Defendant states that the nondiscrimination provisions under § 1182(b) are "imposed on ERISA *plans*, not on plan fiduciaries. Thus, this is not an action brought on behalf of the Plan seeking a remedy for the Plan." (Doc. 101, p. 30) (emphasis in original) (citations omitted). Defendant appears to believe a class cannot be certified under Rule 23(b)(1)(B) because Defendant is not subject to ERISA's non-discrimination provisions.

However, Plaintiffs have alleged and presented facts showing that Defendant implemented, controlled, and funded the Plan. Defendant also implemented and controlled the tobacco surcharge at issue in this case. Under these facts, the Court finds that "[f]or all intents

16

and purposes, [Defendant] is the [P]lan," and "in its role as plan administrator and as the [P]lan—is subject to ERISA's non-discrimination provisions." (Doc. #107, p. 23-24.) Even if the non-discrimination provisions did not apply to Defendant, ERISA also precludes a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). To the extent Defendant argues it is not subject to the foregoing provisions, or that this case is not brought on behalf of the Plan, those arguments are rejected.

Second, Defendant argues the tobacco surcharge did not cause a loss to the Plan because the surcharge resulted in the Plan have having more, not less, money. But as stated above, Defendant used at least part of the tobacco surcharges to offset its own costs. Absent the surcharge, the Plan would likely have had approximately the same amount of money, but the costs would have been born by Defendant and not by the participants. This breach of fiduciary duty claim is appropriate for Rule 23(b)(1)(B) certification because it will facilitate resolution on a plan-wide basis.

For all these reasons, the Court finds the proposed Class and proposed Sub-class satisfy Rule 23(b)(1)(B).

### b. Rule 23(b)(3)

Plaintiffs also move for class certification under Rule 23(b)(3). This rule provides that a class may be certified if the Court finds as follows:

> The questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1. Common Questions Predominate Individual Questions

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast*, 569 U.S. at 34. "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (internal citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019) (citations and quotation marks omitted).

Here, Plaintiffs argue that common questions predominate over individual questions on both proposed classes. As to their proposed Class, Plaintiffs argue "the common question that predominates and binds members . . . is the same: whether the challenged plan documents provided notice of a reasonable alternative standard to avoid the tobacco surcharge. If not, Plaintiffs and class members are entitled to equitable relief[.]" (Doc. #89, p. 33.) Plaintiffs argue a related question predominates over the proposed Sub-class: "whether the three 2019 and 2020 plan documents described an unreasonable alternative standard to the tobacco surcharge

18

that did not offer the same full reward and therefore violated ERISA. If so, the members of the proposed [Sub-]class will also be entitled to . . . equitable relief." (Doc. #89, p. 33.)

In response, Defendant argues that the common questions identified by Plaintiffs do not establish predominance. Defendant contends that both classes would involve "highly individualized" proof, both on the existence of harm and any alleged damages. (Doc. #101, p. 33.) According to Defendant, the "unique circumstances" of each class member include "whether the class member received a copy of the actual Tobacco Use Policy," whether the class member would have completed an alternative standard to avoid the surcharge if they had known about that option, and whether any class member did not complete an alternative standard because he or she believed the benefit would only apply prospectively and not retrospectively.

Upon review, the Court finds the predominance factor is satisfied for the proposed Class and Sub-class. Any individualized inquiries do not override the predominate commonality of the class-wide documents Defendant distributed and/or made available to all participants. Because Plaintiffs and the putative class members also allegedly paid the tobacco surcharge, the nature of the relief sought also predominates over any individual questions. Even if this action "will necessitate a degree of individual inquiries into the harm suffered by class members, common issues relating to Defendants' adoption, implementation, and enforcement of the [tobacco surcharge] still predominate[.]" *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 991 (W.D. Mo 2019).

### 2. Class Certification is the Superior Method to Adjudicate This Case

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In determining whether a class action is the superior vehicle for litigation, courts consider, inter alia, the

difficulties likely to be encountered in the management of the action." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-cv-04321-NKL, 2013 WL 3872181, at *12 (W.D. Mo. July 25, 2013).

Upon review of the record, the Court finds that the superiority requirement is satisfied. On an individualized basis, the monetary amounts of the tobacco surcharge would not likely be worth the filing of separate lawsuits. Further, as discussed above, Plaintiffs' claims raise common questions and will involve the same or similar class-wide evidence for all affected participants. A class action would allow participants to join together and pursue Defendant's alleged ERISA violations. Conversely, if class certification is not granted, class members would have to engage in repetitive discovery and the presentation of common evidence.

The Court also cannot discern any difficulties in managing the class action. Because common questions predominate individual questions, "certification will not generate any complexities from a case management perspective." *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 624 (C.D. Cal. 2015). Under these circumstances, a class action is the superior method for fairly and efficiently adjudicating the claims brought by the proposed Class and the proposed Sub-class.

For all these reasons, the Court finds the proposed Class and proposed Sub-class satisfy Rule 23(b)(3).

### c. Rule 23(b)(2)

Finally, Plaintiffs also seek certification under Rule 23(b)(2). This rule requires a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs request "an equitable remedy—whether that be constructive trust, surcharge, disgorgement, etc.—that would require

20

[Defendant] to disgorge these ill-gotten and unlawful tobacco surcharge deductions and return them to participants." (Doc. #89, p. 13.)

Defendant argues that Rule 23(b)(2) is not satisfied because Plaintiffs only seek monetary, not injunctive or declaratory relief. Defendant contends that "[w]hile Plaintiffs attempt to characterize some of the relief they seek as 'equitable' under ERISA, this still does not qualify as injunctive relief such that certification under Rule 23(b)(2) would be appropriate." (Doc. #101, p. 32.)[11]  Plaintiffs argue a putative class seeking monetary relief in the form of equitable relief may be certified under Rule 23(b)(2).

The parties' briefs do not include a detailed analysis of Rule 23(b)(2). Although this is a close call, the Court finds that Plaintiffs have shown class certification is warranted under this rule. Courts have held that a putative ERISA class seeking monetary damages may be certified under Rule 23(b)(2). *See, e.g., Johnson v. Meriter Health Servs. Emp. Retirement Plan*, 702 F.3d 364, 368-373 (7th Cir. 2012). Additionally, and for the reasons discussed above, Defendant's alleged conduct applies generally to the proposed Class and the proposed Sub-class. Under these facts, the Court finds that class certification is warranted under Rule 23(b)(2).

**F. Notice Requirements**

Under Rule 23(c)(2), once a class is certified notice must be given to class members. Plaintiffs request the Court "instruct the parties to meet and confer regarding a notice plan pursuant to Federal Rule of Civil Procedure 23(c)(2)." (Doc. #89, p. 36.) Defendant's brief does not discuss the notice requirement.

---

[11] Defendant also argues that certification under Rule 23(b)(2) is not warranted because "Plaintiff Hammond is no longer employed by [Defendant], so she has no interest in any injunctive relief." (Doc. #101, p. 31.) However, Plaintiffs' reply brief states that Plaintiff Lucinda Layton is still employed by Defendant. (Doc. #107, p. 25.) As such, the Court finds that at least one named Plaintiff is able to seek relief under Rule 23(b)(2).

21

The current record does not provide a basis to determine the best practicable notice to class members. Consequently, the Court orders the parties to meet and confer to determine agreed upon proper notice procedures.

## IV.  CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiffs' Motion for Class Certification of ERISA Claim (Doc. #88) is GRANTED.  It is ORDERED that the Court hereby certifies the following Class and Sub-class under Federal Rule of Civil Procedure 23(a), (b)(1)(B), (b)(2), and (b)(3):

> **(1) Nationwide ERISA Class—Failure to Provide Notice of a Reasonable Alternative Standard:**
>
> All participants in Defendant's group health plan for plan years 2016, 2017, 2018, 2019, and 2020 who had a tobacco surcharge deducted from their wages.
>
> **(2) Nationwide ERISA Sub-Class—Failure to Provide a Reasonable Alternative Standard or Notice of the Same:**
>
> All participants in Defendant's group health plan for plan years 2019 and 2020 who had a tobacco surcharge deducted from their wages.

It is FURTHER ORDERED that the parties shall meet and confer to agree on the proposed notice to potential class members pursuant to Federal Rule of Civil Procedure 23(c)(2). The parties shall also meet and confer to agree upon a new proposed amended scheduling order in light of this Order.  The notice and proposed amended scheduling order shall be filed within fourteen (14) days of the filing of this Order.  The Court will contact the parties to schedule a hearing regarding the notice and scheduling changes.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated:  November 16, 2021                 UNITED STATES DISTRICT JUDGE

22